WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (pro hac vice pending)
(stephen.karotkin@weil.com)
Jessica Liou (pro hac vice pending)
(jessica.liou@weil.com)
Theodore Tsekerides (pro hac vice pending)
(theodore.tsekerides@weil.com)
Matthew Goren (pro hac vice pending)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>**Debtor.**<br><br>**Tax I.D. No. 94-3234914** | Case Nos. 19 -\_\_\_\_\_ (\_\_\_)<br>19 -\_\_\_\_\_ (\_\_\_)<br><br>Adv. Pro. No. 19-\_\_\_\_\_ (\_\_\_)<br><br>Chapter 11 |
| **In re:**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY**<br><br>**Debtor.**<br><br>**TAX I.D. NO. 94-0742640** | |
| **PG&E CORPORATION, PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**FEDERAL ENERGY REGULATORY COMMISSION**<br><br>**Defendant.** | **DEBTORS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:<br>Time:<br>Place: |

Case: 19-03003 Doc# 2 Filed: 01/29/19 Entered: 01/29/19 01:52:42 Page 1 of 33

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), and Plaintiffs in the above-captioned adversary proceeding, hereby move this Court, pursuant to sections 105, 106(a), and 362(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Federal Rule of Civil Procedure 65 and Rule 65-1 of the Bankruptcy Local Rules for the Northern District of California (the "**Bankruptcy Local Rules**"), as made applicable in these proceedings pursuant to Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to (i) issue an order, pursuant to section 362 of the Bankruptcy Code, enforcing the automatic stay as to the FERC Proceedings (defined below), any entity's attempt to enforce the FERC Order (defined below), and any action by FERC, or any other entity, that would attempt to divest or otherwise nullify or impede this Court's exclusive authority to approve or deny the Debtors' requests to assume or reject executory contracts under section 365 of the Bankruptcy Code (collectively, "**FERC Action**"); and (ii) to the extent the automatic stay does not apply, exercise its powers under section 105 of the Bankruptcy Code to preliminarily and permanently enjoin any FERC Action, in order to preserve the Bankruptcy Court's jurisdiction, as well as to prevent irreparable harm to the debtor's estates and the reorganizational goals of the Bankruptcy Code.

This Motion for Preliminary Injunction is supported by the *Debtors' Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief*, the *Memorandum of Points and Authorities in Support of Debtors' Motion for Preliminary Injunction*, the *Declaration of Fong Wan in Support of Debtors' Motion for Preliminary Injunction*, and the *Debtors' Request for Judicial Notice in Support of Debtors' Motion for Preliminary Injunction*, as well as supporting documents attached thereto.

A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit 1** (the "**Proposed Order**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................2

BACKGROUND ....................................................................................................6

    A.    The Chapter 11 Cases ..................................................................7

    B.    The Debtors' FERC-Regulated PPAs .........................................8

    C.    The Necessity of this Adversary Proceeding ...........................10

ARGUMENT .......................................................................................................12

I.    The Automatic Stay Prevents Ferc From Interfering with the Debtors' Right to Reject Executory Contracts Under Section 365 of the Bankruptcy Code .........................................12

    A.    FERC Action Fails the Public Policy Test.................................13

    B.    Any FERC Action Also Fails the Pecuniary Interest Test.........15

II.    Alternatively, this Court Should Protect its Own Jurisdiction Over the Property of the Debtors' Estates and the Authorization of Rejection Decisions by Enjoining Ferc .................16

    A.    This Court Has the Authority to Enjoin FERC Under Section 105 ...........................16

    B.    The Requirements for Injunctive Relief Under Section 105 Plainly Exist Here .........17

        1.    The Debtors Have a Reasonable Likelihood of a Successful Reorganization .........................18

        2.    Absent an Injunction, the Debtors Will Suffer Irreparable Harm...................19

            a.    FERC Action Threatens this Court's Exclusive Jurisdiction..............20

            b.    FERC Action Threatens the Integrity of the Bankruptcy Code..........22

        3.    Injunctive Relief Would Harm Neither FERC Nor the PPA Counterparties .........................23

        4.    Public Policy Favors Issuing the Injunction .................24

CONCLUSION.....................................................................................................24

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams Fruit Co. v. Barrett*,
    494 U.S. 638 (1990)..................................................................................................7

*In re Ambanc La Mesa Ltd. P'ship*,
    115 F.3d 650 (9th Cir. 1997) ...................................................................................5

*In re AMR Corp.*,
    730 F.3d 88 (2d Cir. 2013).....................................................................................22

*Atl. City Elec. Co. v. F.E.R.C.*,
    295 F.3d 1 (D.C. Cir. 2002)..................................................................................5, 6

*Bank of the West v. Fabtech Indus. (In re Fabtech)*,
    2010 Bankr. LEXIS 5097 (B.A.P. 9th Cir. July 19, 2010) ........................................20

*Begier v. Internal Revenue Serv.*,
    496 U.S. 53 (1990)................................................................................................14

*In re Bel Air Chateau Hosp., Inc.*,
    611 F.2d 1248 (9th Cir. 1979) ...............................................................................21

*In re Billing Res.*,
    2007 Bankr. LEXIS 3789 (Bankr. N.D. Cal. Nov. 2, 2007)................................. *passim*

*In re Birting Fisheries*,
    300 B.R. 489 (B.A.P. 9th Cir. 2003).......................................................................18

*In re Bulldog Trucking, Inc.*,
    150 B.R. 912 (W.D.N.C. 1992) ..............................................................................18

*Cal. Elec. Oversight Bd. v. Calpine Energy Servs., L.P.*,
    114 F.E.R.C. ¶ 61,006 (2006) ...............................................................................12

*California Electricity Oversight Board v. Calpine Energy Services, L.P.*,
    114 FERC ¶ 61,003 (2006) ....................................................................................13

*In re Calpine*,
    337 B.R. 27 (S.D.N.Y. 2006) (Casey, J.)...........................................................12, 13

*In re Canter*,
    299 F.3d 1150 (9th Cir. 2002) ...............................................................................18

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995)..............................................................................................17

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-03003   Doc# 2   Filed: 01/29/19   Entered: 01/29/19 01:52:42   Page 4 of 33

*Chao v. Hospital Staffing Services, Inc.*,
  270 F.3d 374 (6th Cir. 2001) ....................................................................15, 16

*In re Charter First Mortg., Inc.*,
  42 B.R. 380 (Bankr. D. Or. 1984) ...............................................................4, 14

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ........................................................................................6

*In re Christensen*,
  167 B.R. 213 (D. Or. 1994) ......................................................................14, 17

*Cinicola v. Scharffenberger*,
  248 F.3d 110 (3d Cir. 2001) ..........................................................................22

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982) .......................................................................15

*In re Computer Commc'ns Inc.*,
  824 F.2d 725 (9th Cir. 1987) .........................................................................21

*In re CoServ, L.L.C.*,
  273 B.R. 487 (Bankr. N.D. Tex. 2002) ...........................................................5

*Crandon v. United States*,
  494 U.S. 152 (1990) (Scalia, J., concurring) ..................................................7

*In re Dan Hixson Chevrolet Co.*,
  12 B.R. 917 (Bankr. N.D. Tex. 1981) ...........................................................17

*In re Dingley*,
  852 F.3d 1143 (9th Cir. 2017) ...........................................................14, 16, 17

*Employment Dev. Dep't v. Bertuccio*,
  2011 U.S. Dist. LEXIS 37244 (N.D. Cal. March 28, 2011) ..........................16

*In re Excel Innovations, Inc.*,
  502 F.3d 1086 (9th Cir. 2007) ...........................................................17, 19, 20

*First Alliance Mortg. Co. v. First Alliance Mortg. Co.*,
  264 B.R. 634 (C.D. Cal. 2001) ......................................................................21

*FirstEnergy Sols. Corp. v. Fed. Energy Regulatory Comm'n*,
  2018 Bankr. LEXIS 1488 (Bankr. N.D. Ohio May 18, 2018) ..................*passim*

*Gordon v. New York Stock Exchange, Inc.*,
  422 U.S. 659 (1975) .........................................................................................7

*Grays Harbor Cty. Wash. v. IDACORP Inc.*,
  379 F.3d 641 (9th Cir. 2004) ....................................................................15, 22

Case: 19-03003   Doc# 2   Filed: 01/29/19   Entered: 01/29/19 01:52:42   Page 5 of 33

*In re Gruntz*,
 202 F. 3d 1074 (9th Cir. 2000) ....................................................................13, 18, 19

*In re Holly Marine Towing, Inc.*,
 669 F.3d 796 (7th Cir. 2012) ...........................................................................................5

*In re Hunt*,
 93 B.R. 484 (Bankr. N.D. Tex. 1988) ..........................................................................18

*In re Ionosphere Clubs, Inc.*,
 922 F.2d 984 (2d Cir. 1990) ..........................................................................................18

*In re Ionosphere Clubs, Inc.*,
 98 B.R. 174 (Bankr. S.D.N.Y. 1989) ............................................................................20

*Kern River Gas Transmission Co.*,
 101 FERC ¶ 61,374 (2002) ............................................................................................12

*In re Lazarus Burman Assocs.*,
 161 B.R. 891 (Bankr. E.D.N.Y. 1993) ..........................................................................26

*In re Linda Vista Cinemas, L.L.C.*,
 2010 Bankr. LEXIS 1743 (Bankr. D. Ariz. May 25, 2010) ..........................................20

*In re Locke*,
 180 B.R. 245 (Bankr. C.D. Cal. 1995) ..........................................................................23

*Lockyer v. Mirant Corp.*,
 398 F.3d 1098 (9th Cir. 2005) .......................................................................................16

*In re Medicar Ambulance Co.*,
 166 B.R. 918 (Bankr. N.D. Cal. 1994) ..........................................................................14

