WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Theodore Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
pbenvenutti@kellerbenvenutti.com
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Plaintiffs (Debtors
and Debtors in Possession)*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br><br><br>**PACIFIC GAS AND ELECTRIC COMPANY**<br><br>**Debtors.** | Case Nos. 19-30088 (DM)<br>19-30089 (DM)<br><br>Adv. Pro. No. 19-03003 (DM)<br><br>Chapter 11 |
| **PG&E CORPORATION, PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**FEDERAL ENERGY REGULATORY COMMISSION**<br><br>**Defendant.** | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION OF MOTIONS TO INTERVENE** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ i

I.   PRELIMINARY STATEMENT .................................................................... 1

II.  BACKGROUND ............................................................................................ 3

    A.  The Movants Entered into Power Purchase Agreements with PG&E Before Bankruptcy ................................................................................................... 3

    B.  FERC Claimed Authority over this Court's Power to Reject Contracts. .................. 3

    C.  The Debtors Filed for Bankruptcy and Sought Enforcement of the Automatic Stay .............. 4

III. THE COURT SHOULD DENY THE MOTIONS ....................................... 5

    A.  The Movants Lack Article III Standing .................................................... 5

        1.  The Movants' Hypothesized Injury is Not Concrete ..................................... 6

        2.  The Movants Lack a Particularized Stake in the Outcome of this Adversary Proceeding ......................................................................................... 7

    B.  The Movants Also Do Not Satisfy the Standard for Intervention Under Rule 24 ............. 8

        1.  Section 1109(b) of the Bankruptcy Code Does Not Grant Movants "An Unconditional Right" To Intervene. ..................................................... 9

        2.  The Movants Cannot Meet Rule 24(a)(2)'s Requirements for Intervention as of Right. ........................................................................................ 10

        3.  The Movants Cannot Satisfy The Requirements for Permissive Intervention Under Rule 24(b)  17

IV.  CONCLUSION ............................................................................................ 19

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Case: 19-03003    Doc# 72    Filed: 02/11/19    Entered: 02/11/19 08:37:26    Page 2 of 25

**Cases**

*Abramson v. Pennwood Inv. Corp.*,
    392 F.2d 759 (2d Cir. 1968)......................................................................................8

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003) ..........................................................................11, 15

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997)...................................................................................................6

*Arkansas Louisiana Gas Co. v. Hall*,
    453 U.S. 571 (1981).................................................................................................4

*Ballesteros v. MERS*,
    No. 2:13-CV-01239-GMN, 2013 WL 6405037 (D. Nev. Dec. 3, 2013)...................15

*In re Caldor Corp.*,
    303 F.3d 161 (2d Cir. 2002)...................................................................................10

*In re Catholic Bishop of N. Alaska*,
    No. ADV F08-90019-DMD, 2009 WL 8446700 (Bankr. D. Alaska Mar. 25, 2009) ...................10

*Chicago & Grand Trunk R. Co. v. Wellman*,
    143 U.S. 339 (1892).................................................................................................5

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ..................................................................................13

*Diamond v. Charles*,
    476 U.S. 54 (1986)...................................................................................................6

*Dilks v. Aloha Airlines*,
    642 F.2d 1155 (9th Cir. 1981) ................................................................................12

*Donaldson v. United States*,
    400 U.S. 517 (1971), *superseded by statute on other grounds as stated in United*
    *States v. New York Tel. Co.*, 644 F.2d 953 (2d Cir. 1981)............................................11

*U.S. ex rel. Eisenstein v. City of New York, New York*,
    556 U.S. 928 (2009).................................................................................................10

*Freedom from Religion Found., Inc. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) ...................................................................................17

*Fuel Oil Supply v. Gulf Oil Corp.*,
    762 F.2d 1283 (5th Cir. 1985) .................................................................................10

Case: 19-03003    Doc# 72    Filed: 02/11/19    Entered: 02/11/19 08:37:26    Page 3 of 25

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re Gruntz*,
    202 F.3d 1074 (9th Cir. 2000) ...................................................................................14

*Karcher v. May*,
    484 U.S. 72 (1987)..................................................................................................6

*Lance v. Coffman*,
    549 U.S. 437 (2007)................................................................................................8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)................................................................................................7

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
    No. 15-CV-01267-SC, 2015 WL 4914694 (N.D. Cal. Aug. 17, 2015) ....................18

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................................6

*Med. Protective Co. v. Pang*,
    Civ. No. 05-2924-PHX-SMM, 2006 WL 1544192 (D. Ariz. June 1, 2006) .............11

*In re Molasky*,
    843 F.3d 1179 (9th Cir. 2016) .................................................................................8

*Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty., Wash.*,
    554 U.S. 527 (2008)................................................................................................4

*Nemee v. Cnty. of Calaveras (In re Nemee)*,
    Case No. 09-93249-E-11, Adv. Pro. No. 09-9088, 2012......................................9, 10

*NextEra Energy, Inc., et al. v. Pac. Gas & Elec. Co.*,
    Dkt. No. EL 19-35-000 (Jan. 22, 2019), [AP Dkt. 10, Exhibit B]............................4

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) .................................................................13, 15, 16, 17

*Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
    860 F.3d 1228 (9th Cir. 2017) .................................................................................5

*Permian Basin Area Rate Cases*,
    390 U.S. 747, 822 (1968)........................................................................................4

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009) ........................................................................ *passim*

*Perry v. Schwarzenegger*,
    630 F.3d 898 (9th Cir. 2011) .................................................................................18

*Phar-Mor, Inc. v. Coopers & Lybrand*,
    22 F.3d 1228 (3d Cir. 1994).................................................................................10

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Public Serv. Co. of N.H. v. Patch*,
    136 F.3d 197 (1st Cir. 1998) ................................................................................13

*S. California Edison Co. v. Lynch*,
    307 F.3d 794 (9th Cir.), *modified*, 307 F.3d 943 (9th Cir. 2002), *and certified
    question answered sub nom. S. California Edison Co. v. Peevey*, 31 Cal. 4th 781,
    74 P.3d 795 (2003) .....................................................................................12, 13

