WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Theodore Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:  212 310 8000
Fax:  212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel:  415 496 6723
Fax:  650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION**, | Chapter 11 |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors**. | Adv. Pro. No. 19-03003 (DM) |
| **PG&E CORPORATION,** **PACIFIC GAS AND ELECTRIC COMPANY,** **Plaintiffs,** v. **FEDERAL ENERGY REGULATORY COMMISSION,** **Defendant.** | **MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEBTORS' MOTION FOR PRELIMINARY INJUNCTION** Date:  April 10, 2019 Time:  9:30 a.m. Place:  Hon. Dennis Montali United States Bankruptcy Court, Courtroom 17, 16th Floor 450 Golden Gate Ave San Francisco, CA 94102 |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

i

# **TABLE OF CONTENTS**

Introduction ..............................................................................................................1

Argument ..................................................................................................................1

I.    The Bankruptcy Court Must Protect Its Plenary Jurisdiction over Core Proceedings ...............1

    A.    This Court Must Protect Its Plenary Jurisdiction ..............................................2

    B.    FERC Does Not Have Concurrent Jurisdiction, or Any Jurisdiction, over the Rejection of PPAs ......................................................................................8

        1.    FERC Simply Ignores § 1334(a)'s Plain Meaning ...........................8

        2.    FERC's Syllogism for Its "Concurrent" Jurisdiction Is Unsound and Invalid ..................................................................................10

    C.    FERC's Order Is Not Entitled to Deference from This Court ........................14

II.    This Is a Justiciable Case or Controversy ....................................................16

III.    FERC Is Subject to the Automatic Stay ........................................................18

    A.    Section 362(b)(4) Does Not Exempt FERC Action from the Automatic Stay ...........19

        1.    FERC Action Would Not Effectuate Public Policy ....................19

        2.    FERC Action Fails the Pecuniary Interest Test .........................21

    B.    Section 362(a) Stays FERC Proceedings ......................................................22

IV.    The Objectors' Arguments Against the Appropriateness of Injunctive Relief Are Beside the Point .....................................................................................23

    A.    Likelihood of a Successful Reorganization Is the Correct Standard .............24

        1.    The Debtors Are Reasonably Likely to Reorganize Successfully ...........24

        2.    The Debtors Are Likely to Succeed on the Merits in this Adversary Proceeding ...........................................................................25

    B.    Without an Injunction, the Debtors Will Suffer Irreparable Harm ...............25

    C.    An Injunction Would Not Harm FERC or the Intervenors ...........................28

    D.    The Public Interest Favors an Injunction ......................................................28

V.    The Court Should Not Otherwise Decline to Exercise Its Exclusive Jurisdiction ................29

    A.    Sovereign Immunity Has Been Abrogated .....................................................29

    B.    The Court Cannot Abstain from Exercising Its Exclusive Jurisdiction ..........30

    C.    Judicial Estoppel Cannot Prevent This Court from Deciding Its Jurisdiction ..........30

Conclusion ..............................................................................................................32

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Ribbons & Office Prod., Inc.,*
125 B.R. 259 (B.A.P. 9th Cir. 1991) ................................................................16–17

*Ah Quin v. Cty. of Kauai Dep't of Transp.,*
733 F.3d 267 (9th Cir. 2013) .................................................................................31

*Am. Energy Corp. v. Rockies Express Pipeline LLC,*
622 F.3d 602 (6th Cir. 2010) .................................................................................15

*Atl. City. Elec. Co. v. FERC,*
295 F.3d 1 (D.C. Cir. 2002) ..................................................................................13

*In re Bel Air Chateau Hosp., Inc.,*
611 F.2d 1248 (9th Cir. 1979) ...............................................................................24

*In re Billing Res.,*
No. 07-52890-ASW, 2007 Bankr. LEXIS 3789 (Bankr. N.D. Cal. Nov. 2, 2007) .......................24

*In re Birting Fisheries, Inc.,*
300 B.R. 489 (B.A.P. 9th Cir. 2003) ...............................................................4, 6, 24

*Board of Governors of the Fed. v. MCorp Fin., Inc.,*
502 U.S. 32 (1991) .........................................................................................22, 23

*In re Boston Generating, LLC,*
2010 WL 4616243 (S.D.N.Y. 2010) .......................................................................15

*Boynton v. United States,*
566 F.2d 50 (9th Cir. 1977) .....................................................................................6

*In re Burlington Motor Carriers Inc.,*
No. 99-157-MMS, 1999 WL 1427683 (D. Del. Dec. 30, 1999) .................................11

*California Save Our Streams Council, Inc. v. Yeutter,*
887 F.2d 908 (9th Cir. 1989) ...........................................................................1, 15

*In re Calpine,*
337 B.R. 27 (S.D.N.Y. 2006) ......................................................................15, 31, 32

*Celotex Corp. v. Edwards,*
514 U.S. 300 (1995) .................................................................................................3

*Chao v. Hosp. Staffing Servs., Inc.,*
270 F.3d 374 (6th Cir. 2001) ..............................................................................6, 18

*In re Chiron Equities, LLC,*
552 B.R. 674 (Bankr. S.D. Tex. 2016) ..................................................................26

*City & Cty. of S.F. v. PG&E Corp.,*
433 F.3d 1115 (9th Cir. 2006) .........................................................................20, 22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*City of Arlington v. FCC*,
   569 U.S. 290 (2013)......................................................................................14

*In re City of Cent. Falls, R.I.*,
   468 B.R. 36 (Bankr. D.R.I. 2012).................................................................5

*City of Tacoma v. Taxpayers of Tacoma*,
   357 U.S. 320 (1958)..............................................................................1, 7, 15

*Civil Aeronautics Bd. v. Delta Air Lines, Inc.*,
   367 U.S. 316 (1961)......................................................................................13

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)........................................................................................2

*Commodity Futures Trading Com. v. Co. Petro Marketing Group, Inc.*,
   700 F.2d 1279 (9th Cir. 1983)..................................................................18–19

*In re Dan Hixson*,
   12 B.R. 917 (Bankr. N.D. Tex. 1981)..........................................................22

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008)......................................................................................17

*Delpit v. Commissioner*,
   18 F.3d 768 (9th Cir. 1994)..........................................................................19

*In re Dingley*,
   852 F.3d 1143 (9th Cir. 2017)......................................................................19

*In re Diversified Contract Servs., Inc.*,
   167 B.R. 591 (Bankr. N.D. Cal. 1994)........................................................31

*Dore & Assocs. Contracting, Inc. v. Am. Druggist Ins. Co.*,
   54 B.R. 353 (Bankr. W.D. Wis. 1985)........................................................25

*E-Pass Techs. v. Moses & Singer, LLP*,
   No. C-09-5967 EMC, 2011 WL 5357912 (N.D. Cal. Nov. 4, 2011)...............31

*In re Excel*,
   502 F.3d 1086 (9th Cir. 2007)................................................................24, 25

*FCC v. NextWave Pers. Commc'ns, Inc.*,
   537 U.S. 293 (2003)......................................................................................13

*Fed. Mar. Comm'n v. S.C. State Ports Auth.*,
   535 U.S. 743 (2002)........................................................................................5

*In re FirstEnergy Sols. Corp.*,
   No. 18-50757, 2018 WL 2315916 (Bankr. N.D. Ohio May 18, 2018)......12, 22, 27, 29

*Franceschi v. Schwartz*,
   57 F.3d 828 (9th Cir. 1995)............................................................................5

*Gonzales v. Parks*,
   830 F.2d 1033 (9th Cir. 1987)....................................................................2, 5

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Graham v. United States*,
  243 F.2d 919 (9th Cir. 1957) ....................................................................6

*In re Gruntz*,
  202 F.3d 1074 (9th Cir. 2000) ........................................................ *passim*

*In re Gurrola*,
  328 B.R. 158 (B.A.P. 9th Cir. 2005)........................................................5

*Henkel v. Lickman (In re Lickman)*,
  286 B.R. 821 (Bankr. M.D. Fla. 2002) ..................................................26

*In re Herbert*,
  No. CC-96-1979-HOH, 1998 Bankr. LEXIS 617 (B.A.P. 9th Cir. May 19, 1998)........................6

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*,
  997 F.2d 581 (9th Cir. 1993) ..................................................................19

*Hughes v. Talen Energy Mktg., LLC*,
  136 S. Ct. 1288 (2016) ............................................................................10

*Hunter v. FERC*,
  569 F. Supp. 2d 12 (D.D.C. 2008) .........................................................1, 2

*Hunter v. FERC*,
  711 F.3d 155 (D.C. Cir. 2013) ..................................................................9

*Ingersoll-Rand Fin. Corp. v. Miller Min. Co.*,
  817 F.2d 1424 (9th Cir. 1987) ..............................................................7, 23

*Islander E. Pipeline Co. v. Blumenthal*,
  478 F. Supp. 2d 289 (D. Conn. 2007) ...................................................15

*Jama v. Immigration & Customs Enf't*,
  543 U.S. 335 (2005) ...............................................................................13

*Jarrard v. CDI Telecommunications, Inc.*,
  408 F.3d 905 (7th Cir. 2005) .................................................................31

*Kalb v. Feuerstein*,
  308 U.S. 433 (1940).........................................................................2, 4, 5

*La. Pub. Serv. Comm'n v. FCC*,
  476 U.S. 355 (1986)................................................................................14

*Lamar, Archer & Cofrin, LLP v. Appling*,
  138 S. Ct. 1752 (2018).............................................................................3

*Law v. Siegel*,
  571 U.S. 415 (2014)................................................................................13

*In re Lyondell Chem. Co.*,
  402 B.R. 571 (Bankr. S.D.N.Y. 2009) ...................................................24

*In re McGhan*,
  288 F.3d 1172 (9th Cir. 2002) .................................................................2

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)..........................................................................16, 17

*Mississippi v. Louisiana*,
    506 U.S. 73 (1992)........................................................................................8

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984)..............................................................................13, 18

*NLRB v. Edward Cooper Painting, Inc.*,
    804 F.2d 934 (6th Cir. 1986) ......................................................................6

*In re New York Deli, Ltd.*,
    75 B.R. 797 (Bankr. D. Haw. 1987) ...........................................................5

*NLRB v. Continental Hagen Corp.*,
    932 F.2d 828 (9th Cir. 1991) ....................................................................19

*In re NRG Energy, Inc.*,
    No. 03-3754-RCC, 2003 WL 21507685 (S.D.N.Y. June 30, 2003)...............15, 27

*In re Onecast Media, Inc.*,
    439 F.3d 558 (9th Cir. 2006) ....................................................................11

*In re Ortiz*,
    400 B.R. 755 (C.D. Cal. 2009) .................................................................11

*In re Otero Mills, Inc.*,
    25 B.R. 1018 (D.N.M. 1982) ....................................................................25

*Pac. Gas & Elec. Co. v. FERC*,
    464 F.3d 861 (9th Cir. 2006) ....................................................................15

*Pac. Gas & Elec. Co. v. Lynch (In re Pac. Gas & Elec. Co.)*,
    263 B.R. 306 (Bankr. N.D. Cal. 2001) ...............................................20–21

