Dennis F. Dunne (*pro hac vice*)
Samuel A. Khalil (*pro hac vice*)
MILBANK LLP (*effective* February 19, 2019)
55 Hudson Yards (*effective* February 19, 2019)
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Paul S. Aronzon (SBN 88781)
Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP (*effective* February 19, 2019)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Proposed Counsel for the Official Committee of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION; PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Adversary Proceeding No. 19-03003 (DM)<br><br>Chapter 11 Case No. 19-30088 (DM)<br><br>(Jointly Administered) |
| PG&E CORPORATION; PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDERAL ENERGY REGULATORY COMMISSION,<br><br>Defendant. | **OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: April 10, 2019<br>Time: 9:30 a.m. (PT)<br>Place: 450 Golden Gate Ave.<br>16th Floor, Crtrm. 17<br>San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

# PRELIMINARY STATEMENT

Bankruptcy courts play a vital role in offering companies the opportunity for a fresh start, achieved through a carefully-crafted statutory scheme that balances the allocation of certain powers to a debtor-in-possession with strong safeguards for creditors. One of the key decisions Congress made in striking this balance was to vest chapter 11 debtors with the power, subject only to bankruptcy court approval, to reject onerous contracts when the cost of continuing to honor those contracts outweighs the benefits to the estate of doing so. This powerful tool is codified in the contract rejection provisions of Bankruptcy Code section 365(a). The Debtors' requested preliminary injunction is necessary to prevent Defendant Federal Energy Regulatory Commission ("FERC") from infringing upon this fundamental right, and to protect the Bankruptcy Court's exclusive jurisdiction to authorize the Debtors' exercise of that right. Although FERC seeks to blur the lines between rejection of a contract and modification of the terms of a contract, this case is not about modification, abrogation, or even rejection, but jurisdiction. All that is at issue here is whether this Court has exclusive jurisdiction under the Bankruptcy Code to determine whether a debtor may reject an executory contract.

FERC and certain power purchase agreement counterparties (the "PPA Counterparties" and, together with FERC, the "Defendants") seek to encroach upon this Court's jurisdiction by requiring that Plaintiffs PG&E Corporation and the Pacific Gas and Electric Company (collectively, the "Debtors") obtain approval of any proposed rejection not only by the Bankruptcy Court but by FERC as well—thereby granting FERC a full veto power over any decision by this Court to authorize a rejection of a contract as being in the best interests of the Debtors' estates. A result that gives FERC concurrent jurisdiction would render section 365(a) a practical nullity in the context of power purchase agreements, thereby effectively nullifying this key provision of the Code with respect to many material power purchase agreements. It would also disrupt the carefully-calibrated creditor priority scheme, empowering FERC to compel debtors to continue performance under contracts to the possible detriment of many, including tort creditors and other unsecured creditors. This not only runs directly contrary to Congress's demonstrated intent to allow debtors to shed onerous contracts, but also severely hampers the

Debtors', the Committee's, and all parties' ability to negotiate towards, and ultimately confirm, a plan of reorganization that properly restructures not only the Debtors' creditor obligations but its key contractual relationships as well.

It is imperative that parties in interest are able to negotiate with the certainty that the Court will be able to effect any result achieved. For a collaborative restructuring process to succeed, the parties must have a clear, shared understanding of the powers of this Court and the prerogatives of the Debtors. This certainty only comes with the knowledge that this Court has exclusive jurisdiction over whether actions necessary to the reorganization, including the ability to reject under section 365, may occur.

Further, Defendants contend in their oppositions that no case or controversy exists here, and that this issue is therefore not ripe for judgment. Not so. It is apparent from the parties' briefing to date that a real, and stark, controversy exists concerning whether FERC or this Court may render decisions integral to the Debtors' reorganization efforts. Specifically, the outcome of this controversy will have a meaningful and immediate effect on the Debtors' decisions regarding the subject power purchase agreements.

Moreover, the argument that there is no ripe case or controversy rings hollow given certain of the Defendants' efforts to rush to FERC for relief just prior to the Debtors' bankruptcy filings. The frantic prepetition race for a favorable FERC order lies in stark contrast to the postpetition contention that no controversy exists that is ripe for resolution.

For the reasons described in the Debtors' reply, in which the Committee joins, and for the reasons stated herein, the Committee respectfully requests that the Court grant the Debtors' motion for a preliminary injunction (the "Motion").

## ARGUMENT

### I. The Bankruptcy Court's Exclusive Jurisdiction Over Contract Rejection Preserves the Integrity of the Bankruptcy Code and Fosters Productive Plan Negotiations

When Congress enacted the Bankruptcy Code in 1978, it codified a variety of policies aimed at serving the public interest, paramount of which was the goal of providing debtors with a fresh start. The Bankruptcy Code enables debtors to "reorder their affairs, make peace with their

2

creditors, and enjoy a new opportunity . . . with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (internal citations omitted).