*In re Mirant*,
 378 F.3d 511 (5th Cir. 2004) ............................................................................13, 23, 25

*In re Mirant Corp.*,
 299 B.R. 152 (Bankr. N.D. Tex. 2003) ..........................................................................18

*Montana Consumer Counsel v. F.E.R.C.*,
 659 F.3d 910 (9th Cir. 2011) ...........................................................................................5

*NLRB v. Bildisco & Bildisco*,
 465 U.S. 513 (1984) ..........................................................................................................4

*NLRB v. Continental Hagen Corp.*,
 932 F.2d 828 (9th Cir. 1991) .........................................................................................14

*NLRB v. Superior Forwarding, Inc.*,
 762 F.2d 695 (8th Cir. 1985) .........................................................................................18

Case: 19-03003    Doc# 2    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 6 of 33

*In re NRG Energy*,
 2003 U.S. Dist. LEXIS 11111 (S.D.N.Y. June 30, 2003)..................................3, 12, 22

*In re Olson*,
 2006 Bankr. LEXIS 4823 (B.A.P. 9th Cir. Nov. 21, 2006)...................................21

*In re Pac. Gas & Elec. Co.*,
 2004 U.S. Dist. LEXIS 22023 (N.D. Cal. Sept. 30, 2004) ....................................23, 24

*In re Pac. Gas & Elec. Co.*,
 263 B.R. 306 (Bankr. N.D. Cal. 2001) (Montali, J.)............................................18, 19

*In re Pac. Gas & Elec. Co.*,
 283 B.R. 41 (N.D. Cal. 2002) ...............................................................................20

*Pac. Gas & Elec. Co. v. California ex rel. California Dep't of Toxic Substances Control*,
 350 F.3d 932 (9th Cir. 2003) ................................................................................20

*Penn Terra Ltd. v. Dep't of Envtl. Res.*,
 733 F.2d 267 (3d Cir. 1984).................................................................................23

*In re Phillips*,
 2010 U.S. Dist. LEXIS 89834 (W.D. Wash. July 30, 2010) .................................22

*In re Poule*,
 91 B.R. 83 (B.A.P. 9th Cir. 1988).........................................................................14

*In re PTI Holding Corp.*,
 346 B.R. 820 (Bankr. D. Nev. 2006) .....................................................................26

*In re Richmond Paramedical Servs., Inc.*,
 94 B.R. 881 (Bankr. E.D. Va. 1988).....................................................................18

*SAS Inst., Inc. v. Iancu*,
 138 S. Ct. 1348 (2018) .........................................................................................6

*In re Tucson Yellow Cab Co.*,
 27 B.R. 621 (B.A.P. 9th Cir. 1983).......................................................................21

*In re Universal Life Church, Inc.*,
 128 F.3d 1294 (9th Cir. 1997) .............................................................................14, 17

*In re Vantage Petroleum Corp.*,
 25 B.R. 471 (Bankr. E.D.N.Y. 1982)....................................................................18

*Wah Chang v. Duke Energy Trading & Mktg., L.L.C.*,
 507 F.3d 1222 (9th Cir. 2007) .............................................................................15

DEBTORS' MEMORANDUM IN SUPPORT OF
PRELIMINARY INJUNCTION

v

**Statutes**

11 U.S.C. § 105 ............................................................................................................ *passim*

11 U.S.C. § 105(a) ............................................................................................................ 17

11 U.S.C. § 362(a) ........................................................................................................ 17, 19

11 U.S.C. § 362(b)(4) ......................................................................................... 13, 14, 16, 18

11 U.S.C. § 362(d)(2) ........................................................................................................ 24

11 U.S.C. § 365 ............................................................................................................... *passim*

11 U.S.C. § 365(a) .......................................................................................................... *passim*

11 U.S.C. § 365(d)(2) ...................................................................................................... 4, 24

11 U.S.C. § 507 ........................................................................................................... 16, 25

11 U.S.C. § 541 ................................................................................................................ 22

11 U.S.C. § 1129 ............................................................................................................... 5

16 U.S.C. § 824d(a) ............................................................................................................ 5

28 U.S.C. § 151 .............................................................................................................. 6, 22

28 U.S.C. §§ 157, 1334(e) ................................................................................................... 21

28 U.S.C. § 157(b)(2)(A), (O), and (G) ................................................................................. 15

28 U.S.C. § 157(b)(2)(G) .................................................................................................... 15

28 U.S.C. § 1334 ........................................................................................................... 6, 15

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-03003   Doc# 2   Filed: 01/29/19   Entered: 01/29/19 01:52:42   Page 8 of 33

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 case (the "**Chapter 11 Cases**"), and as Plaintiffs in the above-captioned adversary proceeding, respectfully submit this memorandum of points and authorities in support of the Debtors' Motion for Preliminary Injunction (the "**Motion**"). Knowing that the Debtors would be seeking Chapter 11 protection, and presumably seeking to preempt this Court's determination of its own jurisdiction, various counterparties to wholesale power purchase agreements with PG&E[1] initiated proceedings before the Federal Energy Regulatory Commission ("**FERC**"), requesting—on an expedited basis—that FERC enter an order that "if PG&E files for bankruptcy, PG&E may not abrogate, amend, or reject in a bankruptcy proceeding any rates, terms and conditions of its wholesale power purchase agreements subject to the Commission's jurisdiction without first obtaining approval from the Commission,"[2] (the "**FERC Proceedings**"). On January 25, 2019, FERC issued an order in NextEra's FERC Proceeding concluding that "this Commission and the bankruptcy courts have concurrent jurisdiction to review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy" (the "**NextEra Order**").[3] On January 28, 2019, FERC issued an order, in a separate proceeding, reaching a substantially similar conclusion[4] (the "**Exelon Order**," and together with the NextEra Order, the "**FERC Order**"). By this Motion, the Debtors respectfully request that this Court issue an order, pursuant to section 362 of title 11 of the United States Code (the "**Bankruptcy Code**"),[5] enforcing the automatic stay as to the FERC Proceedings, any entity's attempt to enforce the FERC Order, and any action by FERC, or any other entity, that would attempt to divest or otherwise nullify or impede this Court's exclusive authority to approve or deny the Debtors' requests to assume or reject executory contracts under section 365 of

---

[1]  NextEra Energy, Inc. and NextEra Energy Partners, L.P. (collectively, "**NextEra**"), Exelon Corporation ("**Exelon**") and EDF Renewables, Inc. ("**EDFR**") (collectively, the "**FERC Complainants**").

[2]  *See* **Exhibit 1** (NextEra Order) at 1; **Exhibit 2** (Exelon Order) at 1. Unless otherwise noted, all citations to Exhibits refer to attachments to the Debtors' Request for Judicial Notice.

[3]  *See* **Exhibit 1**(NextEra Order) at 14; **Exhibit 2** (Exelon Order) at 12.

[4]  *See* **Exhibit 2** (Exelon Order) at 12.

[5]  Capitalized terms used in this MPA and not otherwise defined, shall have the meanings ascribed to them in the Declaration of Jason P. Wells in Support of First Day Motions and Related Relief (the "**First Day Decl.**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-03003   Doc# 2   Filed: 01/29/19   Entered: 01/29/19 01:52:42   Page 9 of 33

the Bankruptcy Code (collectively, "**FERC Action**"). To the extent the automatic stay does not apply, the Debtors respectfully request that this Court exercise its powers under section 105 of the Bankruptcy Code to preliminarily and permanently enjoin any FERC Action, in order to preserve the Bankruptcy Court's jurisdiction, as well as to prevent irreparable harm to the Debtors' estates and the reorganizational goals of the Bankruptcy Code.

## PRELIMINARY STATEMENT[6]

To be clear, the Debtors have not made any decisions regarding whether to assume or reject contracts in the context of the Chapter 11 cases. Nevertheless, the FERC Order infringes on this Court's exclusive jurisdiction over property of the Debtors' estates, including executory contracts. And FERC's pronouncement of its "concurrent" jurisdiction has already been rejected by one Bankruptcy Court. *See FirstEnergy Sols. Corp. v. Fed. Energy Regulatory Comm'n*, 2018 Bankr. LEXIS 1488, at *47 (Bankr. N.D. Ohio May 18, 2018). There, in asserting its "concurrent" jurisdiction, FERC maintained[7] that *after* a debtor-in-possession, such as the Debtors here, rejects (with Bankruptcy Court approval) a filed-rate power contract, FERC can conduct a "regulatory review" at the conclusion of which *FERC may demand the Debtors perform the terms of the contract anyway*. Moreover, according to FERC, appellate review of its "regulatory review" lies only in the federal courts of appeals. *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at *37. United States Bankruptcy Judge for the Northern District of Ohio Alan Koschik rightfully recognized two things about FERC's asserted concurrent jurisdiction. *See id.* At best, it is a "costly procedural delay of the final treatment rejection claims will receive in the bankruptcy case." *Id.* At worst, it is an "inappropriate violation of the Bankruptcy Code's priority scheme." *Id.* Accordingly, he held that section 362 automatically stayed the FERC proceedings pending against the *FirstEnergy* debtors. *See id.* at *19–32. And to preserve its exclusive authority over the Debtors' property, the

---

[6] Unless otherwise specified, all emphasis is added and internal citations and quotations are omitted.