*In re Shubh Hotels Pittsburgh, LLC*,
    495 B.R. 274 (Bankr. W.D. Pa. 2013) ..................................................................8

*Sierra Club v. EPA*,
    995 F.2d 1478 (9th Cir. 1993) .............................................................................11

*South Carolina v. North Carolina*,
    558 U.S. 256 (2010) ..............................................................................................6

*Spangler v. Pasadena City Bd. Of Educ.*,
    552 F.2d 1326 (9th Cir. 1977) .............................................................................17

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ......................................................................................6, 7

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) ..........................................................................................6

*U.S. v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ...............................................................................12

*UMG Recordings, Inc. v. Bertelsmann AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) .........................................................................18

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) .........................................................................................5, 8

**Statutes**

11 U.S.C. § 362 ...........................................................................................................5, 14

11 U.S.C. § 365 .............................................................................................................2, 5

11 U.S.C. § 1109(b) .....................................................................................................9, 10

**Rules**

Bankruptcy Rule 7024 ......................................................................................................8

Federal Rule of Bankruptcy Procedure 24 ....................................................................2, 8

Federal Rule of Civil Procedure 24 ........................................................................ *passim*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Treatises**

Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.)..............................................................6

**Constitutional Provisions**

U.S Const. art. III .................................................................................................. *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. PRELIMINARY STATEMENT

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**" or "**Plaintiffs**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), and as Plaintiffs in the above-captioned adversary proceeding, respectfully submit this memorandum of points and authorities in opposition to the motions to intervene filed by the following parties, collectively (the "**Movants**") (their filings, the "**Motions**"):

- NextEra Energy, Inc. and NextEra Energy Partners, L.P. ("**NextEra**"),
- Consolidated Edison Development, Inc. ("**CED**"),
- Mojave Solar LLC ("**Mojave Solar**"),
- First Solar, Inc. and Willow Springs Solar 3, LLC ("**First Solar**"),
- Vantage Wind Energy LLC and KES Kingsburg, L.P. ("**Vantage/KES**"),
- Calpine Corporation, Clearway Energy, Inc. and Clearway Energy Group LLC, Crockett Cogeneration, Diablo Winds, LLC, EDF Renewables, Inc., Exelon Corporation ("**Exelon**") and AV Solar Ranch 1, LLC ("**AVSR**"), Marubeni Corporation, Middle River Power and MRP San Joaquin Energy, LLC, NRG Energy, Inc., Southern Power Company, Topaz Solar Farms LLC, and TerraForm Power, Inc. (the "**Calpine Movants**"),
- Enel Green Power North America, Inc. ("**Enel**"),
- FTP Power LLC ("**sPower**"),
- Capital Dynamics, CA Flats Solar 150, LLC, Lost Hills Solar, LLC, Blackwell Solar, LLC, Parrey, LLC,  and North Star Solar, LLC (the "***CapDyn Parties***").[1]

Knowing that PG&E would be seeking Chapter 11 protection, and presumably seeking to preempt this Court's determination of its own jurisdiction, various counterparties to wholesale power purchase agreements ("**PPAs**") with PG&E[2] initiated proceedings before the Federal Energy Regulatory Commission ("**FERC**"), requesting an order that "PG&E may not abrogate, amend, or

---

[1] The Debtors are parties to at least 387 wholesale power purchase agreements. Wan Decl. ¶ 10, [AP Dkt. 3].

[2] NextEra, Exelon and AVSR (collectively, the "**FERC Complainants**").

Case: 19-03003   Doc# 72   Filed: 02/11/19   Entered: 02/11/19 08:37:26   Page 7 of 25

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1   reject in a bankruptcy proceeding any rates, terms, and conditions of its wholesale power purchase

2   agreements subject to the Commission's jurisdiction without first obtaining approval from the

3   Commission."[3] (the "**FERC Proceedings**").  In response, FERC issued orders on January 25, 2019

4   and January 28, 2019 expressly declining to review the specific PPAs to which the FERC

5   Complainants were parties, but concluding that "this Commission and the bankruptcy courts have

6   concurrent jurisdiction to review and address the disposition of wholesale power contracts sought to

7   be rejected through bankruptcy"[4] (the "**FERC Orders**").

8          Upon filing these Chapter 11 Cases, the Debtors commenced this adversary proceeding (the

9   "**Adversary Proceeding**") for the limited purpose of preventing FERC from usurping this Court's

10  exclusive authority to approve or deny the Debtors' requests to assume or reject executory contracts

11  under section 365 of the Bankruptcy Code.  No individual PPA is at issue in this proceeding and, as

12  the Debtors have previously explained, they have not made any decisions regarding whether to

13  assume or reject any PPAs, including those to which the Movants are parties.  Complaint ¶ 2, [AP

14  Dkt. 1].  Given that this Adversary Proceeding merely seeks to resolve a purely jurisdictional dispute

15  and not to take any substantive action with respect to any PPA, the Debtors properly named only

16  FERC as a defendant, who is more than capable of adequately representing any interest in and

17  litigating issues relating to its jurisdiction.  While the Movants attempt to make more of this

18  Adversary Proceeding in an effort to support intervention, their Motions miss the mark and should

19  be denied for several reasons.

20         First, the Movants lack Article III standing to intervene in this Adversary Proceeding because

21  the injury that they would purportedly suffer should the Debtors be granted the relief they seek is not

22  concrete and the Movants have no particularized interest in a purely jurisdictional dispute not

23  seeking review of, or any substantive relief with respect to, any PPA.

24         Second, the Movants do not satisfy the standards for intervention under Federal Rule of Civil

25  Procedure 24 ("**Rule 24**"), as made applicable in its entirety to this Adversary Proceeding by Federal

26

27  ———————————————
    3   Compl., Ex. 1 ("NextEra FERC Order") ¶ 1, [AP Dkt. 1-2]; Compl., Ex. 2 ("Exelon FERC
        Order") ¶ 1, [AP Dkt. 1-3].

28  4   NextEra FERC Order ¶ 28; Exelon Order ¶ 28.