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984).......................................................................3

*Palafox St. Assocs., L.P. v. United States*,
    114 Fed. Cl. 773 (2014) ............................................................................31

*In re Parker*,
    68 F.3d 1131 (9th Cir. 1995) ....................................................................23

*In re Peralta*,
    317 B.R. 381 (B.A.P. 9th Cir. 2004)..........................................................18

*In re Phila. Newspapers, LLC*,
    407 B.R. 606 (E.D. Pa. 2009) ..................................................................24

*Philip Morris, Inc. v. Block*,
    755 F.2d 368 (4th Cir. 1985) ....................................................................14

*In re Poule*,
    91 B.R. 83 (B.A.P. 9th Cir. 1988)........................................................19, 22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*SAS Inst., Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) ................................................................14

*In re Schwartz*,
  954 F.2d 569 (9th Cir. 1992) .........................................................6

*In re Sec. Gas & Oil, Inc.*,
  70 B.R. 786 (Bankr. N.D. Cal. 1987) ............................................23

*Sierra Vista Hosp. v. Barton & Assocs., Inc.*,
  No. 17-cv-367-JAP/GJF, 2017 LEXIS 109597 (D.N.M. July 13, 2017) ............16

*Silver v. Exec. Car Leasing Long-Term Disability Plan*,
  466 F.3d 727 (9th Cir. 2006) ........................................................10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...............................................................16

*Steven P. Nelson, D.C., P.A. v. G.E. Capital Corp.*,
  140 B.R. 814 (Bankr. M.D. Fla. 1992) ............................................24

*In re Thomassen*,
  15 B.R. 907 (BAP 9th Cir. 1981) ...................................................21

*Thompkins v. Lil' Joe Records, Inc.*,
  476 F.3d 1294 (11th Cir. 2007) ....................................................11

*TW Telecom Holdings Inc. v. Carolina Internet Ltd.*,
  661 F.3d 495 (10th Cir. 2011) (en banc) ..........................................7

*In re Union Tr. Phila., LLC*,
  460 B.R. 644 (E.D. Pa. 2011) ...................................................24–25

*In re Universal Life Church*,
  128 F.3d 1294 (9th Cir. 1997) ..................................................19–22

*Wellness Group, LLC v. King Bio, Inc.*,
  No. 1:12-cv-00281-MR-DLH, 2014 LEXIS 61073 (W.D.N.C. Apr. 30, 2014) ........16

*In re Wengert Transp., Inc.*,
  59 B.R. 226 (N.D. Iowa 1986) .......................................................19

*Whiting v. Krassner*,
  391 F.3d 540 (3d Cir. 2004) .........................................................31

*Williams Nat. Gas Co. v. City of Oklahoma City*,
  890 F.2d 255 (10th Cir. 1989) ......................................................15

*In re Wood*,
  825 F.2d 90 (5th Cir. 1987) ....................................................310195

*In re Wyly*,
  526 B.R. 194 (Bankr. N.D. Tex. 2015) .........................................20, 22

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Statutes**

Title 11, United States Code

§ 101(5) .................................................................................................... 11–12

§ 105 ............................................................................................................ 23, 29

§ 106(a) ....................................................................................................... 29

§ 108(b) ....................................................................................................... 22

§ 362 ............................................................................................................ *passim*

§ 365 ............................................................................................................ *passim*

§ 507 ............................................................................................................ 28

§ 554 ............................................................................................................ 9

§ 562 ............................................................................................................ 13

§ 1110 .......................................................................................................... 13

§ 1113 .......................................................................................................... 13

§ 1129 .......................................................................................................... 13

§ 1169 .......................................................................................................... 13

Title 16, United States Code

§§ 791a–830 ............................................................................................... 9

§ 824d ......................................................................................................... 10, 29

§ 824e ......................................................................................................... 29

§ 825l(b) ..................................................................................................... 1, 6–7, 14–15

Title 26, United States Code

§ 6672 ......................................................................................................... 6

Title 28, United States Code

§ 157 ............................................................................................................ 3, 5

§ 158 ............................................................................................................ 15

§ 959(b) ...................................................................................................... 14

§ 1251(a) .................................................................................................... 8

§ 1257 .......................................................................................................... 5

§ 1334(a) .................................................................................................... *passim*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

§ 1334(c)(1) .................................................................30

§ 1334(e) .............................................................17, 26

**Other Authorities**

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (Nov. 6, 1978)...........................9

*Cal. Elec. Oversight Bd. v. Calpine Energy Services, L.P.*,
114 F.E.R.C. ¶ 61,003 (2006) ...........................29, 31

Energy Policy Act of 2005, 109 Pub. L. No. 58, 119 Stat. 594 (Aug. 8, 2005) ...................................9

Public Utility Holding Company Act, Pub. L. No. 74-333, §§ 201–213, 49 Stat. 803 (1935)..............9

The Federalist No. 42 ..............................................................3

U.S. Const. art. I, § 8, cl. 4.................................................3

*Concurrent*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/
concurrent ..................................................... 8

Webster's New International Dictionary 890 (2d ed. 1942)..................8

Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4469.1 (2d ed.)........................5

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Since the ratification of the Constitution, Congress has determined that bankruptcy law should be administered by one court in one forum. The Federal Energy Regulatory Commission ("**FERC**") and certain owners of generating facilities seek to upend this bedrock principle on the basis of assertions of "concurrent" jurisdiction that are untethered to any statute or authority. Instead, FERC and the Intervenors (together, the "**Objectors**") rely on a panoply of arguments that do not alter the inescapable conclusion that the Bankruptcy Court, not FERC, has plenary jurisdiction over core proceedings, which very much include § 365 of the Bankruptcy Code.[1]

**ARGUMENT**

**I. THE BANKRUPTCY COURT MUST PROTECT ITS PLENARY JURISDICTION OVER CORE PROCEEDINGS**

Despite FERC's attack on this Court's original and exclusive jurisdiction, FERC nonetheless asserts that the Debtors have mounted an impermissible collateral attack on FERC's Orders declaring the agency's "concurrent" jurisdiction over the rejection of certain executory contracts. FERC and the Intervenors argue that, pursuant to 16 U.S.C. § 825l(b), *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958), and *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989), any issue adjudicated by FERC must be reviewed by a U.S. Court of Appeals, even if, as the Intervenors contend, FERC was not competent to adjudicate the issue in the first instance. The Debtors agree that in the normal course of litigation, any suit concerning agency action that "might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." *Hunter v. FERC*, 569 F. Supp. 2d 12, 15 (D.D.C. 2008) (citation omitted). As the Intervenors correctly argue, a federal district court would ordinarily lack jurisdiction to "collaterally attack and overturn the FERC Order . . . just as it would if the Debtors came to this or any federal court to attack the merits of a state court order." *See* PPA Counterparties' Opposition ("**PPA Opp.**") at 4.

But these are not ordinary circumstances. This is bankruptcy. Orders from state courts and federal agencies are void whenever they conflict with the Bankruptcy Court's exercise of original

---

[1] All capitalized terms not defined in this memorandum have the meaning ascribed to them in the Debtors' Motion for Preliminary Injunction and Memorandum of Points and Authorities in Support (the "**Opening Brief**"), ECF No. 2-1.

and exclusive jurisdiction over core proceedings. As the Supreme Court has explained, "Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation . . . render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally." *Kalb v. Feuerstein*, 308 U.S. 433, 438–39 (1940). Thus, to accord relief to the Debtors, the Court need not conduct any appellate review of FERC's regulatory actions, but only declare that FERC will be subject to the automatic stay like *any other entity*. And because this Court has a "virtually unflagging obligation . . . to exercise the jurisdiction given [it]," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), it must also find that FERC's Orders are prospectively void because they encroach on a core proceeding solely committed to the Bankruptcy Court. None of FERC's arguments come even remotely close to establishing that Congress has conferred jurisdiction on FERC with respect to the rejection of PPAs. Moreover, because FERC has ventured outside the confines of the Federal Power Act to interpret a provision of the Bankruptcy Code that it then seeks to incorporate into its own statutory grant of authority, its orders are necessarily *ultra vires*. This is "brazen defiance" of the agency's statutory authorization. *Hunter*, 569 F. Supp. 2d at 16. The Debtors' pending Chapter 11 Cases require an expeditious resolution of this matter, and this Court has jurisdiction to determine and enforce its own jurisdiction over the estates and over core proceedings arising under the Bankruptcy Code.

### A. This Court Must Protect Its Plenary Jurisdiction

"A Congressional grant of exclusive jurisdiction to the federal courts includes the implied power to protect that grant." *Gonzales v. Parks*, 830 F.2d 1033, 1036 (9th Cir. 1987). The Court must similarly ensure that its exclusive jurisdiction over the estates and core proceedings remains exclusive. *See In re McGhan*, 288 F.3d 1172, 1175 (9th Cir. 2002) (reversing Bankruptcy Court because it failed "to protect its exclusive jurisdiction over the enforcement of its own orders.").

As the Court is aware, FERC has called this Court's jurisdiction into question by declaring, a few days before the commencement of these proceedings, that the Court *lacks* exclusive jurisdiction because FERC *also* has jurisdiction over the core bankruptcy proceeding of rejection. By doing this, FERC has essentially issued a prospective, direct attack on this Court's jurisdiction. FERC's Orders purport to give FERC jurisdiction over the rejection of PPAs indefinitely—well past the filing of the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Debtors' petition—and as a consequence, the Court must decide whether FERC actually shares jurisdiction over core bankruptcy proceedings. FERC unambiguously does not.

The Constitution gives Congress the power "[t]o establish . . . uniform laws on the subject of bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. The paramount importance of centralized bankruptcy proceedings has long been recognized. "The power of establishing uniform laws of bankruptcy is so intimately connected with the regulation of commerce, and will prevent so many frauds where the parties or their property may lie or be removed into different States that the expediency of it *seems not likely to be drawn into question*." *See* The Federalist No. 42 (James Madison) (emphasis added). Two hundred and twelve years later, the Ninth Circuit affirmed its adherence to this tradition by noting that if bankruptcies were administered in different tribunals, "[i]t is but slight hyperbole to say that chaos would reign in such a system." *In re Gruntz*, 202 F.3d 1074, 1084 (9th Cir. 2000) (citing 11 U.S.C. § 362(a)(6)). For that reason, Congress has made the Bankruptcy Courts the *only* courts capable of adjudicating core bankruptcy matters, by a clear statutory mandate.

The inquiry "must begin[] with the language of the statute." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018). The Bankruptcy Courts have "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). "By the plain wording of the statute, Congress has expressed its intent that bankruptcy matters be handled exclusively in a federal forum." *Gruntz*, 202 F.3d at 1080. In so doing, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

The exclusive jurisdiction given to the Bankruptcy Courts by § 1334(a) over any matter that "arises under title 11" extends to all "core" proceedings. *See* 28 U.S.C. § 157(b)(1). A "'core proceeding' in bankruptcy is one that 'invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *Gruntz*, 202 F.3d at 1081 (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). As the Ninth Circuit has explained, "the separation of 'core' and 'non-core' proceedings in the 1984 Act creates a distinction between those judicial acts deriving from the plenary Article I bankruptcy power and those subject

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to general Article III federal court jurisdiction." *Id.*; *see also In re Birting Fisheries, Inc.*, 300 B.R. 489, 499 (B.A.P. 9th Cir. 2003) ("exclusive jurisdiction exists over 'core' proceedings.").