Key to the success of these aims was ensuring uniformity and predictability in the restructuring of debtor-creditor relations. Congress accomplished this by consolidating reorganization efforts into a single proceeding and allowing debtors, subject to oversight by the Court and the participation of parties in interest, to remain in control of their property and key business decisions as they restructure. As one bankruptcy judge has stated: "As evidenced by the history of federal bankruptcy laws, a strong and predictable business bankruptcy scheme is critical to economic growth, market stability, and job creation and preservation." Michelle M. Harner, *Rethinking Preemption and Constitutional Parameters in Bankruptcy*, 59 WM. & MARY L. REV. 147, 179–80 (2017).

A powerful, and fundamental, tool within this scheme is a bankruptcy court's ability to approve a debtor's rejection of noneconomic executory contracts, where proven warranted, under section 365(a). *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."). Subjecting the Debtors to the dual-jurisdictional regime for which Defendants advocate would effectively remove that fundamental tool from the Debtors' toolbox with respect to many of their material power purchase agreements. *See In re Am. Suzuki Motor Corp.*, 494 B.R. 466, 476-77 (Bankr. C.D. Cal. 2013) ("The [objective] of contract rejection under section 365 is to permit the debtor to receive the economic benefits necessary for reorganization . . . for the ultimate benefit of the estate and its creditors.").

Such a result would also frustrate a primary goal of the Bankruptcy Code: fostering predictability and certainty in the negotiation of a plan of reorganization. For the parties to these cases to reach agreement on a plan of reorganization, each party must have a clear and shared understanding of the rights and priorities enjoyed by each. The Debtors' inability to have PPA rejections finally determined before this Court has consequences that reach farther than to the

PPA Counterparties alone. With the ability to reject the PPAs in doubt, the parties here—including the Committee—will struggle to assess the magnitude of the Debtors' ongoing obligations under their PPAs, the size of the unsecured claims pool or the quantum of expected administrative priority claims, each of which is a key input to any reorganization modeling.

Certainty of the parties' respective rights, and the resulting uniformity in the parties' expectations, is therefore critical. Defendants' attempts to muddy the waters must not undermine the black-letter law that this Court is the lone forum for actions that "could alter the debtor's rights, liabilities, options, or freedom of action . . . ." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). This Court's exclusive jurisdiction over a procedure as integral to chapter 11 as review of contract rejections under section 365(a) "best represents Congress's intent to reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding," and in providing an "efficient and expeditious resolution of all matters connected to the bankruptcy estate." *Id.*; *see* H. Rep. No. 595, 95th Cong., 2d Sess., 43–48.

## II. An Active Controversy Exists, Ripe for Adjudication

Defendants contend that the Debtors' complaint should be dismissed for lack of standing because no active controversy exists. But Defendants' own actions demonstrate otherwise.

Anticipating that the Debtors would file for bankruptcy protection within days, NextEra Energy, Inc. and NextEra Energy Partners (collectively, "NextEra") and Exelon Corporation ("Exelon"), each a Defendant here, filed petitions for a declaratory order from FERC on January 18, and January 22, 2019. *Inter alia*, the petitions requested declarations, which FERC granted and ordered, that FERC has "concurrent jurisdiction" with this Court "to review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy."[1] Although the NextEra- and Exelon-initiated proceedings before FERC that gave rise to the current jurisdictional dispute were conducted under pretenses of utmost urgency, the Defendants now argue that it is somehow premature for the Bankruptcy Court to determine that very jurisdictional dispute. FERC and certain PPA Counterparties found the controversy ripe to address

---

[1] *See NextEra Energy, Inc. and NextEra Energy Partners, L.P. v. Pacific Gas and Electric Company,* 166 F.E.R.C. ¶ 61,049 (2019) (the "NextEra Order") at 14; *Exelon Corporation v. Pacific Gas and Electric Company*, 166 F.E.R.C. ¶ 61,053 (2019) (the "Exelon Order" and, together with the NextEra Order, the "FERC Orders") at 12.

4

immediately prepetition—and on an urgent basis—but now argue that this Adversary Proceeding is insufficiently ripe for this Court to adjudicate. The Court should reject the PPA Counterparties' selective interpretation of the ripeness doctrine.

Furthermore, solely to preserve their appellate rights in the event that the automatic stay does not apply, the Debtors filed a "request for rehearing" at FERC, but reserved their contention that only this Court has jurisdiction to consider a request by the Debtors to reject any of their PPAs. If this Court does not have exclusive jurisdiction, the Debtors will be forced to continue proceedings before FERC in addition to before this Court, and will expend significant additional resources in doing so. Limiting litigation regarding whether this Court has the exclusive power to authorize rejection under section 365 to this Court, its rightful forum, would preserve significant value for the estate and its unsecured creditors.

## CONCLUSION

For the foregoing reasons, the Court should grant the Debtors' Motion.

DATED: March 13, 2019

/s/ Dennis F. Dunne
DENNIS F. DUNNE
SAMUEL A. KHALIL
PAUL S. ARONZON
GREGORY A. BRAY
THOMAS R. KRELLER

*Proposed Counsel for the Official Committee of Unsecured Creditors*