[7] *See* **Exhibit 1** (NextEra Order) at 14 ("[T]hese agreements are still subject to the Commission's jurisdiction and the Commission maintains discretion to exercise its authority."); **Exhibit 2** (Exelon Order) at 12; *see In re NRG Energy*, 2003 U.S. Dist. LEXIS 11111 (S.D.N.Y. June 30, 2003) (Casey, J.) (FERC took same position and required the debtor to continue post-petition performance under power purchase agreement even though Bankruptcy Court had granted the debtor's motion to reject that same agreement).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-03003   Doc #: 2   Filed: 01/29/19   Entered: 01/29/19 01:52:42   Page 10 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*FirstEnergy* court alternatively held that injunctive relief under section 105 was warranted to *preserve the Bankruptcy Court's jurisdiction*, as well as to prevent irreparable harm to the debtor's estates and the reorganizational goals of the Bankruptcy Code—including the power to reject contracts. *See id.* at *32–61. To prevent FERC's jurisdictional infringement, this Court should reach the same conclusions here. Simply put, Congress has not given FERC a part to play when allowing a debtor to reject contracts in its considered business judgment.

*First*, this Court should grant the requested relief to prevent irreparable harm to the Debtors' reorganization. The FERC Order effectively serves to give FERC a veto right over this Court's section 365 decisions. In so doing, any FERC Action would infringe upon the Debtors' right to reject, one of the Code's fundamental tools that "is vital to the basic purpose of a Chapter 11 reorganization." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("rejection can release the [D]ebtor[s'] estate[s] from burdensome obligations that can impede a successful reorganization."). This tool is particularly important here because the Debtors' various executory power purchase agreements or other FERC-regulated agreements (collectively, the "**PPAs**")[8] represent contractual commitments aggregating approximately $44 billion. Moreover, given the multiple parties with a stake in these Chapter 11 Cases, it is important that the Debtors are able to take a holistic view of deciding whether to assume or reject these contracts. Indeed, the Debtors' commitments and obligations to their PPA Counterparties are not the only focus of these Chapter 11 Cases. The Debtors must also, among other things, properly address the claims of the victims of the 2017 and 2018 Wildfires, as well as work constructively and collaboratively with policy makers, state regulators, and relevant stakeholders to support California's commitment to clean energy initiatives. The latter requires considering a range of alternatives to provide for the safe delivery of natural gas and electric service for the long-term in an environment that continues to be challenged by climate change.

The Debtors' section 365 rights may play a vital role in the reorganized Debtors' post-emergence operations and financial profile. But those are decisions the Debtors will need to make,

---

[8]     A list of the PPAs is provided in **Exhibit 1** to the Declaration of Fong Wan in Support of Debtors' Motion for Preliminary Injunction, dated January 28, 2019 (the "**Wan Declaration**").

Case: 19-03003     Doc# 12     Filed: 01/29/19     Entered: 01/29/19 01:52:42     Page 11 of 33

and will make—not prior to the date of filing—but "at any time before the confirmation of the plan." 11 U.S.C. § 365(d)(2). And the Debtors need to make those decisions with the knowledge that once this Court rules on any rejection request, that ruling is final and not subject to second-guessing and potential nullification by FERC.

*Second*, this Court should grant the requested relief to preserve the integrity of the Bankruptcy Code. In fact, the FERC Order, if taken to its logical conclusion, could stand in the way of this Court's ability to confirm a plan of reorganization.[9] If the FERC Order were enforceable, a select group of the Debtors' unsecured creditors—the PPA Counterparties—would receive special treatment based on nothing more than FERC's "discretion."[10] As the Bankruptcy Court noted in *FirstEnergy*, the practical effect of FERC's "regulatory review" of this Court's section 365 decisions would be to create a class of creditors that "stand on a different platform than all other holders of rejection claims against the Debtors." *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at *29. The FERC Complainants' windfall, of course, would come directly from general unsecured creditors, including the victims of the 2017 and 2018 Wildfires. Those individuals, however, do not have an administrative agency willing to upend the Bankruptcy Code's priority scheme in order to enforce their rights. This Court should enjoin any FERC Action to prevent irreparable harm to the Debtor's estates as well as the public interest in the reorganizational goals of the Bankruptcy Code.

*Third*, FERC Action raises serious constitutional questions. "FERC is a creature of statute, having no constitutional or common law existence or authority, but only those authorities conferred upon it by Congress." *Atl. City Elec. Co. v. F.E.R.C.*, 295 F.3d 1, 8 (D.C. Cir. 2002). The authority that Congress has conferred on FERC is clear: the Federal Power Act "requires, and charges FERC with ensuring, that '[a]ll rates and charges made, demanded, or received' by power wholesalers be 'just and reasonable.'" *Montana Consumer Counsel v. F.E.R.C.*, 659 F.3d 910, 914 (9th Cir. 2011)

---

[9] "The bankruptcy court ha[s] an affirmative duty to ensure that [any debtor-proposed] Plan satisfie[s] all 11 U.S.C. § 1129 requirements for confirmation." *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir. 1997). One of those requirements mandates compliance with "a priority scheme dictating the order in which various creditors' claims will be satisfied in the course of bankruptcy proceedings." *In re Holly Marine Towing, Inc.*, 669 F.3d 796, 800 (7th Cir. 2012). That scheme "favors equal (and simultaneous) treatment of equal allowed claims." *In re CoServ, L.L.C.*, 273 B.R. 487, 494 (Bankr. N.D. Tex. 2002).

[10] *See* **Exhibit 1** (NextEra Order) at 14; **Exhibit 2** (Exelon Order) at 12.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1  (citing 16 U.S.C. § 824d(a)) (alteration in original). FERC's finding that rejection in bankruptcy of

2  an executory contract "alters the essential terms and conditions of the contract and the filed rate" and

3  that "this Commission's jurisdiction is implicated, and our approval is required,"[11] far exceeds this

4  limited authorization. As an Article II agency, the Executive can only confer upon FERC "those

5  authorities conferred upon [the Executive] by Congress." *Atl. City Elec. Co. v. F.E.R.C.*, 295 F.3d at

6  8. Congress has not conferred upon FERC the power to prohibit a debtor from rejecting wholesale

7  power purchase agreements. And FERC's decision to do so raises a separation of powers problem:

8  FERC's Order purports to permit the Executive to take power that it does not have, and where "there

9  is no statute conferring authority, FERC has none." *Id.*

10      Congress has spoken clearly here. It has bestowed "original and exclusive jurisdiction of all

11  cases under title 11" on Article III federal district courts, notwithstanding "any Act of Congress that

12  confers exclusive jurisdiction on a court or courts other than the district courts." 28 U.S.C. § 1334.

13  That jurisdiction may be, and here has clearly and unambiguously been, referred to the Bankruptcy

14  Courts as units of the district courts. *See id.* § 151. And under 11 U.S.C. § 365, Congress vested in

15  this Court a broad grant of exclusive power subject to specific limitations and exceptions. *See* 11

16  U.S.C. § 365; *FirstEnergy*, 2018 Bankr. LEXIS 1488, at *44. While the list of specific and express

17  limitations and exceptions is long, it is not one that includes filed-rate contracts nor one that carves

18  out room for FERC Action. *Id.*

19      FERC may suggest that its interpretation of its own governing statute (the FPA) is entitled to

20  deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 865 (1984). The

21  Debtors disagree. A court "owe[s] an agency's interpretation of the law no deference" where, as

22  here, the "statutory provisions before [it] deliver unmistakable commands." *SAS Inst., Inc. v. Iancu*,

23  138 S. Ct. 1348, 1358 (2018). FERC has no right to tell this Court which executory contracts the

24  Debtors can and cannot reject and, conversely, the Court has no right to authorize the unilateral

25  modification of rates as that is the province of FERC. There is no conflict between the two.

26  Moreover, FERC is not just seeking to interpret its statute, the Federal Power Act, in isolation; it is

27  seeking to interpret it in a way that limits the Bankruptcy Code. And Congress did not delegate to

28  ---

[11]  *See* **Exhibit 1** (NextEra Order) at 13; **Exhibit 2** (Exelon Order) at 12.

Case: 19-03003   Doc# 12   Filed: 01/29/19   Entered: 01/29/19 01:52:42   Page 13 of 33

1  FERC the authority to address a statute it does not administer.  Indeed, the U.S. Supreme Court has

2  recognized that "reconciliation" of distinct statutory regimes "is a matter for the courts," not

3  agencies.[12]  Otherwise, an agency eager to advance its statutory mission, but without any particular

4  interest or expertise with a second statute, might (as here) seek to diminish the second statute's scope

5  in favor of a more expansive interpretation of its own—effectively "bootstrap[ping] itself into an

6  area in which it has no jurisdiction."[13]

7       Indeed, FERC's position is unsurprising. "Any [government] lawyer advising on whether

8  particular conduct violates [the FPA] will obviously err in the direction of inclusion rather than

9  exclusion—assuming, to be on the safe side, that the statute may cover more than is entirely

10  apparent." *Crandon v. United States*, 494 U.S. 152, 177–78 (1990) (Scalia, J., concurring).  FERC

11  "knows that if it takes an erroneously narrow view of what it can [oversee] the error will likely never

12  be corrected, whereas an erroneously broad view will be corrected by the courts." *Id*. at 178.  This

13  Court should correct FERC's erroneously broad view of its own jurisdiction, and restrain FERC

14  from interfering with the Debtors' Chapter 11 Cases and this Court's jurisdiction over them.

15  Specifically, this Court should hold that, because the Debtors' PPAs are property of the estates, it

16  enjoys exclusive jurisdiction over them, as well as exclusive jurisdiction over the Debtors' ability to

17  seek authority to assume or reject executory contracts under section 365.  This Court should also

18  hold that FERC Action—including any attempts to enforce the FERC Order—would violate the

19  automatic stay.  Finally, to the extent the automatic stay does not apply, this Court should

20  preliminarily and permanently enjoin FERC from engaging in any action or asserting any

21  jurisdiction that would interfere, or otherwise impede or undermine, with the Debtors' right to seek

22  authority to reject a power contract pursuant to section 365(a).