OPPOSITION TO MOTIONS TO INTERVENE                    2                    ADV. PRO. NO. 19-03003
                                                                           MAIN CASE NO. 19-30088

Rule of Bankruptcy Procedure 24. They cannot intervene as a matter of right pursuant to Rule 24(a) because (i) they do not have a sufficiently protectable interest since PG&E has not sought, and may never seek, to reject any of the Movants' PPAs; (ii) their PPAs are not at issue in this Adversary Proceeding, and (iii) as demonstrated by the speed with which FERC issued its orders, it will adequately represent any interest they have in the purely jurisdictional dispute in this Adversary Proceeding, especially given that FERC is litigating these same issues in another bankruptcy case and has shown itself interested in and more than capable of fighting issues relating to its jurisdiction. Nor should the Movants be permitted to intervene pursuant to Rule 24(b) because, among other things, they have not shown that they would provide any new arguments beyond those already advanced by FERC. Opening the floodgates to additional parties risks needlessly complicating this Adversary Proceeding.

## II. BACKGROUND

### A. The Movants Entered into Power Purchase Agreements with PG&E Before Bankruptcy

The Movants are non-parties to this Adversary Proceeding. They are among the hundreds of entities who entered into PPAs with PG&E before it filed for bankruptcy. Entities like the Movants routinely enter into PPAs with power providers like PG&E. *See* NextEra Mem. at 2; CED Mem. at 1; Mojave Solar Mem. at 1; First Solar Mem. at 1; Vantage/KES Mem. at 5; Calpine Movants Mem. at 1; Enel Mem. at 1; sPower Mem. at 1; CapDyn Parties Mem. at 1.

### B. FERC Claimed Authority over this Court's Power to Reject Contracts.

In response to the Debtors' January 13, 2019 announcement of their intent to file for bankruptcy protection, Movants NextEra and Exelon initiated actions before FERC and requested FERC to prohibit PG&E from rejecting in bankruptcy any of its PPAs without first obtaining approval from FERC. *See* NextEra Mem. at 3; Exelon Suppl. Mem. at 2. As NextEra admits, "[m]ore than a dozen other utility companies and associations representing large utilities and solar and wind generating resources filed responses in support of the [NextEra] FERC Complaint." NextEra Mem. at 3.

PG&E made clear in the FERC Proceedings, and it remains the case now, that "any harm to

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    [the Movants] is purely speculative" because PG&E has not reached any determination whether, if at

2    all, it will reject any PPAs. *See* Answer of Pacific Gas and Electric Company at 2, *NextEra Energy,*

3    *Inc., et al. v. Pac. Gas & Elec. Co.*, Dkt. No. EL 19-35-000 (Jan. 22, 2019), [AP Dkt. 10, Exhibit B].

4    PG&E also noted, among other things, that the FERC Complainants either declined to apply the

5    *Mobile-Sierra* doctrine[5] or waived the right to make the type of FERC filing that is contemplated in

6    their FERC Complaints. *Id.* at 5.

7         On January 25, 2019 and January 28, 2019, just days after the commencement of the FERC

8    Action, FERC issued the FERC Orders. FERC proclaimed that "if [PG&E] files for bankruptcy,

9    PG&E may not abrogate, amend or reject in a bankruptcy proceeding any rates, terms and conditions

10   of its wholesale power purchase agreements subject to [FERC]'s jurisdiction without first obtaining

11   approval from [FERC]." NextEra FERC Order ¶ 1; Exelon FERC Order ¶ 1. FERC pronounced

12   that "a rejection of a Commission-jurisdictional contract in a bankruptcy court alters the essential

13   terms and conditions of the contract and the filed rate; thus this Commission's jurisdiction is

14   implicated, and our approval is required." NextEra FERC Order ¶ 29; Exelon FERC Order ¶ 26.

15   With respect to PG&E's observation regarding *Mobile-Sierra* waivers, FERC explained that "*we are*

16   *not reviewing the specific agreements here*, but rather explaining the Commission's concurrent

17   jurisdiction with respect to wholesale power agreements." NextEra FERC Order ¶ 31 (emphasis

18   added).

19   **C.    The Debtors Filed for Bankruptcy and Sought Enforcement of the Automatic Stay**

20        On January 29, 2019, the Debtors filed voluntary petitions under chapter 11 of the

21   Bankruptcy Code. The Debtors also filed the *Debtors' Complaint for Declaratory Judgment and*

22   *Preliminary and Permanent Injunctive Relief* (the "**Adversary Complaint**") [AP Dkt. 1] and the

23   *Debtors' Motion for Preliminary Injunction and Memorandum of Points and Authorities in Support*

24   (the "**Injunction Motion**") [AP Dkt. 2].

25        The Debtors reiterated in the Adversary Complaint that they "have not made any decisions

26   ─────────────
     [5]    Under the *Mobile-Sierra* doctrine, "setting aside a contract rate" requires a finding of
27   "unequivocal public necessity" or "extraordinary circumstances." *Morgan Stanley Capital Grp.*
     *Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty., Wash.*, 554 U.S. 527, 550 (2008) (quoting
28   *Permian Basin Area Rate Cases*, 390 U.S. 747, 822 (1968) and *Arkansas Louisiana Gas Co. v.*
     *Hall*, 453 U.S. 571, 582 (1981)).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1  yet regarding whether to assume or reject any PPAs in these Chapter 11 Cases." Compl. ¶¶ 2. As

2  the Movants admit, their PPAs are merely "among the PPAs [that the Debtors] *may* [consider] for

3  rejection." *See, e.g.*, CED Mem. at 3 (emphasis added).