Section 8 of Article I, § 1334(a), and § 157(b) grant the Bankruptcy Court "plenary power over core proceedings." *Gruntz*, 202 F.3d at 1082. Upon the filing of a bankruptcy petition, all jurisdiction over the bankruptcy estate becomes vested in the Bankruptcy Court and all other proceedings against the debtor are stayed. *See Kalb*, 308 U.S. at 438–39. Any judicial or administrative action that violates the Bankruptcy Court's exclusive jurisdiction is simply void. Thus, in *Gruntz*, the Ninth Circuit found that "[a]ny state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay." 202 F.3d at 1082. This is not because of the text of section 362—that provision is itself silent on whether a tribunal's actions in violation of the stay are void—but because the only Court competent to adjudicate core bankruptcy matters is the Bankruptcy Court. Any act that attempts to tell the Bankruptcy Court how to manage the estate, or any other core matter, is *ipso facto* void because Congress has given exclusive jurisdiction over core matters to the Bankruptcy Court and to no other tribunal.

In fact, the Ninth Circuit in *Gruntz* rejected a state court's claim to "concurrent" jurisdiction over a core bankruptcy proceeding, namely the automatic stay. The Ninth Circuit found such a claim "unavailing" because § 1334(a)'s grant of "original and exclusive" jurisdiction means what it says and "nothing in that section vests the *states* with any jurisdiction over a core bankruptcy proceeding." *Id.* at 1083 (emphasis in original). And "even assuming that the states had concurrent jurisdiction [over the automatic stay], their judgment would have to defer to the plenary power vested in the federal courts over bankruptcy proceedings." *Id.* at 1083. Because proceedings involving § 362 are core proceedings under § 157, "by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay." *Id.* *Gruntz* thus stands for the proposition that any tribunal that rules on a core bankruptcy matter can be overruled by the Bankruptcy Court. And the locus of the current controversy—the rejection of contracts under § 365—is, of course, a core proceeding. *See, e.g.*, *In re City of Cent. Falls, R.I.*, 468 B.R. 36, 50 (Bankr. D.R.I. 2012) ("Proceedings under 11 U.S.C. § 365(a) to assume or reject executory contracts . . . [are] undisputedly core proceedings."); *In re*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*New York Deli, Ltd.*, 75 B.R. 797, 801 (Bankr. D. Haw. 1987) ("It is clear that motions to assume or reject leases and executory contracts are 'matters concerning the administration of the estate' pursuant to 28 U.S.C. § 157(b)(2)(A) and thus a core proceeding.").

The availability of exclusive appellate review in state courts is no obstacle to the invalidation of state court judgments that infringe on the exclusive jurisdiction of the Bankruptcy Courts. Although state courts are "arm[s] of the state," *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995), are ordinarily accorded "the dignity that is consistent with their status as sovereign entities," *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002) (citation omitted), and are typically subject to federal review only by the United States Supreme Court pursuant to 28 U.S.C. § 1257, that is not the case when the dispute involves a core proceeding within the Bankruptcy Court's exclusive jurisdiction. "In apparent contradiction to the *Rooker-Feldman* theory, bankruptcy courts are empowered to avoid state judgments," *Gruntz*, 202 F.3d at 1079, and "[a] state court judgment entered in a case that falls within the federal courts' exclusive jurisdiction is subject to collateral attack in the federal courts." *Gonzales*, 830 F.2d at 1036; *see also* Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4469.1 (2d ed.) ("Habeas corpus, bankruptcy, and the International Child Abduction Remedies Act embody exceptions to the *Rooker-Feldman* doctrine."). "In fact, a reverse *Rooker-Feldman* situation is presented when state courts decide to proceed in derogation of the stay, because it is the state court which is attempting impermissibly to modify the federal court's injunction" and thereby violate the exclusive jurisdiction of the Bankruptcy Court. *Gruntz*, 202 F.3d at 1083; *see also Kalb*, 308 U.S. at 438–39 ("judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects [are] nullities and vulnerable collaterally"); *In re Gurrola*, 328 B.R. 158, 169 (B.A.P. 9th Cir. 2005) ("The rule regarding contested subject matter jurisdiction permits collateral attacks where '[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government.'" (alterations in original)) (quoting Restatement (Second) of Judgments § 12(2)).

There can be no doubt that Congress intended the Bankruptcy Court's exclusive jurisdiction to similarly supplant incorrect decisions by federal agencies "in core matters that fall within a bankruptcy court's 'arising under' jurisdiction." *Birting Fisheries*, 300 B.R. at 500. Decisions of federal agencies that encroach on the exclusive jurisdiction of the Bankruptcy Courts are just as void

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

as the encroaching judgments of state courts. For example, the Ninth Circuit has found that an IRS tax assessment made pursuant to 26 U.S.C. § 6672 that violated the Bankruptcy Code's automatic stay provision—*i.e.*, an act concerning the estate made outside the exclusive jurisdiction of the Bankruptcy Court—was void. *See In re Schwartz*, 954 F.2d 569, 575 (9th Cir. 1992) ("A tax assessment is a substantive violation of the automatic stay which creates a lien on all of the debtor's property"). The Court reached this conclusion even though in non-bankruptcy proceedings "[a] tax assessment may not be collaterally attacked," *Graham v. United States*, 243 F.2d 919, 922 (9th Cir. 1957), the tax assessment in question had long since become final, and the only means of appellate review was either the Federal Court of Claims or the District Court. *See Boynton v. United States*, 566 F.2d 50, 53 (9th Cir. 1977). None of that stopped the Ninth Circuit from invalidating the tax assessment. The IRS encroached on the Bankruptcy Court's exclusive jurisdiction by violating the automatic stay, and the Bankruptcy Court not only could but *had* to protect its jurisdiction.

Likewise, in *In re Herbert*, No. CC-96-1979-HOH, 1998 Bankr. LEXIS 617, at *9 (B.A.P. 9th Cir. May 19, 1998), the Bankruptcy Appellate Panel found that the IRS violated the automatic stay by taking action, both before and after it had notice of the debtors' bankruptcy, because a tax assessment is "the first step in the IRS's tax collection process." *Id.* at *9. Thus, it was up to the Bankruptcy Court, not the IRS—irrespective of the IRS appellate process—to decide whether the automatic stay had been violated. Numerous courts have noted the same thing with regard to other agency determinations. *See, e.g.*, *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384–85 (6th Cir. 2001) ("Administrative proceedings before a federal agency may likewise be declared void ab initio if a court determines that the agency incorrectly determined that the stay did not bar the proceedings."); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 940 (6th Cir. 1986) (noting, in dictum, that if "the proceeding was not excepted from the automatic stay, the entire NLRB proceeding would be void ab initio"). It is therefore clear that the availability of exclusive review of agency action does not foreclose the exercise of the Bankruptcy Court's jurisdiction.

For those reasons, 16 U.S.C. § 825l(b) is inapposite here, and *City of Tacoma* is not controlling. FERC's argument that "district courts consistently refuse to exercise jurisdiction over complaints that would restrict FERC action," FERC Opp. at 10, completely misses the central issue of this case: the Bankruptcy Court's exclusive jurisdiction over core proceedings. District courts

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

ordinarily lack jurisdiction over FERC orders because their review of agency rate-setting is foreclosed by the availability of direct and exclusive appellate review. But once a debtor declares bankruptcy, an agency decision against the debtor concerning a core proceeding falls within the Bankruptcy Court's jurisdiction—not the jurisdiction of the federal courts of appeals. *See Ingersoll-Rand Fin. Corp. v. Miller Min. Co.*, 817 F.2d 1424, 1426 (9th Cir. 1987) ("section 362 should be read to stay all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee." (citation omitted)). As then-Judge Gorsuch wrote in overruling the Tenth Circuit's previous precedent to align with the precedent of nine other U.S. Courts of Appeals,

> [S]ection 362 . . . stay[s] all appeals in proceedings that were *originally brought against the debtor*, regardless of whether the debtor is the appellant or appellee. Thus, whether a case is subject to the automatic stay must be determined at its inception. That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs.

*TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 497 (10th Cir. 2011) (en banc) (citations omitted) (emphasis in original).

It falls to this Court to make an independent assessment of its own jurisdiction and enforce its exclusive jurisdiction over a core bankruptcy proceeding. The Court is neither asked to sit as an appellate panel nor as a ratemaking agency. The Debtors simply request that this Court enforce its plenary jurisdiction over core proceedings. As the Ninth Circuit has stated with regard to another core proceeding, "[a] bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority." *Gruntz*, 202 F.3d at 1083. All matters concerning the estates and the Bankruptcy Court's exercise of plenary jurisdiction over the estates and matters arising under the Bankruptcy Code must be determined by this Court, and not another body. And should FERC disagree with this Court's decision, its right to appellate review will not be diminished—thus placing § 825l(b) and the Code in perfect harmony.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**B.     FERC Does Not Have Concurrent Jurisdiction, or Any Jurisdiction, over the Rejection of PPAs**

*1.     FERC Simply Ignores § 1334(a)'s Plain Meaning*

Not once in the Objectors' briefing do they attempt to explain how FERC can have "concurrent" jurisdiction when § 1334(a) of title 28 of the United States Code provides that the federal courts, and not a federal agency, have "original and exclusive jurisdiction of all cases under title 11." As the Supreme Court has held in describing its own "original and exclusive" jurisdiction over disputes between the States, 28 U.S.C. § 1251(a), "the description of our jurisdiction as 'exclusive' necessarily denies jurisdiction of such cases to any other federal court." *Mississippi v. Louisiana*, 506 U.S. 73, 77–78 (1992). "This follows from the plain meaning of 'exclusive,'" which means to "debar from possession." *Id.* (citing Webster's New International Dictionary 890 (2d ed. 1942)). That same dictionary uses "concurrent jurisdiction" as an example when defining the adjective "concurrent" as a quality "exercised over the same matter or area by two different authorities." *See Concurrent*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/concurrent (last visited Mar. 13, 2019). In other words, "concurrent" and "exclusive" are antonyms. If jurisdiction is concurrent, then it cannot be exclusive; if it is exclusive, it cannot be concurrent. FERC and the Intervenors might as well argue that hot is cold and wet is dry—if they are correct in their assessment of the law, then section 1334(a) simply does not mean what it says.