23                                    **BACKGROUND**

24       PG&E Corp. is a holding company whose primary operating subsidiary is the Utility, a

25  public utility operating in northern and central California.  *See* Declaration of Jason Wells in Support

26  of Chapter 11 Petition and First Day Motions (the "**Wells Decl.**") at 7.  The Utility provides natural

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

---

27
28  [12]  *Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 685–686 (1975).
     [13]  *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 650 (1990).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

gas and utility services to approximately 16 million customers. *Id.* As of September 18, 2018, the Debtors, on a consolidated basis, had reported book value of assets and liabilities of approximately $71.4 billion and $51.7 billion, respectively. *Id.*

### A. The Chapter 11 Cases

The Debtors' decision to seek relief under chapter 11 followed a comprehensive review of a variety of factors and the issues facing the Debtors. *Id.* at 3. It represents the only viable alternative under the stark circumstances with which the Debtors are faced, and is in the best interests of all of the Debtors' stakeholders, including their millions of customers, employees, wildfire claimants, other creditors, employees, and shareholders. *Id.* The Chapter 11 Cases were necessitated by a confluence of factors resulting from the catastrophic and tragic wildfires that occurred in Northern California in 2017 and 2018, and PG&E's potential liabilities arising therefrom. *Id.* The multitude of pending claims and lawsuits, and the thousands of additional claims that will be asserted, made it abundantly clear that the Debtors could not continue to address those claims and potential liabilities in the California state court system, continue to deliver safe and reliable service to its 16 million customers, and remain economically viable. *Id.* As noted in the Debtors' Form 8-K ("**Form 8-K**") filed on January 14, 2019 with the United States Securities Exchange Commission, the Debtors' potential liability with respect to the 2017 and 2018 Northern California wildfires could exceed $30 billion, without taking into account potential punitive damages, fines and penalties or damages with respect to "future claims." *Id.* And, under certain circumstances, the Debtors' potential liability could be substantially greater. *Id.*

The Chapter 11 Cases represent the best means to preserve and maximize the value of the Debtors' business enterprise and are in the best interests of all of their economic stakeholders, including wildfire claimants, the Debtors' other creditors. *Id.* at 6. Chapter 11 will provide the Debtors and all parties in interest with one forum to comprehensively address and resolve the Debtors' potential wildfire liabilities in a fair and expeditious manner, and will assure equality of treatment among all similarly-situated creditors of the Debtors—including wildfire claimants, contractual counterparties, debtholders, and others. *Id.* at 6–7. Additionally, the Chapter 11 Cases will assure that the Debtors have the resources—financial and otherwise—to sustain their operations,

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

provide critical utility services safely and reliably, and continue their efforts to rebuild and restore the communities that they serve. *Id.* at 7.

### B. The Debtors' FERC-Regulated PPAs

Recent changes in the energy landscape have significantly altered the Debtors' procurement needs going forward. *See* Wan Decl. ¶ 9. Specifically, the Debtors' current electricity supply portfolio, decreasing bundled electric load, *i.e.*, customer demand, and continuing state regulatory oversight now require that the Debtors comprehensively assess how each PPA fits within the Debtors' energy portfolio. *Id.* ¶ 9.

As of December 2017, the Debtors' PPAs represent contractual commitments aggregating approximately $42 billion. *Id.* ¶ 10. As of January 2019, the Utility is a counterparty as buyer under at least (387) PPAs, which involve approximately three hundred fifty (350) counterparties, for a total of approximately 13,668 Megawatts of contracted capacity. *Id.* Many of the Utility's PPAs are long-term contracts to procure renewable energy resources, which the Utility entered into to satisfy renewable energy requirements set by the State of California. *Id.* ¶¶ 11-12. These contracts obligate the Debtors to purchase energy at rates that are significantly higher rates than are currently available to their competitors. *Id.* ¶ 13. Moreover, in recent years, the number of customers receiving electric supply service from the Debtors, and the amount of electricity that the Utility is providing to those customers, has decreased significantly due to multiple factors, including the expansion of Direct Access ("**DA**") and Community Choice Aggregation ("**CCA**") providers in California. *Id.* ¶¶ 18–23.

Given the fact that many of the Debtors' power supply contracts are at above-market rates, and in light of the decrease in the Debtors' bundled electric load, the Debtors have undertaken significant efforts to reduce their supply portfolio in recent years. *Id.* ¶¶ 15–17. These efforts include the retirement of the Utility's 2,200 Megawatt Diablo Canyon facility at the end of its current operating license, efforts to divest certain hydroelectric facilities in the Utility's portfolio, and entering into contracts to re-sell electricity and other excess capacity products. *Id.*

All of the Debtors' major supply portfolio decisions are subject to review by the California Public Utilities Commission ("**CPUC**"), including through the CPUC's biennial review of the

Case: 19-03003    Doc# 12    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 16 of 33

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Debtors' and other investor-owned utilities' ("**IOUs**") procurement plans, as well as via other regular proceedings. *Id.* ¶¶ 24–26. Notably to the Debtors' assessment of their PPAs, the CPUC recently indicated that it will consider the portfolio optimization activities of California's IOUs, all of which are losing substantial electric customer load in 2019, including allocation of third-party contracts to DA and CCA providers and auctioning off excess resources. *Id.* ¶ 25.

Simply put, if the Debtors do not need the power or other capacity products provided under the PPAs to meet customer demand, satisfy, applicable laws, or advance important policy objectives, they may decide that the most prudent avenue is to reject certain PPAs in the exercise of their business judgment. While it is entirely possible that the Debtors ultimately decide to reject none, or a very limited number, of their PPAs, the Debtors will sustain irreparable harm if FERC were to compel a different outcome that which the Debtors, in their business judgment and subject to this Court's approval, determine is most likely to result in their successful reorganization. *Id.* ¶ 27. For example, if FERC were to compel the Utility to perform under a particular PPA that the Debtors believed—in their business judgment and after assessing their entire, interrelated PPA portfolio, bundled electric load, and regulatory obligations—was not necessary, and the Bankruptcy Court agreed, the impact across the Debtors' business would be substantial. *Id.*

Given the very complicated and extensive nature of the Debtors' PPA portfolio, as well as the implications for the Debtors' business and their ongoing regulatory relationship with the CPUC,[14] it is imperative that the Debtors make informed and thoughtful decisions regarding their energy portfolio going forward. Moreover, the CPUC is currently considering a variety of alternate corporate structures for PG&E—*e.g.*, turning the gas and electric divisions into separate companies, creating regional subsidiaries, and dividing PG&E up into multiple smaller utilities operating under a

---

[14] On June 29, 2017, the CPUC opened a proceeding (Rulemaking(R.)17-06-026) to consider alternatives to the amount that CCA and DA customers pay in order to keep remaining utility customers financially unaffected by their departure. The Power Charge Indifference Adjustment ("**PCIA**") is the current mechanism used to mitigate the costs of the long-term financial obligations the Debtor incurred on behalf of now-departed customers. While the proceeding remains open, the CPUC has revised the methodology used to calculate PCIA and implementation of that methodology may have a significant impact on the Debtors' evaluation of the PPAs. *See* Decision(D.)18-10-019 *Decision Modifying the Power Charge Indifference Adjustment Methodology* (CPUC Oct. 11, 2018) (**Exhibit 3**).

Case: 19-03003    Doc# 12    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 17 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    single parent company.[15]  If the CPUC decides to pursue any one of these alternatives, both the

2    Debtors and its state regulators will have to make difficult choices, including some that may affect

3    the Debtors' PPA counterparties, in order to successfully reorganize and remain compliant with

4    applicable State procurement requirements.  Thus, while the Debtors are not currently seeking

5    authorization to reject any PPAs, their statutory right to do so at the appropriate time should be

6    preserved and protected, as it may be a vital component of the reorganization process.  Those rights

7    cannot be undermined by FERC in separate proceedings outside these Chapter 11 Cases.  The

8    Debtors, and other stakeholders here, need the certainty of knowing that once this Court makes a

9    decision with respect to any rejection motion the Debtors may file, that decision will not be subject

10   to further proceedings at FERC.

### C.    The Necessity of this Adversary Proceeding

12          On January 25, 2019 FERC issued an order finding that it shares with this Court "concurrent

13   jurisdiction to review and address the disposition of wholesale power contracts sought to be rejected

14   through bankruptcy."  *See* **Exhibit 1** (NextEra Order) at 12.[16]  The FERC Order states that this

15   conclusion gives effect to both the FPA and the Bankruptcy Code.  *Id.*[17]  By FERC's reasoning, "a

16   party to a Commission-jurisdictional wholesale power purchase agreement must obtain approval

17   from both the Commission and the bankruptcy court to modify the filed rate and reject the contract,

18   respectively."  *Id.*[18]  Presumably, this means that FERC approval is necessary to modify the filed

19   rate and Bankruptcy Court approval is necessary to reject the contract.  In FERC's view, rejection of

---

15   On December 21, 2018, the CPUC issued a Scoping Memo and Ruling (the "**Scoping Memo**")
     setting forth the scope to be addressed in the next phase of its ongoing investigation into whether
     the organizational culture and governance of PG&E prioritizes safety and adequately directs
     resources to promote accountability and achieve safety goals and standards (the "**Safety Culture
     OII**").  To address its concerns regarding PG&E's safety culture, the CPUC outlines a number of
     alternatives, including, but not limited to:  (i) replacement of all or part of PG&E's existing
     boards of directors and corporate management, (ii) separating PG&E's gas and electric
     distribution and transmission businesses into separate companies, (iii) reorganizing PG&E into
     regional subsidiaries based on regional distinctions, (iv) constituting PG&E as a publicly owned
     utility or utilities, (v) separating PG&E's generation services from its distribution and
     transmission services and (vi) conditioning PG&E's return on equity on safety performance.  *See*
     Form 8-K; *see also* Scoping Memo (**Exhibit 4**) at 11–12.