4          The gravamen of the Adversary Proceeding is whether this Court has exclusive jurisdiction

5  over the Debtors' ability to assume or reject its PPAs. Specifically, the Adversary Complaint seeks a

6  declaratory judgment that the bankruptcy court has "exclusive jurisdiction over the Debtors' rights to

7  reject [any of its PPAs] under section 365 of the Bankruptcy Code," as well as "further declaring that

8  FERC does not have 'concurrent' jurisdiction, or any jurisdiction, over the determination of whether

9  the Debtors' rejection of any of their PPAs should be authorized, and that the Debtors do not need to

10 obtain approval from FERC to reject any of their PPAs." Compl. ¶¶ 2, 50. The Debtors also seek an

11 order under section 362 of the Bankruptcy Code to enforce "the automatic stay as to the FERC

12 Proceedings, any entity's attempt to enforce the FERC Order[s]," and any actions "that would

13 attempt to divest or otherwise nullify or impede this Court's exclusive authority to approve or deny

14 the Debtors' requests to assume or reject executory contracts under section 365 of the Bankruptcy

15 Code." Compl. ¶ 2.[6]

16 **III.    THE COURT SHOULD DENY THE MOTIONS**

17      **A.    The Movants Lack Article III Standing**

18          Article III of the Constitution limits the "judicial power" to the resolution of "cases" and

19 "controversies," restricting the adjudicatory power of the federal courts to situations where the

20 exercise of the judicial power is "a necessity in the determination of real, earnest and vital

21 controversy." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State,*

22 *Inc.*, 454 U.S. 464, 471 (1982) (citing *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339,

23 345, (1892)). The case-or-controversy requirement "ensures both that the legal issues presented to

24 the court are sharpened by the presence of concrete adversity and that judicial review is sought by

25 those who have a direct stake in the outcome." *Oregon Prescription Drug Monitoring Program v.*

26

27  _____
    [6]    The Adversary Proceeding is not intended to displace or preempt any rights the California Public
28          Utilities Commission ("CPUC") may have in connection with the Debtors' rejection decisions.
           However, the Debtors reserve all of their rights in that respect.

*U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1233 (9th Cir. 2017) (citing *Diamond v. Charles*, 476 U.S. 54, 62 (1986)).

The Constitution does not recognize a difference between the original parties to a lawsuit and intervenors. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1647-48 (2017) (holding that intervenors must have Article III standing); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("Standing to sue *or defend* is an aspect of the case-or-controversy requirement." (emphasis added)). Indeed, the case-or-controversy requirement is especially important given the wide powers, both great and small, conferred upon parties to a proceeding. When a motion to intervene is granted, an intervenor "become[s] a party," *Karcher v. May*, 484 U.S. 72, 77 (1987), and becomes "entitled to litigate fully on the merits once intervention has been granted." *See* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.). And because an intervenor is entitled to the full range of powers of a party to an action, including the power to file dispositive motions, Article III requires the federal courts to take special care to ensure that a would-be intervenor has standing. *Cf. South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) (Roberts, C.J., concurring and dissenting in part) ("And all this for what? . . . [w]here he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.") (citation omitted).

As explained below, the Movants lack Article III standing to intervene in this Adversary Proceeding because (1) the purported injury that they will suffer if the Debtors' requested relief is granted is not concrete and (2) the Movants lack a particularized stake in the purely jurisdictional dispute in this Adversary Proceeding between the Debtors and FERC. The Motions should therefore be denied for lack of standing.

1.  *The Movants' Hypothesized Injury is Not Concrete*

"A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). It is axiomatic that the "injury in fact" required to establish constitutional standing must be "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citation omitted).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Movants' purported interest in the Adversary Proceeding is "the outcome of the Debtors' attempt to reject the PPAs," NextEra Mem. at 10. But the Debtors are not attempting to reject any PPA in this adversary proceeding but instead seek to establish that only this Court, without interference or further approval from FERC, can decide if the Debtors can assume or reject any of their PPAs.

The Movants' hypothesized injury is also far from concrete, and none of their arguments establish otherwise. As an initial matter, the mere fact that certain of the Movants were parties to the FERC Proceedings that prompted the FERC Orders does not establish a concrete injury. While the Debtors recognize that certain of the Movants initiated the proceedings before FERC, FERC expressly stopped short of declaring the rights of the Movants or any of PG&E's PPA counterparties. NextEra FERC Order at 1, 14; Exelon FERC Order at 1, 12. Instead, the direct focus of those orders was PG&E itself, as evinced by FERC's pronouncement that "this Commission and the bankruptcy courts have concurrent jurisdiction to review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy." NextEra FERC Order at 14; Exelon FERC Order at 12.

Nor does the Movants' conclusory assertion that they have a "pecuniary interest" in FERC's declaration of "concurrent" jurisdiction establish a concrete injury for Article III standing purposes. *See, e.g.*, NextEra Mem. at 8. The FERC Orders are plainly not pecuniary—they are jurisdictional. They merely state FERC's opinion that it can exercise "concurrent" jurisdiction over certain bankruptcy proceedings.

2. *The Movants Lack a Particularized Stake in the Outcome of this Adversary Proceeding*

The Supreme Court has repeatedly held that "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548 (internal citation omitted). The corollary to the particularity requirement is the "reluctance to entertain generalized grievances." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014). If a plaintiff's only injury is the allegation that "the law . . . has not been followed," then that "injury

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

is precisely the kind of undifferentiated, generalized grievance" that does not make out an injury-in-fact. *See Lance v. Coffman*, 549 U.S. 437, 442 (2007).

The Movants' concern that the Debtors will stay or enjoin FERC from interfering in these proceedings by exercising its purported "concurrent" jurisdiction is quite literally a concern that FERC's declaration of the law "has not been followed." Although the Debtors do not doubt that the Movants—as with many others—are concerned about the effects of PG&E's chapter 11 case, the Movants are, at most, a "concerned bystander" in this Adversary Proceeding about a jurisdictional dispute with FERC. *Valley Forge*, 454 U.S. at 473. For instance, NextEra's interests are not unique to NextEra—they are, at most, an interest in how FERC extemporizes on its own jurisdiction, an interest shared by a potentially large number of individuals and entities who might also have an opinion on this subject but no concrete stake in its outcome. Moreover, the fact that the FERC Order specifically noted that FERC it is "not reviewing the specific agreements," NextEra FERC Order ¶ 31, and was instead concerned entirely with defining FERC's own jurisdiction, further undermines the Movants' contention that they can assert standing in this jurisdictional dispute on their purported interests in the PPAs.