The Objectors' contrary arguments are wholly unconvincing. Rather than engage with the text of the statute, they provide a litany of arguments and historical curios that supposedly give FERC jurisdiction over the rejection of PPAs. All lack merit. *First*, though it is not entirely clear what they are driving at, the Intervenors appear to argue that because a debtor could reject contracts at common law, Congress did not mean to strip FERC of jurisdiction over the rejection of contracts when it enacted § 365 in 1978. But no one denies that rejection has doctrinal roots in an era when English prisons held debtors, though the law has changed much since then. What is disputed is that FERC ever had such jurisdiction to begin with, a point the Objectors persistently, almost pointedly take for granted. This is clearly a matter for the Bankruptcy Court. Section 1334(a) embraces core proceedings such as rejection under section 365, which provides that the "the trustee, *subject to the court's approval*, may assume or reject any executory contract or unexpired lease of the debtor." 11

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

U.S.C. § 365(a) (emphasis added). And both section 1334(a) of title 28 and section 365 of the Bankruptcy Code were enacted in 1978 as part of "[a]n Act to establish a uniform Law on the Subject of Bankruptcies," a title that itself shows that Congress explicitly intended there to be *one* tribunal tasked with core bankruptcy matters. *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (Nov. 6, 1978). Nothing in the FPA—which was enacted as the Public Utility Holding Company Act of 1935, Pub. L. No. 74-333, §§ 201–213, 49 Stat. 803 (codified as amended at 16 U.S.C. §§ 791a–830), and created the Federal Power Commission (which later became FERC as a result of the 1977 enactment of the Department of Energy Organization Act)—suggests otherwise.

*Second*, although the Intervenors suggest it bears some relevance, it is not apparent what § 554 of the Code, concerning the Bankruptcy Court's jurisdiction over the estate's abandonment of property, has to do with *FERC*'s jurisdiction over *rejection*. The Intervenors do not attempt to explain this, and the Debtors will not attempt to since it has no relevance here.

*Third*, the argument that the Energy Policy Act of 2005, 109 Pub. L. No. 58, 119 Stat. 594 (Aug. 8, 2005), somehow expands FERC's jurisdiction beyond the terms of the FPA was rejected by the D.C. Circuit when FERC last made this argument by proposing that the Act expanded its jurisdiction over matters within the exclusive jurisdiction of the Commodity Futures Trading Commission. *See Hunter v. FERC*, 711 F.3d 155, 159 (D.C. Cir. 2013). "Because any infringement of the CFTC's exclusive jurisdiction" would effectively act as a "repeal," FERC's argument that it had jurisdiction could only be construed as a "repeal by implication." *Id.* But because repeals by implication are "not favored," the D.C. Circuit found that there was no "irreconcilable conflict" and concluded that FERC therefore could not "encroach[] upon the CFTC's exclusive jurisdiction." *Id.* at 159–60.

Finally, the Objectors' remaining argument—that their breezy, extra-textual rationalizations about FERC's "concurrent" jurisdiction are somehow more specific than § 1334(a)'s grant of "original and exclusive" jurisdiction—is facially ridiculous. This is not a question of generality versus specificity. FERC cannot point to any statutory language that justifies its assertion of "concurrent" jurisdiction, and § 1334(a)'s grant of "original and exclusive" jurisdiction explicitly contradicts that assertion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### 2. FERC's Syllogism for its "Concurrent" Jurisdiction is Unsound and Invalid

FERC's argument for "concurrent" jurisdiction over the rejection of PPAs proceeds from two premises that it believes support its conclusion. This syllogism may be summarized concisely:

Premise: FERC has original and exclusive jurisdiction over the rates in PPAs, extending to anything that "alters" (modifies, abrogates, etc.) those rates.

Premise: The rejection of contracts under § 365 of the Bankruptcy Code "alters" the rates of PPAs.

Conclusion: Therefore, FERC has concurrent jurisdiction over the rejection of PPAs.

The Debtors do not dispute the first premise. "FERC has exclusive authority to regulate 'the sale of electric energy at wholesale in interstate commerce.'" *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1292 (2016) (citing 16 U.S.C. § 824(b)(1)). The Debtors also agree that "[t]he FPA assigns to FERC responsibility for ensuring that '[a]ll rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission . . . shall be just and reasonable." *Id.* (citing 16 U.S.C. § 824d(a)). Because all the parties agree that the FPA means what it says, there is no need for the Court to linger on the Objectors' lengthy expositions on the filed-rate doctrine or FERC's exclusive jurisdiction over rates.[2]

It is the second premise with which the Debtors take issue. FERC asserts that "a rejection of a Commission-jurisdictional contract in a bankruptcy court alters the essential terms and conditions of the contract and the filed rate." NextEra Order at ¶ 29. Taking this together with the premise that FERC has exclusive jurisdiction over rates, FERC concludes that "[the] Commission's jurisdiction is implicated," *id.*, and that consequently "[the] Commission and the bankruptcy courts have

---

[2] On this point, the Court should give no weight to the Declarations of Frank Lindh and William L. Massey because they are both improper and irrelevant. *First*, they are laden with legal arguments that are not properly the subject of factual declarations. *See, e.g.*, *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2 (9th Cir. 2006) (affirming exclusion of a "legal argument that was not appropriate for a declaration"). *Second*, their discussions of California law and their guesswork as to the Debtors' injuries are simply not relevant to the jurisdictional issues in this case. Indeed, Mr. Massey's concerns regarding grid reliability, market instability, and infrastructure are nothing more than unfounded fears—nothing here suggests (nor could it) that applying the automatic stay and preserving this Court's exclusive jurisdiction will result in blackouts along the West Coast.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

concurrent jurisdiction to review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy." *Id.* at p. 14.

There are at least two fatal problems with FERC's syllogism. The first is that even if both of FERC's premises were sound, the only valid conclusion would be that FERC has *exclusive* jurisdiction, not *concurrent* jurisdiction, with the result that FERC's syllogism would oust the Bankruptcy Court entirely from the field of the rejection of contracts. Since that position is completely untenable given the plain language of § 1334(a), FERC has instead dialed back that conclusion by asserting it has "concurrent" jurisdiction, thereby venturing into a bold new world of jurisdictional analysis that essentially splits the difference. But, of course, the very fact that FERC's reasoning yields an invalid conclusion is itself highly suggestive that its argument has an unsound premise. And indeed it does. The second premise—that rejection "alters" a contract—is clearly incorrect. Rejection is breach, and breach does not alter a contract.

The Bankruptcy Code plainly states that FERC is wrong. Rejection "constitutes a breach of such contract . . . immediately before the date of the filing of the petition." *See* 11 U.S.C. § 365(g)(1). As the Debtors have made clear time and time again, "rejection does not terminate a contract." *In re Ortiz*, 400 B.R. 755, 762 (C.D. Cal. 2009). Instead, rejection under § 365 "create[s] a legal fiction in order to determine the priority of the creditor's claims under the rejected contract relative to all other unsecured claims against the debtor." *In re Burlington Motor Carriers Inc.*, No. 99-157-MMS, 1999 WL 1427683, at *12 (D. Del. Dec. 30, 1999). It creates a "breach" for which the non-breaching party to the contract receives a "claim" against a debtor's estate under 11 U.S.C. § 101(5) that will be treated and resolved upon the effectiveness of a debtor's chapter 11 plan. And as this Court well knows, this is settled law. *See, e.g.*, *In re Onecast Media, Inc.*, 439 F.3d 558, 563 (9th Cir. 2006) ("Rejection under the Bankruptcy Code did not divest the estate from the breaching party's rights under the terms of the contract and applicable state law." (citation omitted)); *see also Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007) ("[r]ejection has absolutely no effect upon the contract's continued existence; the contract is not cancelled, repudiated, rescinded, or in any other fashion terminated.'" (citation omitted)).

FERC's argument that rejection "alters" the terms of a contract does a disservice to common sense, the common law, and the Bankruptcy Code. If rejection is breach, then FERC has taken the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

position that breach "alters" a contract too. But if breach altered a contract, then the law of contracts would be meaningless. The party in breach would *unilaterally* modify the breached contract, something that the law of contracts—which requires the meeting of *minds*, plural—abhors. Moreover, the *remedy for breach* would be thrown into uncertainty, because the non-breaching party would have to determine what terms, if any, would determine whether it had a claim against the party in breach. But breach does no such thing, and neither does its doctrinal twin, rejection. Upon rejection of a contract, the rates, terms and conditions, duration, and all the other features of a PPA that fall within the scope of FERC's jurisdiction remain exactly the same. Rejection merely creates a "breach" that gives the non-breaching party a "claim" under § 101(5) that will be measured by the terms of the contract in question, which here happen to be terms regulated by FERC. *See In re FirstEnergy Sols. Corp.*, No. 18-50757, 2018 WL 2315916, at *17 (Bankr. N.D. Ohio May 18, 2018) ("[R]ejection, including the attendant cessation of performance, does not intrude on FERC's jurisdiction over filed rates."). Rather than alter the rates of PPAs, rejection *vindicates* the PPAs and their filed rates "by allowing damage claims pursuant to those contracts and rates." *Id.* at *19.

Because FERC has a fundamentally unsound premise, it has an equally unsound conclusion. If rejection does not alter the terms of a PPA, then there is no basis for FERC's assertion that it has *any* jurisdiction over the rejection of contracts under § 365, let alone "concurrent" or "exclusive" jurisdiction. FERC's argument is thus both unsound and invalid, and it must be rejected.

Perhaps sensing the infirmities of FERC's argument, the Objectors fire off a fusillade of other potential justifications for FERC's jurisdiction. Although they concede "there is no specific exception in section 365" that could justify FERC's argument that it has jurisdiction over the rejection of contracts, PPA Opp. at 8, the Objectors propose that other provisions pick up the slack. This is without merit. Exclusive jurisdiction does not become inclusive by implication, and that is *especially* the case for a "creature of statute" like FERC whose jurisdiction extends no further than the grant given to it by Congress. *Atl. City. Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002); *see also Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 322 (1961) (finding that an agency "is entirely a creature of Congress" and "the determinative question" is not what "[it] thinks it should do but what Congress has said it can do.").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

After all, "Congress knew how to draft an exclusion . . . when it wanted to," and "its failure to do so in this instance indicates that Congress intended that § 365(a) apply" to all PPAs covered by the FPA. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522–23 (1984). In fact, a debtor's right to reject contracts is qualified by many provisions, including provisions applicable to real property leases, timeshare contracts, intellectual property contracts, and obligations to the FDIC. *See* 11 U.S.C. §§ 365(h), (i), (n), and (o). There are also special rules for securities contracts, aircraft equipment, collective bargaining agreements, and railroad leases. *Id.* §§ 562, 1110, 1113, and 1169. All of these are in the Bankruptcy Code, none of them are in the FPA, and none of them give FERC a role here. Section 365's lack of an exception for FERC simply means that FERC has no jurisdiction over the rejection of contracts. *See FCC v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293, 302 (2003) ("[W]here Congress has intended to provide regulatory exceptions to the Bankruptcy Code, it has done so clearly and expressly."); *see also Law v. Siegel*, 571 U.S. 415, 425 (2014) ("The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions.").