16   *See also* **Exhibit 2** (Exelon Order) at 11.

17   *See also* **Exhibit 2** (Exelon Order) at 11.

18   *See also* **Exhibit 2** (Exelon Order) at 11.

---

Case: 19-03003    Doc# 12    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 18 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

a Commission-jurisdictional contract in bankruptcy "alters the essential terms and conditions of the contract and the filed rate," and FERC's "approval is required." *Id.* at 13.[19] In other words, according to FERC, this Court's judgment is insufficient to render decisions under section 365 with respect to the Debtors' PPAs.

FERC's view has changed over time. As recently as 2002, FERC recognized that because the contracts it regulates are executory contracts, applicable bankruptcy law affords a debtor "the right to determine, at its sole discretion, whether to reject or [assume]" them. *Kern River Gas Transmission Co.*, 101 FERC ¶ 61,374 (2002). In that opinion, FERC mentions that "[o]n February 28, 2002, Enron rejected Contract No. 1866, under applicable bankruptcy procedures." *Id.*

The next year, FERC unilaterally ordered a debtor's post-petition performance under PPAs while the debtor's motion to reject such contracts was pending. *See NRG Energy*, 2003 U.S. Dist. LEXIS 11111, at *4. Then, after the Bankruptcy Court approved the debtor's rejection motion under the applicable business judgment standard, FERC, applying a higher standard, issued a second order requiring the debtor to perform despite the Bankruptcy Court's order. *Id.* at *4–6. FERC issued its second order while the District Court, after withdrawing the reference from the Bankruptcy Court, was considering a motion to enjoin FERC from enforcing its first order. *Id.* at *5–6. Ultimately, because FERC acted first, that District Court held—incorrectly, in the Debtors' view[20]—that it lacked jurisdiction to consider the debtor's motion for a preliminary injunction, thereby completely eviscerating NRG's section 365 rejection rights. *Id.* at *9–10.

A few years later, in *In re Calpine*, the same District Court Judge vacated a temporary restraining order issued by the Bankruptcy Court that had prevented FERC from exercising jurisdiction over certain energy contracts that the debtor sought to reject. *See In re Calpine*, 337 B.R. 27, 30–31 (S.D.N.Y. 2006) (Casey, J.). District Court Judge Casey's decision is curious. Just

---

[19]   *See also* **Exhibit 2** (Exelon Order) at 12.

[20]   Not only is there nothing in the Code or the FPA that would support FERC's ability to impede on this Court's jurisdiction over the PPAs, which are property of the Debtors' estate, but such a holding would "defeat[] a central goal of the Bankruptcy Code of providing an efficient and centralized forum" because it would require a debtor to "litigate postpetition performance obligations in multiple forums" rather than attend to the matters in one court under the auspices of 11 U.S.C. § 365(a). *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at *57.

Case: 19-03003    Doc# 2    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 19 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

days earlier FERC had issued an advisory opinion stating: "the Commission is precluded from taking action under the FPA that impacts a debtor's ability to reject an executory contract." *Cal. Elec. Oversight Bd. v. Calpine Energy Servs., L.P.*, 114 F.E.R.C. ¶ 61,003 (2006). FERC's opinion adopted the Fifth Circuit's conclusions from *In re Mirant*, 378 F.3d 511, 522 (5th Cir. 2004).[21] But, as demonstrated by its position in *FirstEnergy* and the FERC Order, FERC is not adhering to its prior guidance.

## ARGUMENT

### I. THE AUTOMATIC STAY PREVENTS FERC FROM INTERFERING WITH THE DEBTORS' RIGHT TO REJECT EXECUTORY CONTRACTS UNDER SECTION 365 OF THE BANKRUPTCY CODE

The FERC Order, the FERC Action, and the FERC Proceedings are subject to the automatic stay. As appropriately recognized in *FirstEnergy*, "any order [FERC] might issue to compel the Debtors' performance under [the PPAs] would, in substance, be designed to obtain or control the property of the Debtors' estate and therefore, be void *ab initio*" as a violation of the automatic stay. *FirstEnergy*, 2018 Bankr. LEXIS 1488, at *32. Moreover, any attempt to enforce the FERC Order or to impose additional obligations beyond those required under the Bankruptcy Code would not fall within the governmental unit exception to the automatic stay. *See id.* (because FERC proceeding was "undertaken principally to adjudicate private rights", it was not excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4)).[22]

The Ninth Circuit applies two complementary tests to determine whether government action falls under the so-called "government regulatory exception" to the automatic stay: the public policy test and the pecuniary purpose test.[23] *See In re Dingley*, 852 F.3d 1143, 1146 (9th Cir. 2017) (citing

---

[21] *See also In re Mirant*, 378 F.3d 511, 522 (5th Cir. 2004) ("[I]t is clear that Congress intended § 365(a) to apply to contracts subject to FERC regulation.").

[22] ` Under clear Ninth Circuit authority, the bankruptcy courts have "final" and "ultimate" authority to determine the scope of the automatic stay, subject to [direct] federal appellate review. *In re Gruntz*, 202 F. 3d 1074, 1083, 1087 (9th Cir. 2000).

[23] The pecuniary purpose test has its origin in remarks made by Senator DeConcini and Representative Edwards during the passage of the Bankruptcy Code. The legislators asserted that the police-power exception "is intended to be given a narrow construction in order to permit governmental units to protect the *public health* and *safety* and not to apply to actions by a governmental unit to protect a pecuniary interest of the debtor or property of the estate." 1978 U.S.C.C.A.N. 6505, 6513 (statement of Sen. DeConcini); *see* 1978 U.S.C.C.A.N. 6436, 6444–45 (statement of Rep. Edwards). The floor statements Representative Edwards and Senator

Case: 19-03003    Doc# 12    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 20 of 33

*NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 833 (9th Cir. 1991)) (implicitly adopting the Sixth and Eighth Circuits' use of the pecuniary purpose and public policy tests). If government action "is intended *either* to protect the government's pecuniary interest in the debtor's property *or* to adjudicate private rights, the government regulatory exemption will *not* apply and the automatic stay *will* be imposed." *Dingley*, 852 F.3d at 1147 (citing *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997)).

### A. FERC Action Fails the Public Policy Test

The public policy test distinguishes between government actions that effectuate public policy and those that adjudicate private rights; only the former are exempt from the automatic stay under section 362(b)(4). *See Continental Hagen Corp.*, 932 F.2d at 833.[24] In other words, a governmental unit "cannot escape the automatic stay" by adjudicating the private rights of its citizens "under the guise of public protection." *In re Medicar Ambulance Co.*, 166 B.R. 918, 926 (Bankr. N.D. Cal. 1994) (suspension of Medicare payments was not exempt from the automatic stay under either test); *see also In re Christensen*, 167 B.R. 213, 216 (D. Or. 1994) (state construction board was subject to automatic stay because the "immediate purpose" of the board's action "was to assist a private citizen recover [*sic*] a pre-petition obligation of the debtor").[25] Because the FERC Order and any FERC

---

DeConcini are considered "persuasive evidence of congressional intent." *See Begier v. Internal Revenue Serv.*, 496 U.S. 53, 64 n.5 (1990).

[24] *See also In re Poule*, 91 B.R. 83, 86–87 (B.A.P. 9th Cir. 1988) ("Where the agency's action affects only the parties immediately involved in the proceeding, it is exercising a judicial function and the debtor is entitled to the same protection from the automatic stay as if the proceeding were being conducted in a judicial forum.") (unlike civil penalties, order directing debtor to pay contracting party was "not within the ambit of section 362(b)(4)" and was "therefore void") (citing *In re Charter First Mortg., Inc.*, 42 B.R. 380, 383–84 (Bankr. D. Or. 1984) (proceedings to determine restitution for debtor's consumer protection violations were not excepted from automatic stay)).

[25] *See also Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1250–51, 1254, 1266–77 (9th Cir. 1982) (permitting relief that was "not a question of a challenge to the legality of a rate approved by the ICC," "would not disturb any uniform rates; [and] would do nothing to ICC-approved rate structure."); *Wah Chang v. Duke Energy Trading & Mktg., L.L.C.*, 507 F.3d 1222, 1227 (9th Cir. 2007) (construing *Clipper Exxpress*, 690 F.2d 1240 (9th Cir. 1982) as "a case allowing relief where sham protests were filed with an agency in order to delay rate requests by the plaintiff, but neither the rates ultimately adopted by the agency nor its own procedures were in question."); *Grays Harbor Cty. Wash. v. IDACORP Inc.*, 379 F.3d 641, 652 (9th Cir. 2004) ("A complaint that merely seeks declaratory relief as to contract formation issues would not necessarily intrude upon the rate-setting jurisdiction of FERC."); *id.* at 653 (J. Callahan, dissenting) ("It is true that claims that are strictly contractual in nature are not preempted by the FPA.").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Action primarily implicate private contractual rights against the Debtors, they are not exempt from the automatic stay.