Thus, taken together with the absence of an actual concrete injury, the interest that the Movants seek to protect on intervention is insufficient to establish Article III standing.

**B.      The Movants Also Do Not Satisfy the Standard for Intervention Under Rule 24**

Even if Movants had Article III standing, the Movants also fail to meet the requirements for intervention pursuant to Rule 24.[7] "Bankruptcy Rule 7024 incorporates Rule 24 into adversary proceedings in bankruptcy." *In re Molasky,* 843 F.3d 1179, 1182 n.2 (9th Cir. 2016). *See* Fed. R. Bankr. P. 7024.

---

[7]     Movants also failed to include "a pleading that sets out the claim or defense for which intervention is sought" that could apprise both the Court and the other litigants of its interests. *See* Fed. R. Civ. P. 24(c); Fed. R. Bankr. P. 7024. Circuit courts and bankruptcy courts routinely deny intervention for lack of compliance with Rule 24(c)'s requirements. *See Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761 (2d Cir. 1968) ("appellant's reference in his motion papers to the allegations of the original complaint was insufficient to comply with the requirements of Rule 24(c)"); *In re Shubh Hotels Pittsburgh, LLC*, 495 B.R. 274, 280 (Bankr. W.D. Pa. 2013) ("[f]ailure to comply with the requirements of Rule 24(c) will generally result in the denial of a motion to intervene"). This insufficiency suffices to deny Movants' applications.

OPPOSITION TO MOTIONS TO INTERVENE                   8                   ADV. PRO. NO. 19-03003

In adversary proceedings, Rule 24 affords three means for nonparties to intervene. The first two, Rule 24(a)(1) and (2), provide "Intervention of Right":

> On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The third means to become a party, under Rule 24(b), is by "Permissive Intervention":

> (1) In General. On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.

As addressed below, the Movants have variously asserted (i) a supposed unconditional right to intervene under Rule 24(a)(1) through Section 1109(b) of the Bankruptcy Code, (ii) satisfaction of the right to intervene under Rule 24(a)(2), and (iii) entitlement to permissive intervention under Rule 24(b). The Movants are mistaken on all three fronts.

1. *Section 1109(b) of the Bankruptcy Code Does Not Grant Movants "An Unconditional Right" To Intervene.*

A few of the Movants, CED, Mojave Sol, First Solar, CalPine Movants, Enel, and sPower in particular, assert that Section 1109(b) grants them "an unconditional right" to intervene in the Adversary Proceeding under Rule 24(a)(1). *See* CED Mem. at 4; Mojave Sol Mem. at 3; First Solar Mem. at 3; CalPine Movants Mem. at 11; Enel Mem. at 3; sPower Mem. at 3.[8] It is not surprising that not all of the Movants made this argument because it is incorrect as a matter of law.

Section 1109(b) refers to parties in interest who may participate in a bankruptcy *case*, not an adversary proceeding. "*A case under Chapter 11* is commenced by the filing of a bankruptcy petition. . . . An adversary proceeding is not a 'case under Chapter 11,' but a separate law suit to which only the parties in that action have standing." *Nemee v. Cnty. of Calaveras (In re Nemee)*, Case No. 09-93249-E-11, Adv. Pro. No. 09-9088, 2012 Bankr. WL 8123401, at *5 (Bankr. E.D. Cal.

---

[8] "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter [11]." 11 U.S.C. § 1109(b).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Jan. 27, 2012) (emphasis added); *see also Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1233 (3d Cir. 1994).

In the Ninth Circuit—and elsewhere—Section 1109(b) "does not grant an unconditional right to intervene in adversary proceedings under Rule 24(a)(1)." *In re Catholic Bishop of N. Alaska*, No. ADV F08-90019-DMD, 2009 WL 8446700, at *1–2 (Bankr. D. Alaska Mar. 25, 2009) (discussing *Phar–Mor, Inc.*, 22 F.3d 1228 (3rd Cir. 1994), *In re Caldor Corp.*, 303 F.3d 161, 176 (2d Cir. 2002), and *Fuel Oil Supply v. Gulf Oil Corp.*, 762 F.2d 1283, 1285 (5th Cir. 1985), "conclud[ing] that § 1109(b) does not grant an unconditional right to intervene in adversary proceedings under Rule 24(a)(1)"); *see also Fuel Oil Supply*, 762 F.2d at 1285 (finding committee did not have an unconditional right to intervene in an adversary proceeding).

Therefore, the Movants cannot claim an automatic right to appear in an Adversary Proceeding under Section 1109(b) "[m]erely because they are creditors of the Plaintiff-Debtors." *Nemee*, 2012 Bankr. WL 8123401, at *5. In fact, such a conclusion would lead to an absurd result because it would be unreasonable to conclude that the universe of "*all* wholesale [PPAs] implicated by the bankruptcy proceedings" provide an automatic right for intervening in the jurisdictional dispute with FERC in this Adversary Proceeding. *Cf.* Calpine Movants Mem. at 9. Rather, Movants are required to make the requisite showing under Rule 24(a)(2) or Rule 24(b) "to interpose in, or become a party to [this Adversary Proceeding] already instituted." *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 933 (2009). But, as discussed below, the Movants cannot make the requisite showing to intervene pursuant to Rule 24(a)(2) or Rule 24(b), and the Court should deny the Motions for that reason as well.