The Objectors' other arguments fare no better. Section 362(b)(4) provides an exception to the automatic stay for governmental police and regulatory powers, and section 1129(a)(6) requires a debtor to get applicable regulatory approval prior to the Court's confirmation of the plan, but neither concerns *rejection*, so both are immaterial. Moreover, § 1129(a)(6) explicitly puts regulatory agencies in a position that is *subordinate*, not concurrent, to the Bankruptcy Court; in all events, the Court gets the final decision on confirmation, again revealing the infirmity of the Objectors' position here. The existence of § 1129(a)(6) also shows that Congress considered what role regulatory agencies should play in this process, but declined to give FERC a role with respect to the rejection of contracts. *See, e.g.*, *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."). And the argument that FERC has jurisdiction over the rejection of contracts because the Debtors must manage the estates in compliance with the law, as required by 28 U.S.C. § 959(b), is similarly meritless. The Debtors'

duty under § 959(b) to comply with the "valid laws of the State" in which relevant "property is situated" is not a statutory grant of jurisdiction to FERC over rejection decisions.

The foregoing reveals that the FPA and the Code are already in harmony, and the Objectors' argument that they are not is essentially a baseless assertion that Congress has bequeathed jurisdiction on FERC by indirect means. Congress has not altered this Court's plenary and exclusive jurisdiction over the rejection of contracts, and this Court therefore has subject-matter jurisdiction to adjudicate this dispute, irrespective of § 825l(b)'s normal means of appellate review.

## C. FERC's Order Is Not Entitled to Deference from This Court

Although an administrative act is normally unassailable by collateral attack in non-bankruptcy proceedings, "judicial intervention is authorized when an agency acts in 'brazen defiance' of its statutory authorization." *Philip Morris, Inc. v. Block*, 755 F.2d 368, 369 (4th Cir. 1985) (citation omitted). FERC has clearly done so here. In attempting to rewrite § 365 of the Bankruptcy Code, FERC has gone so far beyond its statutory authority that it is entitled to no deference whatsoever. As the Supreme Court has crisply summarized, "an agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986); *see also City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (noting that when agencies "act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires"). The Debtors argued in their Opening Brief that this Court "owe[s] an agency's interpretation of the law no deference" where, as here, "the statutory provisions before [it] deliver unmistakable commands." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018). This point has not been refuted. Neither FERC nor the Intervenors have made a colorable argument that the law provides FERC jurisdiction here, citing only a handful of cases that would be, at best, persuasive authority. And they are not persuasive. One, *In re Calpine*, 337 B.R. 27 (S.D.N.Y. 2006), is simply wrong as a matter of law because it fails to comprehend the meaning of rejection under § 365 (and concludes that FERC has *exclusive*, not "concurrent," jurisdiction), and another, *In re Boston Generating, LLC*, 2010 WL 4616243 (S.D.N.Y. 2010), is not analogous because there the debtor submitted to FERC's jurisdiction.

The Objectors do not even bother to refute these arguments, opting instead to hide behind 16 U.S.C. § 825l(b) in a transparent attempt to deprive the Debtors of their right to seek authorization to

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

reject contracts under the Bankruptcy Code. But *every* case they cite in support of this argument concerns matters well within FERC's jurisdiction. Not *one* concerns a situation where FERC infringed upon the exclusive jurisdiction of the Bankruptcy Court. *See City of Tacoma*, 357 U.S. at 324 (concerning a construction license issued under the Federal Power Act, a plain exercise of statutory authority); *Pac. Gas & Elec. Co. v. FERC*, 464 F.3d 861, 867 (9th Cir. 2006) (concerning FERC's powers to investigate tariffs); *Cal. Save Our Streams*, 887 F.2d at 911 (power to issue licenses); *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010) (same); *Williams Nat. Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 257 (10th Cir. 1989) (same); *Islander E. Pipeline Co. v. Blumenthal*, 478 F. Supp. 2d 289, 290 (D. Conn. 2007) (state law preempted by same); *In re NRG Energy, Inc.*, No. 03-3754-RCC, 2003 WL 21507685, at *3 (S.D.N.Y. June 30, 2003) (concerning sale of electricity). And not one addresses the fact that rejection motions decided by the Bankruptcy Court are subject to direct review by the District Court, *not* by FERC. *See* 28 U.S.C. § 158. The notion that rejection motions are reviewable by FERC, and then again by FERC on rehearing, before then going to the Court of Appeals to confirm whether FERC properly applied whatever it interprets the law of rejection to be strains comprehension. It is farcical. It makes no sense. And it would vastly overcomplicate the Debtors' decisions in what is otherwise supposed to be a uniform bankruptcy system as explicitly recognized by the Constitution itself.

This calls for a return to regular order. Congress provided a place for everything here, and everything is in its place in the current statutory scheme—provided FERC stays within the scheme. When FERC adjudicates a matter within its exclusive statutory authority, section 825l(b) ensures that only a U.S. Court of Appeals may review that decision. And when a Bankruptcy Court adjudicates a matter within its exclusive, *plenary* statutory authority, only a federal court—not FERC—may review that decision. But if FERC is allowed to crib its lines from the Bankruptcy Code, the careful stage directions given by Congress would come undone, things would fall apart, and "chaos would reign." *Gruntz*, 202 F.3d at 1084. It follows that the Court must put a stop to this confusion. FERC's Orders here are entitled to no deference at all and the Court must not hesitate to confirm its exclusive jurisdiction over core proceedings.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## II.    THIS IS A JUSTICIABLE CASE OR CONTROVERSY

As established above, FERC's actions go so far beyond the established system that allows a debtor to avail itself of the protections of the Bankruptcy Code that those actions can only be understood as an injury. Because FERC has already issued what is effectively a direct attack in an effort to throw this Court's normal exercise of jurisdiction into disarray, the Debtors clearly have standing to protect their rights under the Bankruptcy Code. Standing is a doctrine "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Establishing a case or controversy does not require the Debtors to "bet the farm" by exercising their rights under 11 U.S.C. § 365, only to have those rights undermined by FERC. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 134 (2007) ("The rule that a plaintiff must destroy a large building, bet the farm, or . . . risk treble damages . . . before seeking a declaration of its actively contested legal rights finds no support in Article III."); *see Wellness Group, LLC v. King Bio, Inc.*, No. 1:12-cv-00281-MR-DLH, 2014 LEXIS 61073, at *10 (W.D.N.C. Apr. 30, 2014) (finding an "actual controversy" despite the plaintiff's continued performance under a contract because defendant's "stated intent to enforce its rights under [the contract] could reasonably be construed as an intent to bring litigation" and requiring plaintiff to "bet the farm" by breaching would wrongfully force the plaintiff to risk $100,000 in liquidated damages) (citing *MedImmune*, 549 U.S. at 134); *Sierra Vista Hosp. v. Barton & Assocs., Inc.*, No. 17-cv-367-JAP/GJF, 2017 LEXIS 109597, at *10 (D.N.M. July 13, 2017) ("Plaintiff is not obligated to wait for Defendant to sue, risk exposing itself to continuing potential liability, or negotiate a settlement agreement despite its belief that it is not liable.").

Indeed, as the Supreme Court explained in *MedImmune*, "where threatened action by *government* is concerned," the threat alone is sufficient to confer standing upon the Debtors. *MedImmune*, 549 U.S. at 128–29 (emphasis in original). To that end, FERC has not merely *threatened* the Debtors' rights under § 365; it actively contests those rights in an official FERC Order. FERC's threat to the Debtors' estates is real, ongoing, and substantial. Accordingly, the Debtors not only have standing to protect their rights under the Bankruptcy Code, but from a statutory perspective are the only entities capable of doing so. *See In re Advanced Ribbons & Office*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Prod., Inc.*, 125 B.R. 259, 263 (B.A.P. 9th Cir. 1991) ("Those persons whom Congress has designated as beneficiaries of the stay have standing to assert its violation.").

The question of ripeness is answered in the Debtors' favor as well. FERC's assertion to the contrary mirrors its argument that the Debtors have no standing because FERC claims it has not done anything yet. Rather than recognize FERC's *ultra vires* excursion into the Bankruptcy Code for the injury that it is, the Objectors argue that "[t]his action is not ripe" because the Debtors have not affirmatively committed to rejecting any of the PPAs, and the mere fact that FERC may ultimately interfere with a rejection motion does not satisfy Article III's case or controversy requirement. *See* FERC Opp. at 7–8; *see also* PPA Opp. at 2, 4 n.9.

But the Debtors' right to functioning and exclusive Bankruptcy Court jurisdiction for the protection of the estates and the effectuation of the rights provided by the Bankruptcy Code, including enforcement of the automatic stay, is already impaired and is at imminent risk of further impairment. The Debtors did not bring this action—as FERC suggests—because FERC *may one day* interfere with a rejection motion. Quite the contrary: the Debtors brought this action because FERC is *currently* interfering with the Debtors' right to reorganize under chapter 11. On January 25, 2019, FERC issued an order that explicitly purports to abrogate this Court's exclusive jurisdiction and implicitly purports to deprive the Debtors' of their ability to reject *any* PPA subject to the Court's approval. This injury is, in the words of the Supreme Court, "real, immediate, and direct." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). The functional impact of FERC's January 25, 2019 Order "need not be actualized." *Id.* FERC is interfering with the Debtors' prospects for reorganization right now. After all, FERC still contends that it "maintains discretion to exercise its authority," NextEra Order ¶ 31, in an area it is necessarily excluded from by the plain language of 28 U.S.C. § 1334(e). In the meantime, just as the specter of FERC Action currently colors the Debtors' ability to consider its PPAs, if FERC's "concurrent" jurisdiction were to apply, progress toward confirmation would slow to a crawl. Relevant stakeholders would be unable or unwilling to support various aspects of any proposed chapter 11 plan without knowing whether rejection decisions would be subject to further FERC veto rights. Most problematic of all, FERC's position that the Debtors cannot obtain injunctive relief until they decide which contracts will be rejected, and then contested at FERC, presents the imminent threat of inefficient, inconsistent, and

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

ultimately void litigations about whether FERC has the jurisdiction to oversee the Debtors' rejection motions. In short, the process that FERC envisions is wildly inconsistent with "[t]he fundamental purpose of reorganization," which is to consolidate proceedings and expeditiously resolve creditor claims "to prevent the debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources." *Bildisco & Bildisco*, 465 U.S. at 528.

This is an acute injury that should not be allowed to become chronic. The Debtors need to resolve this now. It is therefore clear that there is a justiciable controversy between the parties in which the Debtors seek to protect their rights under the Bankruptcy Code rather than countenance the chaos proposed by FERC.