In addressing section 362's scope, the Bankruptcy Court in *FirstEnergy* held that the automatic stay bars FERC from "taking any action or asserting any jurisdiction that would interfere with a debtor's right to seek authority to reject a power contract pursuant to Section 365(a)." *FirstEnergy*, 2018 Bankr. LEXIS 1488, at *18–19.[26] Specifically:

> FERC is not free, notwithstanding the fact that in other contexts it exercises regulatory power, to prevent a chapter 11 debtor-in-possession who has successfully rejected a power contract from avoiding performance under the contract and reducing its financial exposure for the breach of contract to an allowed prepetition bankruptcy claim.[27]

*Id.* In reaching its decision, the Bankruptcy Court relied on the "controlling authority" governing the interpretation of the police and regulatory power exception to the automatic stay: *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374 (6th Cir. 2001). In *Chao*, the Sixth Circuit recognized that when government "action incidentally serves public interests but more substantially adjudicates private rights, courts should regard that suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-à-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities." *Id.* at 390. Notably, courts in the Ninth Circuit have repeatedly cited *Chao* with approval.[28]

Relying on *Chao*, *FirstEnergy* held that the "primary impact" of FERC's asserted

---

[26] Bankruptcy Judge Koschik held that he had jurisdiction over the debtors' adversary proceeding against FERC under 28 U.S.C. § 1334 and the applicable standing order of reference. *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at *6. Further, it was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (O), and (G). *See id.* ("[T]his proceeding directly implicates the scope of the automatic stay and the Court's enforcement of that stay and, therefore, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) as well."). FERC has no colorable reason to challenge this Court's jurisdiction here.

[27] The court had not yet considered the merits of the debtors' rejection motions. *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at *15. Here, no rejection motion is pending.

[28] *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) ("A suit does not satisfy the public purpose test if it is brought primarily to advantage discrete and identifiable individuals or entities rather than some broader segment of the public.") (citing *Chao*, 270 F.3d at 378); *Employment Dev. Dep't v. Bertuccio*, 2011 U.S. Dist. LEXIS 37244, at *20–21 (N.D. Cal. March 28, 2011) (affirming bankruptcy court's determination that state agencies' actions did not satisfy the public policy test) (citing *Chao*, 270 F.3d at 389).

"concurrent" jurisdiction "w[ould] be a pecuniary advantage to those counterparties relative to other similarly situated creditors." *FirstEnergy*, 2018 Bankr. LEXIS 1488, at *29. Specifically, should any entity attempt to enforce the FERC Order, and FERC compel performance, it would elevate the PPA Counterparties' claims to administrative expense status. Doing so would advantage those counterparties vis-à-vis other prepetition creditors, including all creditors holding valid claims based on the 2017 and 2018 Wildfires. Such a result makes no sense and would violate the Bankruptcy Code's priority scheme under section 507. *See id.* at *30; *see also Chao*, 270 F.3d at 389 (government action to enforce a contractual obligation is an extreme example of conduct not exempt from the automatic stay). Therefore, this Court should hold that, because any FERC Action would principally adjudicate private rights between the Debtors and their contractual counterparties, the automatic stay prohibits any FERC Action. *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at *32.

### B. Any FERC Action Also Fails the Pecuniary Interest Test

Because any FERC Action fails the public policy test, this Court need not consider the pecuniary interest test. Indeed, both *FirstEnergy* and *Chao* held that the automatic stay applied, even if the government's actions did not serve the government's direct pecuniary interest. *See Chao*, 270 F.3d at 388–89; *FirstEnergy*, 2018 Bankr. LEXIS 1488, at *28–29. Similarly, in its most recent decision discussing section 362(b)(4), the Ninth Circuit observed that the automatic stay *applies* if the government's action is intended *either* to protect the government's pecuniary interest in the debtor's property *or* to adjudicate private rights. *See Dingley*, 852 F.3d at 1147.

In any event, FERC Action fails the pecuniary interest test, too. The pecuniary interest test asks "whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare." *Dingley*, 852 F.3d at 1146 (citing *Universal Life Church*, 128 F.3d at 1297). Here, only the PPA counterparties have a pecuniary interest in the Debtors' continued purchase of their energy; FERC does not. Moreover, FERC's purported "concurrent" jurisdiction does not relate to any matters of public *safety* or *welfare*. Directing continued performance under a PPA between private parties is not necessary to avoid harming individuals or to ensure the health and safety of the public at large. This Court should look to the immediate purpose and effect of the FERC Order—usurping this Court's

Case: 19-03003    Doc# 12    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 23 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1   jurisdiction in order to define private contractual rights—and hold that the automatic stay applies to

2   the FERC Order and any FERC Action.  *See In re Christensen*, 167 B.R. at 216 (finding it was "not

3   enough" that a state board's "general purpose was to further consumer protection," because the

4   "immediate purpose" was to assist a private citizen in a dispute against the debtor); *In re Dan Hixson*

5   *Chevrolet Co.*, 12 B.R. 917, 920 (Bankr. N.D. Tex. 1981) (administrative proceedings regarding

6   franchise agreement were automatically stayed because the agency was acting in a quasi-judicial

7   capacity).

8   **II.   ALTERNATIVELY, THIS COURT SHOULD PROTECT ITS OWN JURISDICTION
        OVER THE PROPERTY OF THE DEBTORS' ESTATES AND THE**

9   **AUTHORIZATION OF REJECTION DECISIONS BY ENJOINING FERC**

10      **A.   This Court Has the Authority to Enjoin FERC Under Section 105**

11      Congress granted comprehensive jurisdiction to the Bankruptcy Courts so that they can deal

12  efficiently and expeditiously with all matters connected to the bankruptcy estate.  *See Celotex Corp.*

13  *v. Edwards*, 514 U.S. 300, 308 (1995).  And Section 105(a) of the Bankruptcy Code authorizes this

14  Court to "issue any order, process or judgment that is necessary or appropriate to carry out the

15  provisions of this title."  11 U.S.C. § 105(a).  Thus, the Ninth Circuit has held that protecting a

16  Bankruptcy Court's comprehensive jurisdiction over the estate when it might otherwise be

17  threatened is an appropriate use of section 105 of the Bankruptcy Code.  *See In re Excel Innovations,*

18  *Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007) ("Section 105(a) gives the bankruptcy courts the power to

19  stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but threaten the integrity of

20  a bankrupt's estate."); *In re Canter*, 299 F.3d 1150, 1155 (9th Cir. 2002) (same); *In re Gruntz*, 202

21  F.3d 1074, 1086–87 (9th Cir. 2000) (same); *see also In re Birting Fisheries*, 300 B.R. 489, 497

22  (B.A.P. 9th Cir. 2003) ("Under Section 105, the bankruptcy court can issue an injunction to restrain

23  activities that threaten the reorganization process or *impair the court's jurisdiction with respect to*

24  *the case before it*.").  And its sister circuits follow suit.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922

25  F.2d 984, 995 (2d Cir. 1990) ("[Section] 105, like [section] 362, is a means by which the bankruptcy

26  court can protect its jurisdiction."); *NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, 698 (8th Cir.

27  1985) ("[W]e hold that the bankruptcy court has the discretion and authority to enjoin federal

28  regulatory proceedings under § 105 when those proceedings would threaten the debtor's estate, and

Case: 19-05003   Doc# 12   Filed: 01/29/19   Entered: 01/29/19 01:52:42   Page 24 of 33

when the court has jurisdiction over a petition in bankruptcy.").

Therefore, even assuming the government regulatory exception to the automatic stay were applicable, this Court has the power and jurisdiction to enjoin federal agencies, like FERC.[29] *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at *34 (enjoining FERC under section 105 to the extent the automatic stay did not apply); *In re Mirant Corp.*, 299 B.R. 152 (Bankr. N.D. Tex. 2003) (same).[30] To prevent irreparable harm to the Debtors' reorganization efforts, preserve this Court's jurisdiction over the chapter 11 estate, and protect the integrity of the Bankruptcy Code, this Court should enjoin any FERC Action, any attempt to enforce the FERC Order, and any attempt to prosecute the claims in the FERC Proceedings that would require the Debtors to seek FERC approval to reject executory contracts under Section 365 or that would impose any form of liability upon them for not doing so. Specifically, this Court should enjoin FERC from attempting to exercise "concurrent" jurisdiction over the Debtors' and this Court's section 365 decisions.[31]

**B. The Requirements for Injunctive Relief Under Section 105 Plainly Exist Here**

In the Ninth Circuit, the "usual preliminary injunction standard applies to stays of proceedings" not covered by section 362(a), with one caveat. *Excel*, 502 F.3d at 1094–96. In the bankruptcy context, rather than considering whether the moving party has demonstrated likelihood of success on the merits, "a bankruptcy court must consider whether the debtor has a reasonable

---

[29] *See In re Pac. Gas & Elec. Co.*, 263 B.R. 306, 321 (Bankr. N.D. Cal. 2001) (Montali, J.) ("There is a procedural avenue to forfend [government] actions that are not subject to the automatic stay but that threaten the bankruptcy estate: a request for an injunction under 11 U.S.C. § 105. The bankruptcy court's injunctive power is not limited by the delineated exceptions to the automatic stay.").

[30] *See also In re Billing Res.*, 2007 Bankr. LEXIS 3789, at *31–32 (Bankr. N.D. Cal. Nov. 2, 2007) ("[T]his Court has the legal authority to enjoin prosecution of governmental actions against a debtor that falls within the regulatory and police powers exception of Bankruptcy Code section 362(b)(4).") (enjoining Federal Trade Commission); *In re Bulldog Trucking, Inc.*, 150 B.R. 912, 916 (W.D.N.C. 1992) (enjoining Interstate Commerce Commission); *In re Hunt*, 93 B.R. 484, 491–98 (Bankr. N.D. Tex. 1988) (enjoining Commodities Futures Trading Commission); *In re Richmond Paramedical Servs., Inc.*, 94 B.R. 881, 882 (Bankr. E.D. Va. 1988) (enjoining Department of Health and Human Services); *In re Vantage Petroleum Corp.*, 25 B.R. 471, 477 (Bankr. E.D.N.Y. 1982) (enjoining Department of Energy).