2. *The Movants Cannot Meet Rule 24(a)(2)'s Requirements for Intervention as of Right.*

"An applicant for intervention as of right must satisfy [all] four criteria under Federal Rule of Civil Procedure 24(a)(2)." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (affirming denial of intervention as of right under Rule 24(a)(2)). Indeed, "[f]ailure to satisfy *any one* of the requirements is fatal to the application, and [the Court] need not reach the remaining elements if one of the elements is not satisfied." *Id.* (emphasis added). Under Rule 24(a)(2):

Case: 19-03003    Doc# 72    Filed: 02/11/19    Entered: 02/11/19 08:37:26    Page 16 of 25

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Here, the Movants are unable to satisfy at least three of the requirements of Rule 24(a)(2): (1) the Movants fail to "claim[] an interest relating to the property or transaction that is the subject of the [Adversary Proceeding]"; (2) the Movants fail to show that "disposition of the [Adversary Proceeding] action may impair or impede [their] ability to protect that interest"; and (3) the Movants cannot show that their interests are not already adequately represented by FERC.

        a.    <u>Movants fail to claim a significantly protectable interest relating to the jurisdiction dispute that is the subject of the Adversary Proceeding.</u>

"The United States Supreme Court has interpreted this requirement to mean that the applicant must have a 'significantly protectable interest.'" *Med. Protective Co. v. Pang*, Civ. No. 05-2924-PHX-SMM, 2006 WL 1544192, at *3–8 (D. Ariz. June 1, 2006) (denying intervention where the movant "lack[ed] any legally protectable interest that would be directly altered by the instant case.") (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971), *superseded by statute on other grounds as stated in United States v. New York Tel. Co.*, 644 F.2d 953, 956 (2d Cir. 1981)). Notably, "[c]ircuit courts have applied different standards in determining whether a 'significantly protectable interest' exists." *Med. Protective Co.*, 2006 WL 1544192, at *3.

Under the Ninth Circuit's standard, "[t]he requirement of a significantly protectable interest is generally satisfied when 'the interest is protectable under some law, and . . . there is a relationship between the legally protected interest and the claims at issue.'" *Arakaki*, 324 F.3d at 1084 (9th Cir. 2003) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Neither the Movants' economic interests, nor the relationship between their purported interests and issues actually in dispute in this Adversary Proceeding rise to the level of a "significantly protectable interest" under this test. "The Ninth Circuit has made clear . . . that pure economic expectancy is not a legally protected interest for purposes of intervention." *Med. Protective Co.*, 2006 WL 1544192, at *3. "To trigger a right to intervene, an economic interest must be [1] concrete and [2] related to the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    underlying subject matter of the action." *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir.

2    2004).

3         As explained above in the Article III standing analysis, the Movants have not and cannot

4    demonstrate an economic interest that is concrete. The Debtors have not even determined yet

5    whether any PPAs will be rejected in bankruptcy, much less have they indicated an intent to reject

6    any of the Movants' PPAs. Additionally, even assuming that the Movants had a concrete interest,

7    which they do not, they cannot tie that interest to the subject matter of the Adversary Proceeding—

8    the resolution of the scope of this Court's exclusive jurisdiction will not, in itself, have any impact

9    on the Movants' economic interest in their PPAs.

10        Ninth Circuit case law underscores these points. For example, in *S. California Edison Co. v.*

11   *Lynch*, 307 F.3d 794, 803 (9th Cir.), *modified*, 307 F.3d 943 (9th Cir. 2002), *and certified question*

12   *answered sub nom. S. California Edison Co. v. Peevey*, 31 Cal. 4th 781, 74 P.3d 795 (2003), the

13   Ninth Circuit affirmed the denial of motions to intervene filed by wholesale generators of electricity,

14   as well as the California Manufacturers and Technology Association (CMTA) in an action brought

15   by Southern California Edison for injunctive and declaratory relief against the Commissioners of the

16   California Public Utilities Commission involving rate regulation. Although the electricity

17   wholesalers claimed that SoCal Edison owed them over $260 million, "the pending litigation would

18   not resolve those claims." *Id.* at 803. The Court found that their claim fell "far short of the 'direct,

19   non-contingent, substantial and legally protectable' interest required for intervention as a matter of

20   right." *Id.* (quoting *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)). Like the

21   electricity wholesalers in *S. California Edison*, the pending Adversary Proceeding would not resolve

22   any issues regarding the Movants' individual PPAs but instead seeks resolution of a threshold

23   jurisdictional question. Thus, any purported interests the Movants' may have vis-à-vis the PPAs are

24   "far short of the 'direct, non-contingent, substantial and legally protectable' interest[s]" needed to

25   intervene in this purely jurisdictional dispute here.

26        Moreover, in *S. California Edison*, although the CMTA argued that its 800 members

27   "purchase[d] significant quantities of electricity from SoCal Edison," the Ninth Circuit nonetheless

28   found this to present "an undifferentiated, generalized interest in the outcome of an ongoing action

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

[that was] too porous a foundation on which to premise intervention as of right." *Id.* (quoting *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998)). Here, over 30 counterparties to PG&E's PPAs have filed motions to intervene. The Movants assert being, repetitively, among "the largest electric power and energy infrastructure companies in North America and a leader in the renewable energy industry," *see* NextEra Mem. at 1, and "the nation's largest energy service companies," *see* CED Mem. at 1, etc. Moreover, according to some of the Movants, "the FERC Order applies to all [PPAs] implicated by the bankruptcy proceeding." *See* Calpine Movants Mem. at 9. It is impossible to escape the conclusion that such an "an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *S. California Edison*, 307 F.3d at 803.

Given that the Movants are unable to satisfy this requirement, the Court "need not reach the remaining elements" and may deny the Movants' motions to intervene on this basis alone. Nevertheless, several additional independent bases exist for denial of the Motions.

                b.    <u>This Adversary Proceeding would not, as a practical matter, impair or impede the Movants' ability to protect their interest.</u>

This factor "presupposes that the prospective intervenor has a protectable interest." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996). Where, as here, the Movants lack a protectable interest in the proceeding, a motion to intervene should be denied. *Id.*

The determination of this factor has included whether "an absentee would be substantially affected in *a practical sense* by the determination made in an action." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (emphasis added). Practically speaking, the Adversary Proceeding concerns the scope of this Court's jurisdiction versus the scope of FERC's jurisdiction. If this Court were to deny the Movants' motions to intervene in the Adversary Proceeding, such a denial would result in no impact to the Movants' interests because the Adversary Proceeding will provide no determination on the assumption or rejection of the PPAs, which are the Movants' purported "pecuniary interests." NextEra Mem. at 8.