## III. FERC IS SUBJECT TO THE AUTOMATIC STAY

FERC's "concurrent" jurisdiction argument—that it can "review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy"—is ultimately irrelevant under the Bankruptcy Code. It does not justify exemption from the stay any more than does the concurrent jurisdiction enjoyed by other non-bankruptcy tribunals over federal questions. *See, e.g.*, *Chao*, 270 F.3d at 384 ("Once a bankruptcy proceeding begins in one court, the concurrent jurisdiction of other courts is partially stripped . . . if the automatic stay applies to an action directed at the debtor or its property, jurisdiction is exclusive in the bankruptcy court."). As noted above, enforcement of the stay is not "an improper appellate review," *Gruntz*, 202 F.3d at 1083, because the automatic stay is "effective against the world." *In re Peralta*, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004). "[U]nless an exception to the automatic stay applies," FERC is stayed. *Commodity Futures Trading Com. v. Co. Petro Marketing Group, Inc.*, 700 F.2d 1279, 1283 (9th Cir. 1983). And the Debtors do not need an injunction to prevent the Intervenors (or any non-intervening PPA Counterparties) from initiating or continuing a proceeding *anywhere* outside of this Court. Congress has already done that by operation of law. *See* 11 U.S.C. § 362(a)(1). Any attempt to enforce the FERC Order outside of this Court "would violate *four* provisions of section 362 simultaneously— section 362(a)(1) (continuation of an action against the debtor), Section 362(a)(2) (enforcement of a pre-bankruptcy judgment), Section 362(a)(3) (action to obtain possession of property of the estate), *and* Section 362(a)(6) (any act to collect on a claim against the debtor)." *Delpit v. Commissioner*, 18 F.3d 768, 772 (9th Cir. 1994) (emphasis in original) (finding that the automatic stay applied to an

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

IRS attempt to appeal or enforce an agency decision). Even when acting in the quasi-judicial capacity it purports to possess over the rejection of executory contracts, FERC is subject to the stay like any other entity because it is adjudicating private rights. *See, e.g.*, *In re Poule*, 91 B.R. 83, 86–87 (B.A.P. 9th Cir. 1988) ("Where the agency's action affects only the parties immediately involved in the proceeding, it is exercising a judicial function and the debtor is entitled to the same protection from the automatic stay as if the proceeding were being conducted in a judicial forum.").

**A. Section 362(b)(4) Does Not Exempt FERC Action from the Automatic Stay**

FERC is not exempt from the automatic stay. Under section 362(b)(4), the phrase "police or regulatory power" refers to the enforcement of laws affecting health, welfare, morals and safety, "but not regulatory laws that directly conflict with the control of the res or property of the estate." *In re Universal Life Church*, 128 F.3d 1294, 1297 (9th Cir. 1997) (citing *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 591 (9th Cir. 1993)). The Ninth Circuit applies two complementary tests to determine whether government action falls under the so-called "government regulatory exception" to the automatic stay: the public policy test and the pecuniary purpose test. *See In re Dingley*, 852 F.3d 1143, 1146 (9th Cir. 2017). If government action "is intended either to protect the government's pecuniary interest in the debtor's property or to adjudicate private rights, the government regulatory exemption will not apply and the automatic stay will be imposed." *Id.* at 1147. Because FERC is not bringing suit, pursuing an action, or commencing or continuing a proceeding against the Debtors—but rather is adjudicating private rights between discrete and identifiable entities—the FERC Action at issue fails both tests and does not fall within the scope of section 362(b)(4)'s exception to the automatic stay.

*1. FERC Action Would Not Effectuate Public Policy*

The public policy test distinguishes between government actions that effectuate public policy and those that adjudicate private rights: only the former are exempted from the automatic stay. *See NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 833 (9th Cir. 1991). The FERC Action—which would primarily define the contractual rights between the Debtor and individual PPA Counterparties—fails this test. *See, e.g.*, *In re Wengert Transp., Inc.*, 59 B.R. 226, 230 (N.D. Iowa 1986) (noting that the public policy test "focuses on whether the agency is acting primarily pursuant to its quasi-legislative or quasi-executive powers in enforcing the public interest, or is acting in a

quasi-judicial capacity to settle disputes which principally concern the immediate parties. Actions undertaken in the latter capacity are not protected by section 362(b)(4).").

The Objectors' passing references to the policy considerations underlying the FPA do not dictate a different result. For example, FERC cites *In re Wyly*, 526 B.R. 194, 201 (Bankr. N.D. Tex. 2015), for the proposition that "[w]here a law is expressly intended to safeguard the integrity of the markets, the government's regulatory actions pursuant to that law are a legitimate exercise of its regulatory power, and are exempt under section 362(b)(4)." But *Wyly* makes clear that the proper inquiry is not whether the regulatory *scheme* advances the public interest, but whether "the *particular regulatory proceeding at issue* is designed primarily to protect the public safety and welfare." *Wyly*, 526 B.R. at 198. And the Ninth Circuit teaches that the analysis is even more tailored. *See City & Cty. of S.F. v. PG&E Corp.*, 433 F.3d 1115, 1124 (9th Cir. 2006) ("If we considered only the action as a whole, the government could circumvent the reach of the automatic stay by including in one action claims that were clearly subject to the automatic stay with exempt claims."). Here, two private litigants—NextEra and Exelon—sued the Utility, asking FERC to declare that it had "concurrent" jurisdiction to adjudicate their contractual rights. Now that NextEra and Exelon have obtained their requested relief, the exercise of FERC's asserted jurisdiction would affect only the parties to a specific PPA. Therefore, FERC Action would be "designed primarily" to advance a *private*—not *public*—interest.

That is also why this Court's *Lynch* decision from the prior PG&E bankruptcy does not decide the issue. *See Pac. Gas & Elec. Co. v. Lynch (In re Pac. Gas & Elec. Co.)*, 263 B.R. 306 (Bankr. N.D. Cal. 2001). There, the decision by CPUC affected all rates for all retail customers within PG&E's historic territory. *Id.* at 319. This Court appropriately reasoned that, even though it favored customers at PG&E's expense, the accounting decision at issue was not an adjudication, but more legislative in character. *Id.* In other words, it did not "decide [a] cause of action between individual consumers and PG&E." *Id.* Here, in contrast, FERC Action would primarily adjudicate private rights if FERC started overturning this Court's decisions authorizing the Debtors' assumption or rejection of executory PPAs. Such adjudications would initially benefit a PPA Counterparty to the Debtors' detriment, and secondarily impose higher costs on key constituents of the Debtors' estates—including ratepayers, creditors, and tort claimants. They would do so in two ways: first, by

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

allowing counterparties to jump to the front of section 507's priority scheme by recovering the equivalent of administrative expense claims, and second, by making the Debtors' customers—some of whom have lost their homes—bear that burden by paying more than necessary in their utility bills.

### 2. FERC Action Fails the Pecuniary Interest Test.

The Intervenors misstate the pecuniary purpose test. As this Court has observed, "[a]pplication of the tests outlined by *Universal Life* is not entirely clear." *Lynch*, 263 B.R. 318 n.17. The "solely" language that the Intervenors cite from *Universal Life*—which, in turn, directs the reader to *In re Thomassen*, 15 B.R. 907 (BAP 9th Cir. 1981)—"appears nowhere in *Thomassen* and appears to be a misreading of that case." *Lynch*, 263 B.R. at 318 n.17. *Thomassen* holds that governmental units—whether they be state, local, or federal—"cannot, by an exercise of their police or regulatory powers, subvert the relief afforded by the federal bankruptcy laws." 15 B.R. at 909. "When they seek to do so for a pecuniary purpose"—"either to the governmental unit, directly, or to its citizens"—"they are automatically stayed, notwithstanding the exception found at 11 U.S.C. § 362(b)(4)." *Id.* And FERC similarly misstates the Ninth Circuit's directive in *Universal Life*. As stated in the Debtors' Opening Brief, the full quotation is: "Under the pecuniary purpose test, the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtors' property *or to matters of public safety and welfare*." *Universal Life*, 128 F.3d at 1297; *see also* Opening Br. at 15. By omitting the italicized clause, FERC attempts to relieve itself of demonstrating that FERC Action would serve any police or regulatory purpose whatsoever. But section 362(b)(4) cannot, and does not, apply *unless* the governmental unit's action is in furtherance of its police or regulatory power.

The Bankruptcy Court in *FirstEnergy* correctly held that FERC's exercise of its "concurrent" jurisdiction was so contrary to the priority scheme Congress established in the Bankruptcy Code that such action did "not constitute the use of the agency's police or regulatory power." *FirstEnergy*, 2018 WL 2315916, at 19. In fact, the "primary impact" of "concurrent" jurisdiction "w[ould] be a pecuniary advantage to those counterparties relative to other similarly situated creditors." *Id.* at *10. Specifically, it would nullify the practical effects of rejection, allow PPA counterparties to stand on a different platform than all other holders of rejection claims against the debtors, and create a result

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

financially indistinguishable from mandatory assumption. *Id.* Thus, FERC's exercise of "concurrent" jurisdiction fell outside the exception enacted by section 362(b)(4). *Id.* at *9, 19.

The same is true here. The FERC Action relates primarily—perhaps exclusively—to the protection of private parties' pecuniary interest in the debtors' property. Unlike the section 362(b)(4) cases that the Objectors cite,[3] FERC's role vis-à-vis the Debtors is not as a plaintiff or investigator. Rather, it presides over disputes between individual litigants affecting private contract rights. Just like any other court, body, or entity whose function is to resolve such disputes, FERC ceded to this Court immediately upon the Petition Date any powers to protect the pecuniary interest of the Debtors' creditors. *See Poule*, 91 B.R. at 86–87; *In re Dan Hixson*, 12 B.R. 917, 921 (Bankr. N.D. Tex. 1981). This Court should not allow FERC to overturn this Court's decisions regarding executory PPA contracts under section 365 because doing so would provide special treatment to a subset of the Debtors' rejection creditors.

Finally, this Court should reject FERC's suggestion that the language it quotes from *Board of Governors of the Fed. v. MCorp Fin., Inc.*, 502 U.S. 32 (1991), is some sort of broad pronouncement on section 362(b)(4)'s purpose. *See* FERC Opp. at 20. In truth, the Supreme Court merely rejected the debtor's argument that section 362(b)(4) applies only if a Court first determines that application of that provision is appropriate. 502 U.S. at 40. The Debtors do not dispute that the police and regulatory power exception—like section 362(a)'s stay—is automatic. Rather, the Debtors' primary argument in this Adversary Proceeding—as to which *this Court* has the ultimate decision—is that FERC Action does not meet section 362(b)(4)'s narrow exception to the automatic stay.

**B.    Section 362(a) Stays FERC Proceedings**

FERC suggests that the Debtors' proposed injunction "is overly broad" insofar as it "purports to suspend 'any and all deadlines' in the FERC Proceedings." FERC Opp. at 28; *see also* PPA Opp. at 13. In FERC's telling, such an injunction would directly violate section 108(b) of the Bankruptcy Code, which tolls the "Debtors' statutory deadlines to the later of the actual deadline or to 60 days

---

[3]    *See Board of Governors of the Fed. v. MCorp Fin., Inc.*, 502 U.S. 32 (1991) (Board of Governors of the Federal Reserve System commenced administrative proceedings against debtor); *City & Cty. of S.F. v. PG&E Corp.*, 433 F.3d 1115 (9th Cir. 2006) (concerning lawsuits filed by the California Attorney General and the City and County of San Francisco); *In re Universal Life Church, Inc.*, 128 F.3d 1294 (9th Cir. 1997) (following an investigation, IRS revoked debtor's tax-exempt status); *In re Wyly*, 526 B.R. 194 (Bankr. N.D. Tex. 2015) (SEC amended complaint in action filed in district court to name debtor as a relief defendant).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

after the date of bankruptcy filing." FERC Opp. at 28. "Nothing in the Code," FERC asserts, grants this Court the power to bestow this form of relief. *Id*.