[31] This Court also has the "final" and "ultimate" authority to determine the scope and applicability of the automatic stay. *In re Gruntz, supra*, 202 F.3d at 1083, 1087. In *Gruntz*, an *en banc* decision, the Court of Appeals reasoned that because proceedings "to terminate, annul or modify" the stay are "core" functions of the bankruptcy courts within their exclusive jurisdiction, bankruptcy courts also have the implied power to enjoin interference with their jurisdiction to make determinations regarding the stay. *Id.*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-03003   Doc# 2   Filed: 01/29/19   Entered: 01/29/19 01:52:42   Page 25 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

likelihood of a successful reorganization, the relative hardship of the parties, and any public interest concerns if relevant." *Excel*, 502 F.3d at 1096; *see Billing Res.*, 2007 Bankr. LEXIS 3789, at *27 (adopting *Excel* standard to enjoin the Federal Trade Commission).[32] To balance the hardships between the parties, a Bankruptcy Court "must identify the harms which a preliminary injunction might cause to the defendants and weigh these against the plaintiff's threatened injury." *In re Billing Res.*, 2007 Bankr. LEXIS 3789, at *33. Here, each factor weighs decidedly in favor of enjoining FERC.

> ### 1. The Debtors Have a Reasonable Likelihood of a Successful Reorganization[33]

In the Ninth Circuit, a debtor seeking an injunction "must show a reasonable likelihood of a successful reorganization." *Excel*, 502 F.3d at 1095. To do so, the debtor must show that it has engaged in activities geared towards reorganization, describe what those "activities are [and explain] how [those activities] could meaningfully contribute to [the debtor's prospects] for reorganization." *Id.* at 1097. This is not a "high burden," and does not require the debtor to produce a specific plan of reorganization or speculate as to the likelihood of that plan's confirmation. *See Bank of the West v. Fabtech Indus. (In re Fabtech)*, 2010 Bankr. LEXIS 5097, at *12 (B.A.P. 9th Cir. July 19, 2010) (citing *Excel*, 502 F.3d at 1097). Indeed, "[a]t this early stage of [a] Debtor's bankruptcy case," the debtor is often in "clear pursuit of several viable avenues of possible reorganization," *see Billing Res.*, 2007 Bankr. LEXIS 3789, at *30 (Bankr. N.D. Cal. Nov. 2, 2007). This is unsurprising given "[t]he paramount policy and goal of Chapter 11, to which all other bankruptcy policies are subordinated, is the rehabilitation of the debtor." *In re Pac. Gas & Elec. Co.*, 283 B.R. 41, 59 (N.D. Cal. 2002) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989)) (alteration

---

[32] *See also In re TK Holdings Inc.*, Adv. Pro. No. 17–50880, Hr'g Tr. (**Exhibit 5**) at 25:21–24 (Bankr. D. Del. Aug. 16, 2017) ("I start with the likelihood of success. Case law here teaches that the proper focus is on the debtors' prospects for a successful reorganization and whether the conduct to be enjoined threatens that reorganization.") (enjoining actions brought by the States of Hawaii and New Mexico and the Government of the U.S. Virgin Islands).

[33] As this Court has observed, the likelihood of success prong can be "difficult" to apply in the reorganization context. *In re Pac. Gas & Elec. Co.*, 263 B.R. 306, 322 (Bankr. N.D. Cal. 2001) (Montali, J.). Some courts, like *FirstEnergy*, ask whether the debtor is reasonably likely to succeed in the adversary proceeding. *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at *34–53 (applying Sixth Circuit law). *But see Excel*, 502 F.3d at 1095–96 (doing so would "collapse the traditionally distinct merits and hardship prongs into a single hardship inquiry").

in original), rev'd on other grounds sub nom. *Pac. Gas & Elec. Co. v. California ex rel. California Dep't of Toxic Substances Control*, 350 F.3d 932 (9th Cir. 2003). And the equities "favor[] the debtor at the beginnings of a case." *In re Linda Vista Cinemas, L.L.C.*, 2010 Bankr. LEXIS 1743, at *5–6 (Bankr. D. Ariz. May 25, 2010).

Although the Debtors' Chapter 11 cases are newly filed, the Debtors have already made "tangible progress" towards reorganization. *See id.* For example, they have secured $5.5 billion in DIP financing that will allow them to continue to operate as they reorganize, and will ensure the continual income of significant cash flow from a customer base that in some instances has no other option but to rely upon the Debtors for critical services, such as electricity and natural gas. *See In re Billing Res.*, 2007 Bankr. LEXIS 3789, at *30 (noting that a debtor's "projections of positive cash flow" support a finding that the debtor has "met its burden of showing a reasonable likelihood of a successful reorganization"). Indeed, as a utility, the Debtors effectively must reorganize for the benefit of both the community and the people that they serve. To that end, the Debtors' efforts are entitled to significant deference "at this very early stage of the proceedings," and effectively demonstrate a reasonable likelihood of successful reorganization. *See Linda Vista Cinemas*, 2010 Bankr. LEXIS 1743, at *5.

### 2. Absent an Injunction, the Debtors Will Suffer Irreparable Harm

Bankruptcy Courts may enjoin governmental units where their actions will "threaten" the assets of the estate. *See First Alliance Mortg. Co. v. First Alliance Mortg. Co.*, 264 B.R. 634, 652 (C.D. Cal. 2001) ("*FAMCO*")[34] (citing *In re Bel Air Chateau Hosp., Inc.*, 611 F.2d 1248, 1251 (9th Cir. 1979); *In re Tucson Yellow Cab Co.*, 27 B.R. 621, 623 (B.A.P. 9th Cir. 1983)). Specifically, courts have concluded that a debtor is likely to suffer irreparable harm where governmental action threatens: (i) the Bankruptcy Court's exclusive jurisdiction over the *res* of the estate, or (ii) the integrity of the bankruptcy process. *See In re Billings Res.*, 2007 Bankr. LEXIS 3789, at *32 (citing *FAMCO*, 264 B.R. at 655). The FERC Order does both, and thus it irreparably harms the Debtors.

---

[34] *See FAMCO*, 264 B.R. at 653 & 654 n.20 ("[T]he general standard for enjoining a regulatory or police powers action under § 105 is closely tied to the irreparable injury prong of the test for injunctive relief. . . . [T]here is no 'special' or 'heightened' standard for issuance of § 105 injunctions against governmental units.").

Case: 19-03003   Doc# 2   Filed: 01/29/19   Entered: 01/29/19 01:52:42   Page 27 of 33

In addition, if the Debtors' determine that any of the PPAs should be rejected, and this Court were to

agree, then those determinations will factor into the Debtors' plan of reorganization. However,

under FERC's analysis, those determinations would not be final and would need to await FERC's

decision, applying different standards for consideration and with potentially opposite results.[35] Such

uncertainty with respect to the treatment of executory contracts is precisely what the Bankruptcy

Code seeks to avoid.

a.    FERC Action Threatens this Court's Exclusive Jurisdiction

Only this Court may authorize the Debtors' assumption and rejection decisions. *See* 11

U.S.C. § 365(a). Further, because the PPAs are executory contracts, and are property of the estate,

this Court's jurisdiction over them is exclusive. *See* 28 U.S.C. §§ 157, 1334(e).[36] This Court should

enjoin any FERC Action, including the FERC Order, to avoid the irreparable harm that would

necessarily befall the Debtors if they must also seek FERC's permission to reject any of their PPAs

and if FERC were to take steps to strip or otherwise undermine this Court's exclusive jurisdiction

over the PPAs pursuant to the FERC Order.

Specifically, an injunction is necessary to avoid the situation that arose in *NRG Energy*.

There, unencumbered by any court-ordered injunction, FERC compelled the debtor's post-petition

performance under an executory power agreement the debtor sought to reject. *See NRG Energy*,

---

[35] *See, e.g.*, *In re FirstEnergy Sols. Corp.*, Adv. Pro. No. 18-05021-AMK, Hr'g Tr. (Bankr. N.D. Ohio June 26, 2018) (**Exhibit 6**) at 83:16–87:17 ("[T]he Court is now prepared to conclude that the bankruptcy business judgment standard is what applies to these contested matters. . . The Court rejects any standard importing public interest principles from the Federal Power Act as FERC might otherwise consider in a different context.").

[36] *See also* General Order No. 24, *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges and Authorizing Bankruptcy Appeals to be Decided by the Ninth Circuit Bankruptcy Appellate Panel* (Feb. 22, 2016); *In re Olson*, 2006 Bankr. LEXIS 4823, at *17 (B.A.P. 9th Cir. Nov. 21, 2006) (a debtor's interest in executory contracts "falls within the definition of property of the estate") (citing *In re Computer Commc'ns Inc.*, 824 F.2d 725, 730 (9th Cir. 1987)); *In re Phillips*, 2010 U.S. Dist. LEXIS 89834, at *9–11 & n.1 (W.D. Wash. July 30, 2010) (even a rejected executory contract "remains property of the estate, but it is unenforceable against the estate") (collecting cases); *In re AMR Corp.*, 730 F.3d 88, 102 (2d Cir. 2013) (contract rights are property of the estate); *Cinicola v. Scharffenberger*, 248 F.3d 110, 124 (3d Cir. 2001) (executory contracts constitute property of the estate under § 541 of the Bankruptcy Code); *Grays Harbor*, 379 F.3d at 652 (9th Cir. 2004) ("A complaint that merely seeks declaratory relief as to contract formation issues would not necessarily intrude upon the rate-setting jurisdiction of FERC."); *id.* at 653 (J. Callahan, dissenting) ("It is true that claims that are strictly contractual in nature are not preempted by the FPA.").

Case: 19-05003    Doc #12    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 28 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

2003 U.S. Dist. LEXIS 11111, at *3–5.  Then, after the Bankruptcy Court granted the debtor's motion to reject the contract, FERC—still not subject to any injunction—entered a second order requiring the debtor to perform under the *rejected* contract, disregarding and effectively negating the Bankruptcy Court's order.  *Id.* at *6–7.  In so doing, FERC claimed to divest both the District Court *and* the Bankruptcy Court[37] of subject-matter jurisdiction.  *Id.* at *12.