Overstating their hand, the Movants seek to obfuscate the FERC jurisdictional dispute, the only issue in the Adversary Proceeding, by inaccurately representing that the Debtors are

---

Case: 19-03003   Doc# 72   Filed: 02/11/19   Entered: 02/11/19 08:37:26   Page 19 of 25

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1   "attempt[ing] to reject the PPAs." *See, e.g.*, *id.* at 10. In fact, as PG&E has repeatedly reiterated, it

2   has made no determination whether to accept or reject any of Movants' PPAs. Nor has FERC

3   claimed that its FERC Orders concerned any particular PPA. Putting aside the Movants' false

4   assertion that the Debtors are attempting to reject the PPAs, all that remains is the Movants' desire to

5   uphold the FERC Orders' determination of FERC's purported concurrent jurisdiction concerning the

6   PPAs. But such a general interest in having one forum or another to hear potential future disputes

7   simply is not sufficient grounds for intervention.

8       The actual issue in dispute in the Adversary Proceeding is the Debtors' attempt to enforce the

9   automatic stay and seek a declaratory judgment regarding the Court's exclusive jurisdiction. The

10  Movants cry wolf at "the untenable position of having obtained the FERC Order in the FERC

11  Proceeding while being precluded from participating in the Adversary Proceeding" and lament that

12  the "Debtors seek to address precisely the same issues" in the Adversary Proceeding that were

13  addressed in the FERC Proceedings. NextEra Mem. at 10. Aside from the fact that these

14  contentions cannot be accurate given that only this Court can decide the scope of section 362's

15  application upon PG&E's commencement of these Chapter 11 cases (*see In re Gruntz*, 202 F.3d

16  1074, 1083, 1087 (9th Cir. 2000)), the Movants' complaints do not establish any basis for

17  intervention. Simply put, there was no estate and there were no bankruptcy rights until the Debtors

18  commenced these Cases. FERC cannot simply declare by fiat that if and when PG&E, or any other

19  party to a PPA, files for Chapter 11 protection only FERC has the last word on whether the debtors

20  can assume or reject their PPAs.

21      Similarly, the scope of this Court's exclusive jurisdiction to authorize the Debtors' decisions

22  to assume or reject executory contracts has no direct effect on the Movants' "pecuniary interests,"

23  and does not undermine the Movants' ability to protect those interests. The Movants' conclusory

24  assertions that "the dispositive legal questions already decided in the FERC Proceeding[s] may be

25  decided by this Court to [Movants'] detriment without [their] participation" fail to even indicate

26  what detriment might befall them, let alone describe how the Movants would be impaired or

27  impeded from protecting their here-undefined interest. *See e.g.*, NextEra Mem. at 10–11. The

28  Movants fail to show any consequences of their absence from this Adversary Proceeding beyond not

---

OPPOSITION TO MOTIONS TO INTERVENE                    14                    ADV. PRO. NO. 19-03003
                                                                            MAIN CASE NO. 19-30088

participating itself.  If the Debtors seek to reject any of the Movants' PPAs, the Movants will be

parties to those proceedings.  But because that is not the subject of this Adversary Proceeding, the

Movants cannot make their showing for intervention of right on this basis, either.

c.    The Movants' interests are already adequately represented in the Adversary Proceeding.

Finally, the Movants fail to demonstrate why FERC, the entity that issued the FERC Orders

with lightning speed, knowing that PG&E's bankruptcy filing was imminent, will not adequately

champion efforts to maintain its own jurisdictional pronouncements.

The Ninth Circuit examines three factors to determine the adequacy of representation:

> (1) whether the interest of a present party is such that it will
> undoubtedly make all of a proposed intervenor's arguments;
> (2) whether the present party is capable and willing to make such
> arguments; and
> (3) whether a proposed intervenor would offer any necessary elements
> to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086.  As an initial matter, the Movants fail to "sufficiently address the

controlling standards," and, even standing alone, this warrants denial of their intervention motion.

*See Ballesteros v. MERS*, No. 2:13-CV-01239-GMN, 2013 WL 6405037, at *1 (D. Nev. Dec. 3,

2013) (denying unopposed motion to intervene for failure to "sufficiently address the controlling

standards").  That said, the "most important factor" for whether a proposed intervenor is adequately

represented by a present party to the action is "how the [intervenor's] interest compares with the

interests of existing parties."  *Arakaki*, 324 F.3d at 1086; *Perry*, 587 F.3d at 950–51.  Here, both

FERC and the Movants share the "ultimate objective" of preserving the FERC Orders.  *Arakaki*, 324

F.3d at 1086.  Note that "[d]ivergence of tactics and litigation strategy is not tantamount to

divergence over the ultimate objective of the suit."  *Perry*, 587 F.3d at 949.  "Where the party and

the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of

representation applies, and the intervenor can rebut that presumption only with a 'compelling

showing' to the contrary."  *Perry*, 587 F.3d at 951; *see also Nw. Forest Res. Council*, 82 F.3d at 838

(9th Cir. 1996) (denying intervention where potential intervenor "allege[d] only minor differences in

opinion" with the original party and sought "the same limited interpretation" of a statute).

Case: 19-03003    Doc# 72    Filed: 02/11/19    Entered: 02/11/19 08:37:26    Page 21 of
25

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1   The Movants assert that their "interests are not congruent" with those of the parties to the

2   Adversary Proceeding. NextEra Mem. at 11. But "congruence" is not the relevant legal standard in

3   the Ninth Circuit. *See Nw. Forest Resource*, 82 F.3d at 838 (9th Cir. 1996) ("minor differences in

4   opinion" are insufficient). Rather, the Movants must show that FERC will not make all of

5   intervenor's proposed arguments and that FERC is not "capable and willing to make such

6   arguments." *See Perry*, 587 F.3d at 953. The Movants fail to make such a showing. Their two

7   principal contentions—that Movants "have the greatest pecuniary stake in upholding the FERC

8   Order[s]" and that FERC is a mere "neutral governmental unit"—do not move the needle. Indeed,

9   the Movant's pecuniary interests in their PPAs are not at issue in the Adversary Proceeding and were

10  not even relied on by FERC in issuing the FERC Orders. The Movants also fail to acknowledge that

11  FERC has shown that it is more than capable of arguing in favor of its jurisdiction given its vigorous

12  arguments in the *First Energy* bankruptcy, which is currently on appeal and in which FERC is

13  participating. *See FirstEnergy Solutions Corp. et al.*, Case No. 18-50757 (Bankr. N.D. Ohio). Thus,

14  "the record establishes that the [FERC] are capable and willing to make the [Movants'] arguments,"

15  whereas the Movants have "failed to make a 'compelling showing' that [FERC] will not mount an

16  adequate defense." *Perry*, 587 F.3d at 952.