This is a red herring. Section 362(a) of the Bankruptcy Code explicitly and unambiguously stays "the commencement or continuation [of any] action or proceeding against the debtor that was or could have been commenced before the commencement of" these Chapter 11 Cases. 11 U.S.C. § 362(a). Because the PPA Counterparties initiated those actions against the Debtors prior to the "commencement" of these Chapter 11 Cases, "[s]ection 362 should be read to stay all appeals" arising from all FERC proceedings. *Ingersoll-Rand*, 817 F.2d at 1426; *see also In re Parker*, 68 F.3d 1131, 1135–36 (9th Cir. 1995) ("This Court, as well as seven other courts of appeals, has concluded that the automatic stay can operate to prevent an appeal by a debtor when the action or proceeding below was against the debtor."). Any appeal would constitute a continuation of a proceeding against the Debtors and, thus, would be automatically stayed under section 362(a). Now that the Debtors have filed their requests for rehearing, all proceedings at FERC are stayed.

## IV. THE OBJECTORS' ARGUMENTS AGAINST THE APPROPRIATENESS OF INJUNCTIVE RELIEF ARE BESIDE THE POINT

"It is well established that the bankruptcy court under section 105 may affirmatively enjoin acts against a debtor that are not prohibited by the automatic stay." *In re Sec. Gas & Oil, Inc.*, 70 B.R. 786, 792–93 (Bankr. N.D. Cal. 1987); *see Gruntz*, 202 F.3d at 1087 ("There is a procedural avenue to forfend [government] actions that are not subject to the automatic stay but that threaten the bankruptcy estate: a request for an injunction under 11 U.S.C. § 105."); *accord In re Pac. Gas & Elec. Co.*, 263 B.R. 306, 321 (Bankr. N.D. Cal. 2001) (Montali, J.). Even if the Court were to find that FERC fell within the scope of § 362(b)(4), the Court has the power to enjoin FERC under section 105 if its actions threaten the estates. *See, e.g.*, *In re Bel Air Chateau Hosp., Inc.*, 611 F.2d 1248, 1251 (9th Cir. 1979) ("Stays of regulatory proceedings should not be automatic but are appropriate when it is likely that the court proceedings will threaten the estate's assets."); *see also* Opening Br. at 17, n.30. Such injunctions are "appropriate where the threatened state activity would unduly interfere with the proper functioning of the Bankruptcy Code." *Sec. Gas & Oil, Inc.*, 70 B.R. at 792–93. They are also appropriate to restrain activities that impair the Court's jurisdiction with respect to the case before it. *See Birting Fisheries*, 300 B.R. at 497.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

In applying the usual preliminary injunction standard in the bankruptcy context, "a bankruptcy court must consider whether the debtor has a reasonable likelihood of a successful reorganization, the relative hardship of the parties, and any public interest concerns if relevant." *In re Excel*, 502 F.3d 1086, 1096 (9th Cir. 2007); *accord In re Billing Res.*, No. 07-52890-ASW, 2007 Bankr. LEXIS 3789, at *27 (Bankr. N.D. Cal. Nov. 2, 2007) (adopting *Excel* standard to enjoin the FTC).

**A.    Likelihood of a Successful Reorganization Is the Correct Standard**

The Objectors simply misstate the applicable standard here.  Contrary to what they claim, *Excel* does not apply "only where a debtor seeks to enjoin the prosecution of an action against a non-debtor."  PPA Opp. at 17.  Nothing about the Ninth Circuit's reasoning limits *Excel*'s holding to actions against non-debtors; rather, the case holds that the likelihood of successful reorganization is the right test when a debtor claims that the thing it seeks to enjoin would harm its ability to reorganize.  Thus, in *Excel*, a debtor seeking to enjoin arbitration proceedings between two non-debtor parties merely had to show that the proceedings would harm the debtor's ability to reorganize; "it ma[de] sense to require a showing of a reasonable likelihood of a successful reorganization." *Id.* at 1095–96 (collecting cases).  Indeed, as the Ninth Circuit made clear, adopting the alternative approach that the Objectors propose, "would collapse the traditionally distinct merits and hardship prongs into a single inquiry." *Id.* at 1096.  It follows that the "most relevant future proceeding" here is the Debtors' reorganization. *Id.* at 1095.  This is particularly the case here, because this dispute concerns the rejection of contracts, a central part of the Debtors' reorganization.

*1.    The Debtors Are Reasonably Likely to Reorganize Successfully*

The Intervenors overstate the Debtors' burden of showing a reasonable likelihood of successful reorganization.  Where the Debtors are "on track" and have "met the challenges they have faced so far, that is sufficient" to satisfy the reasonable-likelihood-of-successful-reorganization factor. *In re Lyondell Chem. Co.*, 402 B.R. 571, 590 (Bankr. S.D.N.Y. 2009) (granting injunction where there was "no reason to believe or suspect that [the debtors'] reorganization w[ould] fail—unless, of course, the acts sought to be enjoined *caused* it to fail") (emphasis in original); *see also In re Phila. Newspapers, LLC*, 407 B.R. 606, 617 (E.D. Pa. 2009) (same); *Steven P. Nelson, D.C., P.A. v. G.E. Capital Corp.*, 140 B.R. 814, 816–17 (Bankr. M.D. Fla. 1992) (same); *see also In re Union*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Tr. Phila., LLC*, 460 B.R. 644, 660 (E.D. Pa. 2011) (affirming injunction where debtor's prospects for a successful reorganization "remain[ed] viable" and debtor was "entitled to additional time to formulate its plan of reorganization" (citation omitted)). Indeed, given the early stage of the Chapter 11 Cases, "all uncertainties should be resolved in the [D]ebtors' favor." *Dore & Assocs. Contracting, Inc. v. Am. Druggist Ins. Co.*, 54 B.R. 353, 359 (Bankr. W.D. Wis. 1985); *see In re Otero Mills, Inc.*, 25 B.R. 1018, 1022 (D.N.M. 1982) ("Although reorganization by any bankruptcy may be speculative early in the proceedings, appellant is protected in that if a reorganization plan is not approved, it may apply to the bankruptcy court to lift the injunction.").

The Debtors have met their burden here. By securing a DIP facility, the Debtors will be able to maintain operations throughout the Chapter 11 Cases. Additionally, the Debtors have already sought and obtained interim relief to stabilize their businesses by, among other things, utilizing their existing cash management system, and paying certain prepetition wages, taxes, lien claimants, and other vendors that are necessary to preserve and maintain the Debtors' operations in a safe and reliable manner. Moreover, this Court has given final approval to the Debtors' cash management, customer programs, and operational integrity suppliers. In the very near future, the Debtors also expect to set a proposed bar date for creditors' proofs of claim. Additionally, the Debtors have begun discussions with the newly formed official committees, certain *ad hoc* groups, as well as Governor Newsom and his Strike Force. The input of each of these stakeholders is critical to resolving the Chapter 11 Cases—as is the continuing mediation with wildfire victims. The Debtors expect to file their Schedules of Assets and Liabilities, which will inform many of these discussions, on March 14.

       2.    *The Debtors Are Likely to Succeed on the Merits in this Adversary Proceeding*

Even if the more stringent "likelihood of success" standard for the granting of a preliminary injunction applies here, the Debtors clear that hurdle as well. As conclusively established above, FERC's claim to jurisdiction is wholly and entirely bereft of merit, and there can be no doubt that this Court has exclusive jurisdiction over the Debtors' assumption and rejection decisions.

**B.    Without an Injunction, the Debtors Will Suffer Irreparable Harm**

FERC cites *Henkel v. Lickman (In re Lickman)*, 286 B.R. 821, 829 (Bankr. M.D. Fla. 2002) for the proposition that a collateral attack manifests an irreparable harm. The Debtors agree with

*Lickman*. The Bankruptcy Court in *Lickman* recognized that a state court's collateral attack on bankruptcy jurisdiction "would, if unchecked, result in irreparable harm to the plaintiff and to the bankruptcy policy of the United States." *Id.* at 829. That, of course, is the situation here: FERC's interference with the clear mandate of Congress presents the "nightmare scenario" of the Debtors' "having to defend against suits by litigants disappointed by [the trustee's] actions," with the result that "the fundamental policies upon which the bankruptcy court's jurisdiction is founded" would be subverted. *Id.* at 829–830 (citation omitted); *see also In re Chiron Equities, LLC*, 552 B.R. 674, 699 (Bankr. S.D. Tex. 2016) (finding that an action in another tribunal violates "the long-standing judicial policy prohibiting collateral attacks" on bankruptcy jurisdiction, "thereby undercutting the orderly process of law, which results in irreparable harm") (citing cases). The very fact that FERC has issued invalid orders that directly attack this Court's exclusive jurisdiction is itself an irreparable harm. No damages can repair the injury of depriving the Debtors of an exclusive forum for core bankruptcy proceedings. And as demonstrated above, when an act of an administrative tribunal conflicts with the exclusive jurisdiction of the Bankruptcy Court, the Bankruptcy Court's jurisdiction is plenary.

In any event, neither the Debtors nor this Court need to be soothsayers to recognize the imminent threat here. As the Bankruptcy Court correctly recognized in *FirstEnergy*, "the more central inquiry is whether the action could be either harmlessly undone or compensated with monetary damages." *FirstEnergy*, 2018 WL 2315916, at *19. Because "movants for preliminary injunctions are not required to demonstrate impossible clairvoyance and prove that, but for the proposed injunction, the enjoined entity would take the enjoined action," the Debtors respectfully request that this Court perform the hypothetical exercise that the Bankruptcy Court in *FirstEnergy* constructed to answer this inquiry. *Id.* If FERC were not stayed or enjoined, and FERC took some action—*e.g.*, issued an order overturning this Court's decision to authorize the Debtors' rejection of an executory PPA—FERC would argue that appellate review of that order would lie exclusively in the Courts of Appeals. In FERC's view, this Court would lose "effective jurisdiction over a critical piece of the restructuring of the [D]ebtors and their estates notwithstanding 28 U.S.C. § 1334(e) and 11 U.S.C. § 365(a)." *Id.* If that were so, there would be "no practical way" for this Court to "repair the damage" of forcing the Debtors to litigate post-petition performance obligations in multiple

Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119

forums. *Id.* Doing so would defeat a central goal of the Bankruptcy Code, namely providing an efficient and centralized forum for the reorganization of debtor-creditor relations. *Id.*

FERC has shown that it is willing to "impinge on the bankruptcy court's jurisdiction over the estate and the reorganization process," FERC Opp. at 23–24, even while facing a motion for injunctive relief. *See NRG Energy*, 2003 WL 21507685, at *2–3 (while district court was considering motion to enjoin FERC, FERC ordered debtor to continue performance, despite prior Bankruptcy Court order authorizing rejection). More specifically, FERC has stated that its "approval is required" before the Debtors can reject executory PPAs. NextEra Order ¶ 29; Exelon Order ¶ 26. It has also stated that, despite the Debtors' bankruptcy—over which this Court has exclusive jurisdiction—"the Commission maintains discretion to exercise its authority." NextEra Order ¶ 31; Exelon Order ¶ 28. Tripling down, FERC boldly accuses this Court of stripping FERC of its jurisdiction—claiming that doing so "would extinguish Congress's express grant of jurisdiction and regulatory authority to FERC for the purpose of protecting the public interest in the wholesale energy market." FERC Opp. at 16 (citing no authority). FERC is poised to act if not stayed or enjoined, and because the Debtors are already deeply enmeshed in a chapter 11 bankruptcy, this requires an immediate resolution.