While the Debtors disagree that the FERC Order or any FERC Action can operate to divest this Court of its exclusive jurisdiction over the Debtors' property—indeed such action by FERC would violate the automatic stay—the entire issue can be easily avoided.  This Court should enjoin any attempt by FERC to exercise its "concurrent" jurisdiction because it threatens this Court's comprehensive jurisdiction over the administration of the estate.  For example, assume this Court declines to enter an injunction.  Then, the Debtors subsequently move to reject an executory PPA, which this Court grants after applying the business judgment standard.  Further assume that FERC exercises its purported "discretion" to conduct a "regulatory review" of this Court's decision.  In so doing, FERC would likely impose the *Mobile-Sierra* doctrine, which would mean that this Court's decision would remain valid if, and only if, FERC determines that the filed rate seriously harms the public interest.  This is not *concurrent—i.e.*, operating or occurring at the same time—jurisdiction.  FERC's Order demotes this Court to an advisory role so that FERC can apply a standard of review (that is nowhere to be found in the Bankruptcy Code) to a subset of the Debtors' executory contracts.

It is understandable that FERC desires "concurrent" jurisdiction.  It is even understandable that FERC would attempt to assert jurisdiction by proclamation—no one else has any interest in doing it for them.  But only Congress can confer jurisdiction upon FERC.  And Congress has never given FERC the authority to review this Court's section 365 decisions.  In fact, in light of the numerous specific exceptions to the general section 365 authority to reject contracts that Congress chose to include in the Bankruptcy Code, "including those for other contracts subject to extensive regulation, and the absence of any exception for contracts subject to FERC jurisdiction, it is clear that Congress intended § 365(a) to apply to contracts subject to FERC regulation." *FirstEnergy*, 2018 Bankr. LEXIS 1488, at *41 (citing *Mirant*, 378 F.3d at 522).  The Fifth Circuit decided *Mirant*

---

[37]  Bankruptcy courts are defined as a unit of the District Court.  *See* 28 U.S.C. § 151.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Case: 19-03003    Doc# 12    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 29 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1   in August 2004. In the subsequent fourteen-year period, Congress has done nothing to correct the

2   Fifth Circuit's interpretation of the interaction between the FPA and the Bankruptcy Code.

3                    b.        FERC Action Threatens the Integrity of the Bankruptcy Code

4          FERC Action and the FERC Order threaten the integrity of the Bankruptcy Code in two

5   ways. First, it would repeal, by administrative fiat, section 365 of the Bankruptcy Code. Second, it

6   would advantage a FERC-selected group of PPA counterparties vis-à-vis the Debtors other

7   creditors—including, notably, those who have lost their homes and lives to the 2017 and 2018

8   Wildfires. Such action "run[s] so contrary to the policy of the Bankruptcy Code that it should not be

9   permitted." *See Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 273 (3d Cir. 1984).

10         The rejection doctrine was created to enable bankruptcy estate fiduciaries to free the estates

11  under their control from the onerous obligations of executory contracts and leases. *See In re Locke*,

12  180 B.R. 245, 260 (Bankr. C.D. Cal. 1995). Thus, to promote a successful reorganization, section

13  365 of the Bankruptcy Code grants a debtor the option to assume or reject executory contracts. *In re*

14  *Pac. Gas & Elec. Co.*, 2004 U.S. Dist. LEXIS 22023, at *21 (N.D. Cal. Sept. 30, 2004). Section

15  365, therefore, is a fundamental debtor right to which neither the Debtors' contractual counterparties

16  nor FERC are entitled. But a debtor may only exercise these rights with the approval of the

17  Bankruptcy Court. *See id.* Under FERC's theory of concurrent jurisdiction, however, the Debtors

18  could meet all of the requirements to reject an executory contract under section 365, as well as

19  prevailing Ninth Circuit law, but for certain contracts that would be insufficient. Because it

20  conflates rejection, *i.e.*, breach, with unilateral abrogation and modification, FERC would impose a

21  higher burden than the Bankruptcy Code requires. This amounts to an administrative repeal of

22  section 365 by creating a statutory exception that was never enacted by Congress.

23         Furthermore, under section 365(d)(2) of the Bankruptcy Code, the Debtors may seek

24  authority to exercise their rejection rights at any point before confirmation of the chapter 11 plan.

25  *See* 11 U.S.C. § 362(d)(2). If either FERC or one of the Debtors' contractual counterparties believes

26  that affording the Debtors their Congressionally-allotted timeframe creates "some manifest

27  unfairness," its remedy "lies *not* in seizing an undue advantage over other creditors but in a petition

28  to compel [assumption or rejection] under 11 U.S.C. § 365(d)(2)." *Pac. Gas & Elec. Co.*, 2004 U.S.

Case: 19-03003    Doc# 12    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 30 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Dist. LEXIS 22023, at *22. Because the automatic stay prohibits PPA counterparties, like all other contractual counterparties, from bringing or prosecuting an action to seize an undue advantage over other similarly situated creditors, PPA counterparties must therefore either await the Debtors' assumption or rejection decision or move to compel election.

Here, however, the FERC Complainants initiated the FERC Proceedings in the hopes that FERC would act before the Debtors filed their Chapter 11 petitions and section 362 took effect, which FERC did. Seemingly, the FERC Complainants' (and other PPA Counterparties') next step would be to leverage FERC's asserted "concurrent" jurisdiction into a result that would *require* the unequal treatment of general unsecured creditors. The FERC Complainants seek full value for the Debtors' obligations to them, even if it means disadvantaging individual victims of the 2017 and 2018 Wildfires. Failure to enjoin FERC from exercising its asserted "concurrent" jurisdiction would give PPA counterparties an unfair benefit—unavailable to any of the Debtors' other contract counterparties, or other creditors—that would upset the priority scheme set forth in section 507 of the Bankruptcy Code.

### 3. Injunctive Relief Would Harm Neither FERC Nor the PPA Counterparties

Should this Court issue an injunction, FERC would not be harmed at all. A preliminary injunction would not require this Court to modify a filed-rate contract in derogation of FERC's exclusive jurisdiction over such matters. *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at *57. Nor would a potential future rejection. In *FirstEnergy*, the Bankruptcy Court held that "rejection, including the attendant cessation of performance, does not intrude on FERC's jurisdiction over filed rates." *Id.* at *50–51 (imagining consequences of a solvent entity's failure to perform before filing for bankruptcy, and concluding "[r]ejection has exactly the same effect (breach) and the same result (a claim against the estate)"). In so ruling, the court echoed the Fifth Circuit's *Mirant* opinion and found that rejection of a filed-rate contract was *not* a collateral attack on the filed rate. *See id.* at *51 (citing *Mirant*, 378 F.3d at 522 ("A motion to reject an executory power contract is not a collateral attack upon that contract's filed rate because that rate is given *full effect* when determining the breach of contract damages resulting from the rejection.")). Rather, as the Bankruptcy Court held in *FirstEnergy*, any rejection of FERC-regulated contracts would actually vindicate the FERC-

Case: 19-03003    Doc# 12    Filed: 01/29/19    Entered: 01/29/19 01:52:42    Page 31 of 33

approved rates set forth in the PPAs by allowing damages *at* those filed rates through the claims process. *Id.* at \*57. In any event, injunctive relief would avoid a lengthy proceeding that is "likely void *ab initio.*" *Id.*

Nor would an injunction harm the Debtors' PPA counterparties. Holding that the Debtors retain the ability to seek authorization to reject contracts that the Bankruptcy Code allows the Debtors to reject "cannot be a cognizable substantial harm." *Id.* at \*58. Counterparties will be allowed to challenge any rejection motion that may be filed at the appropriate time and, if unsuccessful, will be entitled to allowed claims based on applicable non-bankruptcy law for prepetition breach of contract damages. *Id.* at \*52. The financial disappointment—which is hypothetical at this point—that their claims may not be paid in full will be fairly shared with all other unsecured creditors, as contemplated under the Bankruptcy Code. *Id.* [38] Absent an injunction, however, FERC would be free to essentially pick winners and losers from among the Debtors' creditors, contrary to the statutory scheme of the Bankruptcy Code.

### 4. Public Policy Favors Issuing the Injunction

In the context of a chapter 11 case, the public interest is served by "promoting a successful reorganization." *Id.* at \*58 (citing *In re Lazarus Burman Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993)); *see In re Billing Res.*, 2007 Bankr. LEXIS 3789, at \*43; *see also In re PTI Holding Corp.*, 346 B.R. 820, 832 (Bankr. D. Nev. 2006) ("The public interest in successful reorganizations is significant."). Here, preventing FERC from exercising "concurrent" jurisdiction will serve that interest and further assure that FERC does not have the ability to prioritize certain claimants over those that are similarly situated.

## CONCLUSION

For the foregoing reasons, this Court should grant the Motion and prevent FERC from exercising its asserted "concurrent" jurisdiction.

---

[38] *See FirstEnergy*, 2018 Bankr. LEXIS 1488, at \*52 ("The economic disappointment a power contract counterparty experiences in a debtor-party's bankruptcy case cannot be avoided by invoking the Federal Power Act and the filed rate doctrine any more than the disappointment of any other general unsecured creditor can be avoided by invoking the law of contract or tort.").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Dated: January 29, 2019

WEIL, GOTSHAL & MANGES LLP

KELLER & BENVENUTTI LLP

By: _/s/ Peter J. Benvenutti_
      Peter J. Benvenutti
*Proposed Attorneys for Debtors*
*and Debtors in Possession*