17  The Movants also insist that FERC lacks the Movants' familiarity with Movants' PPAs and

18  the contractual relationship needed to develop a complete record before the Court. This is a non-

19  sequitur. Not one of the PPAs is at issue in this Adversary Proceeding and the Court need not

20  consider any terms or conditions of any of those PPAs in order to rule on the Debtors' preliminary

21  injunction concerning jurisdictional issues. Indeed, just as FERC did not need to examine any one

22  PPA to make its jurisdictional pronouncements, neither will this Court in ruling on the preliminary

23  injunction. The Movants' only abiding interest in the Adversary Proceeding is accordingly the

24  perpetuation of the FERC Orders, and in this regard the Movants and FERC's interests are

25  coextensive and directly aligned. Indeed, it is likely that FERC's interest in asserting its jurisdiction

26  is even greater than the Movants. "Given the identity of interests, the presumption of adequate

27  representation applies." *Perry*, 587 F.3d at 951–52. *See also Nw. Forest Resource Council*, 82 F.3d

28  at 838 ("minor differences" are insufficient). Given that FERC is uniquely positioned to champion

---

OPPOSITION TO MOTIONS TO INTERVENE        16        ADV. PRO. NO. 19-03003
                                                    MAIN CASE NO. 19-30088

its own cause as relates to the jurisdictional issues at the heart of this Adversary Proceeding, the Movants' quest to intervene as of right should appropriately be denied.

### 3. *The Movants Cannot Satisfy The Requirements for Permissive Intervention Under Rule 24(b)*

Under Ninth Circuit law, permissive intervention under Rule 24(b) may be granted where the applicant "shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry*, 587 F.3d at 955 (quoting *Nw. Forest Res. Council*, 82 F.3d at 839). Rule 24(b)(3) also *requires* courts to consider whether the intervention will "unduly delay or prejudice the adjudication of the original parties' rights." *Id.* Courts *may* also consider other factors, including "the nature and extent of the intervenors' interest" and "whether the intervenors' interests are adequately represented by other parties." *Perry*, 587 F.3d at 955 (quoting *Spangler v. Pasadena City Bd. Of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

The Movants here argue that the question of FERC's jurisdiction is a "common question of law" that overlaps between the FERC Proceedings, this Adversary Proceeding, and any motion that might eventually contemplate rejecting a Movant PPA. *See, e.g.*, NextEra Mem. at 12. The Movants also point to the timeliness of their motions, having been filed within days of the Debtors commencing the bankruptcy cases and this Adversary Proceeding, and the consequent lack of delay or prejudice. *See, e.g.*, *id.* Lastly, the Movants argue that no independent jurisdictional basis is required because the Movants assert "no new claims." *See id.* (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011)). The Movants' contentions miss the mark.

Notably absent from the Movants' arguments is any serious contention that they would provide any material new arguments in addition to those already available to be advanced in the Adversary Proceeding by FERC. Nor could the Movants realistically make such a contention given FERC's regulatory role, its views on the scope of its jurisdiction and its recent history of litigating these same jurisdictional issues in other bankruptcy cases. This is critical because, under Ninth Circuit law, it is not an abuse of discretion to deny a request for permissive intervention pursuant to

Case: 19-03003   Doc# 72   Filed: 02/11/19   Entered: 02/11/19 08:37:26   Page 23 of 25

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1  Rule 24(b) where, as here, potential intervenors have "no new evidence or arguments to introduce

2  into the case."  *See Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011).

3          Heeding Rule 24(b)(3)'s mandate to account for whether the intervention will "unduly delay

4  or prejudice the adjudication of the original parties' rights," it is apparent that permitting every PPA

5  counterparty to intervene would also be a procedural nightmare and could result in significant delays

6  to resolving the jurisdictional issue in the Adversary Proceeding.  The Court need look no further

7  than the flood of counterparties that submitted motions to intervene as proof that granting the

8  Motions would open the floodgates to a deluge of ancillary motion practice and an increased burden

9  on this Adversary Proceeding.

10          Moreover, as with intervention as of right under Rule 24(a)(2), it is appropriate to deny

11  permissive intervention (as well as intervention as of right) here because "[a]ny differences [between

12  the Movants and FERC] are rooted in style and degree, not the ultimate bottom line."  *Perry*, 587

13  F.3d at 949.  Furthermore, because Movants persist in trying to argue over their superior knowledge

14  of the PPAs and the consequences of the PPAs where the Debtors have not made any determinations

15  whether to reject any of those PPAs, the Court should deny permissive intervention to join the

16  Adversary Proceeding to avoid "extraneous legal and factual issues that [Plaintiff's] lawsuit would

17  not otherwise invoke."  *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL

18  4914694, at *4 (N.D. Cal. Aug. 17, 2015) (quoting *UMG Recordings, Inc. v. Bertelsmann AG*, 222

19  F.R.D. 408, 414-15 (N.D. Cal. 2004)).

20

21

22

23

24

25

26

27

28

## IV.    CONCLUSION

For all the reasons set forth above, the Debtors respectfully request that the Court deny the Movants' motions to intervene.

Dated: February 11, 2019

WEIL, GOTSHAL & MANGES LLP

KELLER & BENVENUTTI LLP


/s/ *Peter J. Benvenutti*
                Peter J. Benvenutti


*Proposed Attorneys for Debtors and Debtors in Possession*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119