This Court can and should prevent FERC Action that threatens (i) the res of the estates, i.e., the executory PPAs, and (ii) the integrity of the Bankruptcy Code, *i.e.*, the Debtors' section 365 rights and Congress's carefully crafted priority scheme under section 507. *See* Opening Br. at 19–23. While the Intervenors dismissively characterize these harms as "abstract," PPA Opp. at 19, wildfire victims surely will not. Nor should this Court. It has a very real obligation to ensure that the Debtors treat all similarly situated creditors equally. *See* 11 U.S.C. § 507. But FERC Action would compromise that duty, as well as a fundamental tenet of the Bankruptcy Code. Rather than equal treatment for all unsecured creditors, a FERC-selected group of contractual counterparties would receive a windfall, to the detriment of all other unsecured creditors. No matter, chirps the Intervenor chorus in arguing that the Debtors will not be harmed: above-market rates "are 100% recovered by PG&E via pass through to PG&E customers." PPA Opp. at 20–22. But this is beside the point. The Objectors' arguments about pass-through rates are merely an attempt to distract this

Court from the true harm to the Debtors: the potential for jurisdictional loss over a critical piece of the Debtors' reorganization.

### C. An Injunction Would Not Harm FERC or the Intervenors

An injunction that declares and preserves this Court's exclusive jurisdiction over the Debtors' estates and issues concerning the rejection of PPAs will not harm FERC; FERC cannot claim it suffers an injury by the deprivation of its jurisdiction when it never had that jurisdiction to begin with. For the same reasons, an injunction will not harm the Intervenors, either. It will not affect the rates set by FERC; rather, it will merely allow rejection, and the attendant potential rejection damages, which would *vindicate* the PPAs, their filed rates, and, by extension, the FPA. *See FirstEnergy*, 2018 WL 2315916, at *19. The injunction will merely recognize that further FERC Action would be in the furtherance of private—not public—interest and serve no purpose but to instigate a lengthy proceeding that is necessarily void *ab initio*. *See FirstEnergy*, 2018 WL 2315916, at *19. Enjoining further FERC Action will permit the Debtors and their creditors to focus on the Chapter 11 Cases so as to vindicate any rejected PPAs and their filed rates through rejection damages claims pursuant to those contracts and rates. Indeed, "the prospect that the Debtors might reject executory contracts that the Bankruptcy Code allows them to reject cannot be a cognizable 'substantial harm.'" *Id.* Though the Objectors may claim that their disappointment in not getting a full recovery is an injury, such disappointment "will be fairly shared with all other unsecured creditors of the Debtors' estates." *Id.* And should the Objectors believe that the Debtors' exercise of their business judgment does not support rejection of a contract under § 365, the Objectors will have an opportunity to make their voices heard on that point.

### D. The Public Interest Favors an Injunction

FERC is correct that bankruptcy proceedings are not "havens for debtors to avoid regulatory compliance." FERC Opp. at 25. They do, however, further the public interest by providing an efficient and centralized forum for the reorganization of debtor-creditor relations. *See FirstEnergy*, 2018 WL 2315916, at *19. Allowing the Bankruptcy Court to address whether a debtor may reject a contract, subject to rejection damages, will benefit all creditors and the public alike. In contrast, the only beneficiary of allowing FERC to burden the estates with a contract the Debtors wish to, but cannot, reject, is the individual counterparty to that specific PPA. Issuing the requested injunction

Weil, Gotshal & Manges LLP<br/>767 Fifth Avenue<br/>New York, NY 10153-0119

will improve the Debtors' prospects for a successful reorganization—an outcome in which every stakeholder (including employees, local communities, customers, creditors, and equity holders), has a vested interest. And as established, FERC's total lack of jurisdiction over contract rejection necessarily means that FERC will not be prevented from "safeguarding the nation's electric markets" in any way that Congress intended. FERC Opp. at 26.

While the Objectors seem to suggest that the relief sought here could conceivably lead to reliability issues, all of their statements in this regard are purely hypothetical and are significantly undercut by FERC's own actions. Indeed, from 2006 until recently, FERC took the position that bankruptcy courts have exclusive jurisdiction over rejection motions, without ever voicing concern that doing so might have negative consequences for the reliability of the electric system. *See Cal. Elec. Oversight Bd. v. Calpine Energy Services, L.P.*, 114 F.E.R.C. ¶ 61,003 (2006). Nor did FERC's recent orders suggest the reliability of the electric system as a rationale for its change in course. *See generally* NextEra Order; Exelon Order. There is good reason for this omission: the authority FERC is asserting is its authority as an *economic* regulator to approve changes to rates. Of course, as a public utility the Utility must obtain enough electricity to meet its obligations. But those requirements, like the requirements about the environmental attributes of the electricity it procures, emanate from state law and not from Sections 205 and 206 of the Federal Power Act, upon which FERC relies for its claim of concurrent jurisdiction. *See* 16 U.S.C. §§ 824d & 824e.

## V. THE COURT SHOULD NOT OTHERWISE DECLINE TO EXERCISE ITS EXCLUSIVE JURISDICTION

### A. Sovereign Immunity Has Been Abrogated

FERC's claim to sovereign immunity is without merit. "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit" with regard to, *inter alia*, sections 105, 362, and 365 of the Bankruptcy Code. *See* 11 U.S.C. § 106(a). That covers the provisions of the Bankruptcy Code at issue in these proceedings. And because sovereign immunity has been abrogated, the question of whether FERC waived sovereign immunity by submitting to this Court's jurisdiction is irrelevant.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**B. The Court Cannot Abstain from Exercising Its Exclusive Jurisdiction**

The notion that this Court must abstain from the exercise of its exclusive jurisdiction over a core proceeding flies in the face of the Bankruptcy Code. The Debtors' complaint is devoid of non-bankruptcy claims and seeks only enforcement of the Code, and the Objectors' argument that the complaint somehow involves the FPA is yet another instance of the question-begging that has permeated the Objectors' strategy since the inception of this litigation. Abstaining from a jurisdictional dispute involving a core bankruptcy proceeding is entirely inappropriate. *See, e.g.*, *In re Diversified Contract Servs., Inc.*, 167 B.R. 591, 598 (Bankr. N.D. Cal. 1994) (refusing to abstain under § 1334(c)(1) when the "bankruptcy law issues" were important to "the integrity of the bankruptcy system").

**C. Judicial Estoppel Cannot Prevent This Court from Deciding Its Jurisdiction**

FERC devotes significant space to an argument allegedly grounded in judicial estoppel. *See* FERC Opp. at 13–15; *see also* PPA Opp. at 4 n.7 ("For the avoidance of doubt, all arguments asserted in the FERC Opposition are fully incorporated herein."). In FERC's telling, the Debtors are judicially estopped from contesting FERC's infringement on this Court's exclusive jurisdiction because the Debtors allegedly advanced contrary legal arguments in a proceeding between the Debtors and Calpine almost thirteen years ago, in *In re Calpine Corp.*, 337 B.R. 27 (S.D.N.Y. 2006).

Judicial estoppel does not apply here, and even if it did, the doctrine would not bar this adversary proceeding. *First*, this Court cannot be estopped from determining and enforcing the scope of its own jurisdiction. Judicial estoppel "cannot create federal jurisdiction that otherwise does not exist," nor can it apply to the "inverse situation, when a party that had earlier claimed no need for federal jurisdiction is now asserting a basis for such jurisdiction." *E-Pass Techs. v. Moses & Singer, LLP*, No. C-09-5967 EMC, 2011 WL 5357912, at *7 (N.D. Cal. Nov. 4, 2011). In *E-Pass*, the plaintiff "first asserted that federal jurisdiction was not proper as its claims raised no substantial issue of patent law, convinced a court to adopt that reasoning, and later reversed itself to assert new, contradictory grounds for federal patent jurisdictions." *Id.* In deciding not to apply judicial estoppel, the Court "cast doubt" on employing the doctrine, "especially where exclusive federal jurisdiction is at issue," because the "duty to exercise jurisdiction applies with particular force where, as here, federal jurisdiction is exclusive." *Id.* at *7–8. Other federal courts have been even

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

more explicit. *See Palafox St. Assocs., L.P. v. United States*, 114 Fed. Cl. 773, 785 (2014) ("As defendant correctly observes, however, 'principles of estoppel do not apply to jurisdiction.'") (citation omitted); *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005) (addressing a judicial estoppel argument was unnecessary where "Indiana state law clearly vest[ed] exclusive jurisdiction in the [Indiana Worker's Compensation] Board"); *Whiting v. Krassner*, 391 F.3d 540, 544 (3d Cir. 2004) (("[T]here is an exception to the general concept of judicial estoppel when it comes to jurisdictional facts or positions, such that it has been said that judicial estoppel . . . cannot conclusively establish jurisdictional facts." (alteration in original) (internal quotation marks omitted)). Thus, FERC cannot use judicial estoppel to either expand its own jurisdiction or to strip it away from the Bankruptcy Court, particularly when, as is the case here, the Bankruptcy Court's exclusive jurisdiction is at stake.

Even if the Court did not have an independent obligation to decide and protect its own jurisdiction, the Debtors' position in *Calpine* by no means merits judicial estoppel here. FERC posits that the Debtors will gain an "unfair" and "competitive" advantage "by freeing themselves of the requirements of the FPA if permitted to proceed." FERC Opp. at 14. But this argument presupposes its own conclusion—that rejection under § 365 amounts to undermining the requirements of the FPA. Any "unfair" or "competitive" advantage the Debtors might receive is only derived from a universe where FERC is right about its "concurrent" jurisdiction. In other words, FERC would have the Debtors judicially estopped from arguing the merits because FERC is supposedly right about the merits, a tail-eating snake of a proposition that makes no sense.

In any event, FERC and the Intervenors can hardly complain that this proceeding "impose[s] an unfair detriment" on them now. *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). FERC itself has seesawed on the question of its jurisdiction over the rejection of contracts under § 365, with the result that the Debtors must now contest it in these proceedings. *Compare Calpine Energy*, 114 F.E.R.C. at ¶ 61,006 ("[T]he Commission is precluded from taking action under the FPA that impacts a debtor's ability to reject an executory contract."), *with* NextEra Order at ¶ 29 ("[R]ejection of a Commission-jurisdictional contract in a bankruptcy court alters the essential terms of the contract and the filed rate; thus, this Commission's jurisdiction is implicated, and our approval is required."). This reversal remains completely unexplained.

Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119

# CONCLUSION

For the foregoing reasons, this Court should grant the Debtors' Motion.

Dated: March 13, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:   *Peter J. Benvenutti*
     Peter J. Benvenutti

*Proposed Attorneys for Debtors
and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119