Kenneth N. Klee (State Bar No. 63372)
David M. Stern (State Bar No. 67697)
Samuel M. Kidder (State Bar No. 284015)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone:      310-407-4000
Facsimile:      310-407-9090
Email:          kklee@ktbslaw.com
                dstern@ktbslaw.com
                skidder@ktbslaw.com

*Attorneys for NextEra Energy, Inc.
and NextEra Energy Partners, L.P.*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>   - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>            Debtors. | Adversary Proceeding No. 19-03003-DM<br><br>Chapter 11 Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered) |
| PG&E CORPORATION; PACIFIC GAS AND ELECTRIC COMPANY,<br><br>            Plaintiffs,<br><br>   vs.<br><br>FEDERAL ENERGY REGULATORY COMMISSION,<br><br>            Defendant. | **JOINT NOTICE OF APPEAL AND STATEMENT OF ELECTION TO HAVE APPEAL HEARD BY DISTRICT COURT** |

NOTICE IS HEREBY GIVEN that intervenor-defendants NextEra Energy, Inc. ("NEI")

and NextEra Energy Partners, L.P. ("NEP" and, together with NEI, "NextEra") hereby jointly

appeal, pursuant to 28 U.S.C. § 158(a)(1), from the *Amended Declaratory Judgment* [Adv. Proc.

Docket No. 155] (the "Judgment"), entered on June 12, 2019, and the related *Memorandum*

*Decision on Action for Declaratory and Injunctive Relief* [Adv. Proc. Docket No. 153] (the

Case: 19-03003    Doc# 160    Filed: 06/13/19    Entered: 06/13/19 15:52:45    Page 1 of 43

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  "Memorandum"), entered on June 7, 2019 and which the Bankruptcy Court referenced in the

2  Judgment.  Copies of the Judgment and Memorandum are attached hereto as **Exhibit A** and

3  **Exhibit B**, respectively.

4      Pursuant to Rule 8003(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

5  Rules"), NEI and NEP are jointly filing this Notice of Appeal, as both parties "are entitled to

6  appeal from" the Judgment and Memorandum, and "their interests make joinder practicable."

7  FED. R. BANKR. P. 8003(b).  NEI and NEP intend to "proceed on appeal as a single appellant."  *Id.*

8      Pursuant to 28 U.S.C. § 158(c)(1), NextEra hereby elects to have the appeal heard by the

9  United States District Court for the Northern District of California (the "District Court") rather

10  than by the Bankruptcy Appellate Panel for the Ninth Circuit.[1]

11      Pursuant to Bankruptcy Rule 8003(a)(3) and in accordance with Official Form 417A, the

12  names of all parties (other than NextEra) to the Judgment and Memorandum and the names,

13  addresses, and telephone numbers of their attorneys are:

14

| Party Name | Role | Attorney Contact Information |
|---|---|---|
| 1.   PG&E Corporation | Plaintiff | Peter J. Benvenutti<br>Jane Kim<br>Thomas B. Rupp<br>KELLER & BENVENUTTI LLP<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Telephone: (415) 496-672<br>-and- |

---

[1]  On June 12 and 13, 2019, the Bankruptcy Court entered its *Memorandum Regarding Certification for Direct Appeal to Court of Appeals* [Adv. Proc. Docket No. 156] and *Certification for Direct Appeal to Court of Appeals* [Adv. Proc. Docket No. 158], pursuant to which the Bankruptcy Court certified the Judgment for direct appeal to the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit").  Within the time limit set forth in Bankruptcy Rule 8006(g), NextEra intends to file in the Ninth Circuit a request for permission to appeal the Judgment and Memorandum directly to the Ninth Circuit.  However, in the event that permission to appeal is denied by the Ninth Circuit, NextEra elects to have the appeal heard by the District Court, which—unless and until the Ninth Circuit grants the request for a direct appeal—has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

| | | | | |
|---|---|---|---|---|
| 1 | | | | Stephen Karotkin |
| 2 | | | | Jessica Liou |
| | | | | Theodore Tsekerides |
| 3 | | | | Matthew Goren |
| | | | | WEIL, GOTSHAL & MANGES LLP |
| 4 | | | | 767 Fifth Avenue |
| | | | | New York, NY 10153-0119 |
| 5 | | | | Telephone: (212) 310-8000 |
| 6 | 2. | Pacific Gas and Electric Company | Plaintiff | Peter J. Benvenutti |
| | | | | Jane Kim |
| 7 | | | | Thomas B. Rupp |
| 8 | | | | *[See above for contact information]* |
| 9 | | | | Stephen Karotkin |
| | | | | Jessica Liou |
| 10 | | | | Theodore Tsekerides |
| | | | | Matthew Goren |
| 11 | | | | *[See above for contact information]* |
| 12 | 3. | Federal Energy Regulatory Commission | Defendant | Shane Huang |
| 13 | | | | Danielle A. Pham |
| | | | | Trial Attorneys |
| 14 | | | | U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION |
| 15 | | | | P.O. Box 875, Ben Franklin Station |
| | | | | Washington, D.C. 20044-0875 |
| 16 | | | | Telephone: (202) 514-7451 |
| 17 | 4. | Calpine Corporation | Intervenor-Defendant | Mark McKane, P.C. |
| 18 | | | | Michael P. Esser |
| | | | | KIRKLAND & ELLIS LLP |
| 19 | | | | 555 California Street |
| 20 | | | | San Francisco, CA 94104 |
| | | | | Telephone: (415) 439-1400 |
| 21 | | | | -and- |
| 22 | | | | David R. Seligman, P.C. |
| | | | | KIRKLAND & ELLIS LLP |
| 23 | | | | 300 North LaSalle Street |
| | | | | Chicago, IL 60654 |
| 24 | | | | Telephone: (312) 862-2000 |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

| | | | |
|---|---|---|---|
| 5. | Consolidated Edison Development, Inc. | Intervenor-Defendant | Gabriel Ozel<br>TROUTMAN SANDERS LLP<br>11682 El Camino Real, Suite 400<br>San Diego, CA 92130-2092<br>Telephone: (858) 509-6000<br><br>-and-<br><br>Hugh M. McDonald<br>Jonathan D. Forstot<br>TROUTMAN SANDERS LLP<br>875 Third Avenue<br>New York, NY 10022<br>Telephone: (212) 704-6000 |
| 6. | Diablo Winds, LLC | Intervenor-Defendant | Risa Lynn Wolf-Smith<br>HOLLAND & HART LLP<br>555 17th Street, Suite 3200<br>Denver, CO 80202<br>Telephone: (303) 295-8011 |
| 7. | Exelon Corporation | Intervenor-Defendant | Richard W. Esterkin<br>MORGAN, LEWIS & BOCKIUS LLP<br>300 South Grand Avenue, Floor 22<br>Los Angeles, CA 90071-3132<br>Telephone: (213) 612-2500<br><br>-and-<br><br>Edwin E. Smith<br>MORGAN, LEWIS & BOCKIUS LLP<br>One Federal Street<br>Boston, MA 02110-1726<br>Telephone: (617) 951-8615 |
| 8. | AV Solar Ranch 1, LLC | Intervenor-Defendant | Richard W. Esterkin<br>*[See above for contact information]*<br><br>Edwin E. Smith<br>*[See above for contact information]* |
| 9. | Topaz Solar Farms LLC | Intervenor-Defendant | Jeffrey C. Krause<br>Michael A. Rosenthal<br>Alan Moskowitz<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: (213) 229-7000 |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

| | | | |
|---|---|---|---|
| 10. | Southern Power Company, on Behalf of Itself and Certain of Its Affiliates | Intervenor-Defendant | Gabriel Ozel *[See above for contact information]* |
| | | | Harris B. Winsberg<br>Matthew G. Roberts<br>TROUTMAN SANDERS LLP<br>Bank of America Plaza<br>600 Peachtree Street NE, Suite 3000<br>Atlanta, GA 30308-2216<br>Telephone: (404) 885-3000 |
| 11. | EDF Renewables, Inc. | Intervenor-Defendant | Thomas C. Mitchell<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105<br>Telephone: (415) 773-5732 |
| | | | -and- |
| | | | Debra L. Felder<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>1152 15th Street, NW<br>Washington, DC 20005<br>Telephone: (202) 339-8567 |
| 12. | Clearway Energy, Inc. | Intervenor-Defendant | Ian E. Roberts<br>Kevin Chiu<br>BAKER BOTTS L.L.P.<br>2001 Ross Avenue, Suite 1000<br>Dallas, TX 75201<br>Telephone: (214) 953-6500 |
| | | | - and - |
| | | | Navi S. Dhillon<br>BAKER BOTTS L.L.P.<br>101 California Street, Suite 3600<br>San Francisco, CA 94111<br>Telephone: (415) 291-6300 |
| 13. | Clearway Energy Group LLC | Intervenor-Defendant | Ian E. Roberts<br>Kevin Chiu<br>*[See above for contact information]* |
| | | | Navi S. Dhillon<br>*[See above for contact information]* |

| | | | |
|---|---|---|---|
| 14. | MC Shiloh IV Holdings, LLC | Intervenor-Defendant | Ian E. Roberts<br>Kevin Chiu<br>*[See above for contact information]*<br><br>Navi S. Dhillon<br>*[See above for contact information]* |
| 15. | NRG Energy, Inc. | Intervenor-Defendant | Ian E. Roberts<br>Kevin Chiu<br>*[See above for contact information]*<br><br>Navi S. Dhillon<br>*[See above for contact information]* |
| 16. | TerraForm Power, Inc. | Intervenor-Defendant | Ian E. Roberts<br>Kevin Chiu<br>*[See above for contact information]*<br><br>Navi S. Dhillon<br>*[See above for contact information]* |
| 17. | Crockett Cogeneration | Intervenor-Defendant | Christopher Harris<br>Andrew M. Parlen<br>LATHAM & WATKINS LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Telephone: (212) 906-1200<br>-and-<br>Amy C. Quartarolo<br>LATHAM & WATKINS LLP<br>355 S. Grand Avenue, Suite 100<br>Los Angeles, CA 90071-1560<br>Telephone: (213) 485-1234 |
| 18. | Middle River Power, LLC | Intervenor-Defendant | Christopher Harris<br>Andrew M. Parlen<br>*[See above for contact information]*<br><br>Amy C. Quartarolo<br>*[See above for contact information]* |
| 19. | MRP San Joaquin Energy, LLC | Intervenor-Defendant | Christopher Harris<br>Andrew M. Parlen<br>*[See above for contact information]*<br><br>Amy C. Quartarolo<br>*[See above for contact information]* |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

| | | | |
|---|---|---|---|
| 20. | Vantage Wind Energy LLC | Intervenor-Defendant | Thomas F. Koegel<br>Rebecca M. Suarez<br>CROWELL & MORING LLP<br>3 Embarcadero Center, 26th Floor<br>San Francisco, California 94111<br>Telephone: (415) 986-2800 |
| 21. | KES Kingsburg, L.P. | Intervenor-Defendant | Thomas F. Koegel<br>Rebecca M. Suarez<br>*[See above for contact information]* |
| 22. | First Solar, Inc. | Intervenor-Defendant | Amy S. Park<br>SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM LLP<br>525 University Avenue<br>Palo Alto, CA 94301<br>Telephone: (650) 470-4500<br>-and-<br>J. Eric Ivester<br>SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM LLP<br>Four Times Square<br>New York, NY 10036-6522<br>Telephone: (212) 735-3000 |
| 23. | Willow Springs Solar 3, LLC | Intervenor-Defendant | Amy S. Park<br>*[See above for contact information]*<br><br>J. Eric Ivester<br>*[See above for contact information]* |
| 24. | Mojave Solar LLC | Intervenor-Defendant | Amy S. Park<br>*[See above for contact information]*<br><br>J. Eric Ivester<br>*[See above for contact information]* |
| 25. | Enel Green Power North America, Inc. | Intervenor-Defendant | David B. Levant<br>Seth D. Hilton<br>STOEL RIVES LLP<br>Three Embarcadero Center, Suite 1120<br>San Francisco, CA 94111<br>Telephone: (415) 617-8943 |

| 26. | FTP Power LLC | Intervenor-<br>Defendant | David B. Levant<br>Seth D. Hilton<br>*[See above for contact information]* |
|---|---|---|---|
| 27. | Capital Dynamics, Inc. | Intervenor-<br>Defendant | David B. Levant<br>Seth D. Hilton<br>*[See above for contact information]* |

DATED: June 13, 2019      */s/ David M. Stern*

Kenneth N. Klee
David M. Stern
Samuel M. Kidder
KLEE, TUCHIN, BOGDANOFF & STERN LLP

*Attorneys for NextEra Energy, Inc. and NextEra Energy Partners, L.P.*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

# EXHIBIT A



Signed and Filed: June 12, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 19-30088-DM (Lead Case) |
| PG&E CORPORATION; PACIFIC GAS | ) |
| AND ELECTRIC COMPANY, | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| _____ | ) |
| PG&E CORPORATION; PACIFIC GAS | ) Adv. Proc. No. 19-03003 |
| AND ELECTRIC COMPANY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERAL ENERGY REGULATORY | ) |
| COMMISSION, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

AMENDED DECLARATORY JUDGMENT

    For the reasons set forth in the Memorandum Decision on Action For Declaratory and Injunctive Relief filed and entered on June 7, 2019,

    IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

    1.  This court confirms its original and exclusive jurisdiction over Debtors' cases under 11 U.S.C. § 1334(a) and Debtors' rights to assume or reject executory contracts under 11 U.S.C. § 365, as core proceedings under 28 U.S.C. 157(b)(2).

-1-

1    2.   Included in the foregoing paragraph are power purchase
2  contracts between and among either or both Debtors and
3  counterparties to any such contracts.[1]

4    3.   The Federal Energy Regulatory Commission does not have
5  concurrent jurisdiction, or any jurisdiction, over the
6  determination of whether any rejections of power purchase contracts
7  by either Debtor should be authorized.

8    4.   Debtors do not need approval from the Federal Energy
9  Regulatory Commission to reject any of their power purchase
10  contracts.

11    5.   Any determinations of the Federal Energy Regulatory
12  Commission contrary to the provisions of Paragraph 3 and 4 above
13  are void, of no force and effect and not binding on this court or
14  either Debtor.  Such determinations include, but are not limited
15  to, *NextEra Energy, Inc. v. Pac. Gas and Elec. Co.,* 167 FERC ¶
16  61,096 (2019) at para. 13, *NextEra Energy, Inc. v. Pac. Gas and
17  Elec. Co.*, 166 FERC ¶ 61,049 (2019); *Exelon Corp. v. Pac. Gas and
18  Elec. Co.*, 166 FERC ¶ 61,053.

19    6.   This Amended Declaratory Judgment is the court's Final
20  Judgment concluding this adversary proceeding.

21             ***END OF AMENDED DECLARATORY JUDGMENT***

22

23

24

25

26

27
     ───────────────────────
       [1] Many of these counterparties have intervened as defendants
28  in this adversary proceeding and have stipulated to entry of a
     final judgment by this court.  *See* Stipulation re Procedure for
     Disposition of Adversary Proceeding at Docket. No. 149, ¶¶ 2-3.

Case: 19-03003   Doc# 160   Filed: 06/12/19   Entered: 06/12/19 15:56:45   Page 11 of
43

# EXHIBIT B



Signed and Filed: June 7, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 19-30088-DM (Lead Case) |
| PG&E CORPORATION; PACIFIC GAS | ) |
| AND ELECTRIC COMPANY, | ) Chapter 11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| _____ | ) |
| PG&E CORPORATION; PACIFIC GAS | ) Adv. Proc. No. 19-03003 |
| AND ELECTRIC COMPANY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERAL ENERGY REGULATORY | ) |
| COMMISSION, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MEMORANDUM DECISION ON ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.    INTRODUCTION**

In its May 1, 2019, Order Denying Rehearing ("the FERC

Denial", the Federal Energy Regulatory Commission ("FERC") made two

remarkable statements.  First, it said:

> "Wholesale power contracts are not simple run-of-the-mill
> contracts between two private parties, rather, these
> contracts, while privately negotiated, implicate the
> public's interest in the orderly production of plentiful
> supplies of electricity at just and reasonable rates
> ...."

1  *NextEra Energy, Inc. V. Pac. Gas and Elec. Co.,* 167 FERC ¶ 61,096

2  (2019) at Para 13.

3      Second, it stated:

4      "To be clear, the [FERC] neither presumes to sit in
        judgment of rejection motions nor seeks to arrogate the
5      role of adjudicating bankruptcy proceedings".

6  *Id.* at Para. 16.

7      The problem is that the first statement, while true, is

8  completely contrary to the congressionally created authority of the

9  bankruptcy court to approve rejection of nearly every kind of

10 executory contract.  This includes "run-of-the-mill" types,

11 whatever that means, or the other kind, including power purchase

12 agreements and others that implicate the public's interest, but

13 excluding certain types not relevant here.

14     The second problem is that FERC, despite its denial, has

15 chosen to interfere with bankruptcy courts' decisions.  Without

16 statutory or supreme court authority to support its position, it in

17 fact "presumes to sit in judgment" and second-guess - no overrule -

18 decisions of the bankruptcy court.

19     To deal with what it correctly identifies as unsettled law

20 with different court interpretations (one circuit court, one

21 district court and one bankruptcy court now on direct appeal to

22 another circuit court)[1] FERC purports to settle the law by

23 announcing its own interpretation of bankruptcy law and decree

24 something found nowhere in the statute it interprets.  This is not

25 the way that unsettled law is to be developed.  That is the role of

26 _____

27     [1] *See In the matter of Mirant Corp.,* 378 F.3d 511 (5th Cir.
   2004) ("*Mirant*"); *In re Calpine Corp.,* 337 B.R. 27 (S.D.N.Y. 2006)
28 ("*Calpine*"); *In re FirstEnergy Solutions Corp. v. FERC,* 2018 WL
   2315916 (Bankr. N.D. Ohio May 18, 2018) ("*FirstEnergy*").

-2-

1   the courts.

2       To this court, FERC's decision was not only unauthorized, but
3   has and continues to have the effect of undermining the function of
4   the bankruptcy court in its role of ensuring that the goals and
5   purposes of bankruptcy law and policy are properly served and
6   properly executed.  Despite FERC's lip service to what it describes
7   as "concurrent jurisdiction" to carry out differing and perhaps
8   competing policies, the effect of its decision guts and renders
9   meaningless the bankruptcy court's responsibilities in this area of
10  the law.

11      For this reason, FERC must be stopped and the division and
12  balance of power and authority of the two branches of government
13  restored.  Accordingly, and for the reasons that follow, the court
14  declares FERC's decision announcing its concurrent jurisdiction
15  unenforceable in bankruptcy and of no force and effect on the
16  parties before it.  If necessary in the future it will enjoin FERC
17  from perpetuating its attempt to exercise power it wholly lacks.

18

19  **II.   PROCEDURAL BACKGROUND**

20      On April 10, 2019, the court held a hearing on Pacific Gas and
21  Electric Company and PG&E Corporation's (collectively, "Debtors")
22  Motion For Preliminary Injunction (the "Motion").[2]  Debtors were
23  initially seeking a preliminary injunction to prevent FERC from
24  issuing any rulings that would impact rejection of a power purchase

25

26

27  ──────────────────

28      [2] See, *Debtors' Complaint For Declaratory Judgment And
    Preliminary And Permanent Injunctive Relief* ("Complaint"), Dkt. #1.

                                -3-

agreement ("PPA") under Section 365 of the Bankruptcy Code[3]

("Section 365") and to establish that the bankruptcy court has sole

authority over Debtors' rights to reject any of its PPAs.

## III.  PREPETITION EVENTS

Debtors announced their intent to file for bankruptcy

protection on January 14, 2019.  California law mandated a 15-day

notice period before filing.[4]  Various PPA Counterparties[5] initiated

two administrative actions before FERC against Debtors.  They were

concerned that Debtors would try to reject PPAs in their

forthcoming bankruptcy.  As a result, they asked FERC to rule that

the bankruptcy court and FERC both must approve rejection of a PPA

for rejection to have effect.  Promptly thereafter, on January 25

and 28, 2019, FERC ruled "that this Commission and the bankruptcy

courts have <u>concurrent jurisdiction</u> to review and address the

disposition of wholesale power contracts sought to be rejected

through bankruptcy."  *NextEra Energy, Inc. V. Pac. Gas and Elec.*

*Co.*, 166 FERC ¶ 61,049 (2019); *Exelon Corp. V. Pac. Gas and Elec.*

*Co.*, 166 FERC ¶ 61,053 (2019) (emphasis added).

Debtors had unsuccessfully opposed those attempts and promptly

sought relief in this adversary proceeding on the first day they

filed for bankruptcy, January 29, 2019.

Debtors listed three causes of action in the Complaint: (1)

---

[3] Unless otherwise indicated, all chapter, section and rule
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and
to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4] Cal. Pub. Util. Code § 854.2.

[5] For simplicity the court uses this term to describe those
entities who proceeded before FERC in January 2019, and those who
later intervened in this adversary proceeding.

-4-

declaratory relief confirming the bankruptcy court's exclusive
jurisdiction under Section 365; (2) enforcement of the automatic
stay under section 362; and (3) a preliminary and permanent
injunction under section 105.  The second cause of action sought an
order stating that FERC could not proceed with any action against
Debtors because the automatic stay was in place.  The third cause
of action, in case the court found the automatic stay did not
apply, was for injunctive relief to ensure that FERC would not take
any action that would harm Debtors' rights to reject any of the
PPAs.

## IV.  POST-PETITION EVENTS

On February 25, 2019, Debtors sought rehearing of the two FERC
orders. FERC consolidated the requests for rehearing into one final
decision and denied the rehearings on May 1, 2019 in the FERC
Denial.

FERC and several PPA Counterparties moved to withdraw the
reference from this court to the district court under 28 U.S.C. §
157(d); Debtors opposed the motions.  On March 11, 2019, the
district court denied  the motions to withdraw the reference,
ruling this was a core proceeding.[6]  No party appealed.

During the April 10 hearing, the court asked why it could not
decide all of the issues presented by the adversary proceeding,
particularly because there did not appear to be any material facts
in dispute.  Promptly after the FERC Denial, the parties filed a
stipulation regarding the disposition of this adversary proceeding

---

[6] *See Order Denying the Motions to Withdraw the Reference.*
Dkt. #135 at 4.

-5-

1  ("the May 3 Stipulation") (Dkt. No. 149).  The May 3 Stipulation
2  stated that the parties were unable to reach agreement on terms of
3  a final judgment and that the court could enter final judgment
4  based upon the current record without any further briefing, oral
5  argument, or other evidence, except for the FERC Denial.  This
6  allows this court to enter final judgment at this point.
7      On May 20, 2019, the United States Supreme Court decided
8  *Mission Product Holdings, Inc. v. Tempnology, LLC,* 587 U.S. ___
9  (2019) *("Tempnology")*.  The court preserved the right of a
10 trademark licensee to retain the use of the trademark following the
11 licensor's rejection of the trademark license as an executory
12 contract.  The court repeatedly stated basic principles relevant to
13 this case:

14         "Section 365 provides that 'a debtor's rejection of
           a contract "constitutes a breach of such contract.'"
15 *Slip opn*,. P.1.
16
           "Rejection of a contract--any contract--in bankruptcy
17         operates not as a rescission but as a breach."
18 *Id.*, at 8.

19         "Rejection 'constitutes a breach of [an executory]
           contract,' deemed to occur 'immediately before the date of
20         the filing of the petition' ... Or said more pithily for
           current purposes, a rejection is a breach.'"
21 *Id.*
22
           "Sections 365(a) and (g) speak broadly, to 'any
23         executory contract[s].'"
24 *Id.*, at 10.

25     The Bankruptcy Code includes several specific provisions
26 important in Chapter 11 reorganization cases where Congress altered
27 those principles in some way.  Relevant to *Tempnology* are
28 intellectual property rights under Section 365(n).  Other such

-6-

provisions are found in Section 365(h)and (i)(purchasers and lessees of real property and timeshare interests). And the trustee is deemed to have assumed (not rejected) obligations for maintenance of capital requirements of a Federal insured depository. Section 365(o).

Outside of Section 365, rejection of collective bargaining agreements are dealt with great particularity in Section 1113.[7]

From this it is clear that Congress know how to craft special rules for special circumstances.[8] Similarly, debtors such as Debtors who are regulated by commissions or other authorities such as FERC must comply with rate change approvals in order to achieve confirmation of Chapter 11 plans. 11. U.S.C. § 1129(a)(6).

*Tempnology*, at a granular level, is about the rights of parties to a trademark license rejected in bankruptcy.[9] But on a macro level, it says much about policy decisions that influence the outcome here. Consider the following messages from the opinion:

> "Today we hold that both Section 365's text and *fundamental principles of bankruptcy law* command the ...rejection as breach approach."

Slip opn, p. 8 (emphasis added).

---

[7] There is also specific attention to the duties of a trustee in Chapter 7 found in Sections 765 and 766 not relevant here.

[8] See *Tempnology*, at Slip opn. P. 12; and *Mirant* at 521: "Section 365, along with other Bankruptcy Code sections, details a number of specific limitations on and exception to the § 365(a) general rejection authority . . . ."

[9] The decision aligns the rights of a counterparty to a rejected trademark license to the rights of similarly situated parties to copyright and patent licenses, etc. Upon rejection – breach – they retain the option of keeping the entitlements that they bargained for, viz., the continued use of the intellectual property licensed to them.

-7-

And referring in contrast to a trustee's avoidance powers that can be invoked in only narrow circumstances, the court added:

> "...*unlike the power of rejection, which may be exercised for any plausible reason.*"

*Id.* (emphasis added).

The opinion describes in detail the exceptions (referred to in *Mirant*) added to Section 365 over several decades to address what and how Congress dealt with specific problems that arose for various reasons, including judicial interpretations. That includes the 1988 amendments to deal with *Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043 (4th Cir. 1985)) and protect the rights of some, but not all counterparties to rejected intellectual property licenses. All of them deal with various remedies to protect counterparties' rights. Nothing in the opinion has any bearing on what FERC seeks in these bankruptcy cases, with one exception. That is, as the supreme court pointed out:

> "...Section 365 does not grant the debtor an exception from all of the burdens that generally applicable law – whether involving contracts of trademarks – impose on property owners. See 28 U.S.C. § 959(b)(requiring a trustee to manage the estate in accordance with applicable law)."

Slip opn, at 16.

## V.  DISCUSSION

What remains following the May 3, 2019 Stipulation is Debtors' request for a declaratory judgment pursuant to 28 U.S.C. § 2201 confirming the court's exclusive jurisdiction over their right to reject any PPA under Section 365, and further declaring that FERC does not have "concurrent jurisdiction" to grant or deny Debtors' rejection of any of their PPAs.

The enforcement of the automatic stay (Complaint, Court Two) is

-8-

1   not an issue because there has been no violation of the stay.  The

2   two FERC orders that prompted this adversary proceeding were in

3   response to proceedings brought against Debtors prior to

4   bankruptcy.[10]  Debtors have not filed a single motion to reject, so

5   there is no reason to imagine why FERC would take any action.

6        This is a matter of first impression: Is an order issued by a

7   Federal agency purporting to affect (arrogate) a decision by a

8   bankruptcy court in a future bankruptcy case binding on that

9   bankruptcy court or the parties before it?

10       Here are the different ways courts have dealt with this issue

11  in the only reported decisions.  None began with FERC issuing orders

12  before the bankruptcy cases were filed as it did here.  In *Mirant*,

13  the court of appeals adhered to the theory the court applies here.

14  Instead of applying the "business judgment" test, the court

15  remanded, stating:

16              "Therefore, upon remand, the district court should
                consider applying a more rigorous standard to the
17              rejection of the [subject contract]. If the district
                court decides that a more rigorous standard is
18              required, then it might adopt a standard by which it
                would authorize rejection of an executory power
19              contract only if the debtor can show that it "burdens
                the estate, [] that, after careful scrutiny, the
20              equities balance in favor of rejecting" that power

21  _____

22       [10] The Debtors sought rehearing by FERC after bankruptcy but
    without seeking relief from the automatic stay in this court.  FERC
23  did not mention that in the FERC Denial nor have the parties done
    so here.  The court expresses no opinion whether such relief should
24  have been requested. *See Parker v. Bain*, 68 F.3d 1131, 1135-36 (9th
    Cir. 1995) ("[t]his Court, as well as seven other courts of
25  appeals, has concluded that the automatic stay can operate to
    prevent an appeal by a debtor when the action or proceeding below
26  was against the debtor"); *Ingersoll-Rand Fin. Corp. v. Miller
    Mining Co., Inc.* 817 F.2d 1424, 1426 (9th Cir. 1987)("section 362
27  should be read to stay all appeals in proceedings that were
    originally brought against the debtor, regardless of whether the
28  debtor is the appellant or appellee").

                                   -9-

> contract, and that rejection of the contract would further the Chapter 11 goal of permitting the successful rehabilitation of debtors.**"**

*Mirant,* 378 F.3d at *525* (emphasis added).[11]

The district court in *Calpine* accepted the argument advanced by FERC here. One day before Calpine's bankruptcy, PPA counterparties (including Pacific Gas and Electric Company) commenced a proceeding before FERC to obtain an order requiring Calpine to continue to perform under PPAs. The district court, after several interim steps, concluded that it lacked subject matter jurisdiction over the motions to reject the energy contracts before it. *Calpine* at 39.

Finally, the *FirstE*nergy court ruled as follows:

> "This Court holds that rejection, including the attendant cessation of performance, does not intrude on FERC's jurisdiction over filed rates. If Plaintiffs were solvent and simply stopped making payments ... the counterparties could not reasonably argue that [the debtors] had somehow modified or abrogated those agreements; they would seek damages for the breaches of those contracts .... Those breaches would lead to claims. If the Plaintiffs then filed bankruptcy, the claims would become claims against the estate. Treatment of those claims are governed by the Bankruptcy Code, including the confirmation of a reorganization plan in ...."

*In re FirstEnergy Solutions Corp.* (Bankr. N.D. Ohio, May 18, 2018, No. 18-50757) 2018 WL 2315916, at *17.[12]

*FirstEnergy* discusses at length the applicability, *vel non*, of the police power exception of Section 362(b)(4) and the merits of a request for injunctive relief. While this court agrees generally

---

[11] This court believes that this test is subsumed within the good faith and business judgment tests that are implicit in rejection decisions, as in Part G, 3.

[12] Before long the Sixth Circuit is expected to weigh in, as the appeal is scheduled for oral argument there on June 26, 2019 (Case. No. 18-3788).

-10-

with its analysis of the court's exclusive jurisdiction to apply Section 365 without any concurrent involvement by FERC, the decision here in Count One is dispositive, an option not presented to that court.

This "unsettled" law should develop this way, through judicial analysis and decision, and not by fiat or decree as FERC has attempted in this case.[13]

### A. Case and Controversy; Standing

FERC and the PPA Counterparties question whether there is a pending case or controversy and question Debtors' standing.  They ask that this adversary proceeding be dismissed.

To establish standing, a plaintiff must establish injury, causation and redressability.  Injury requires a plaintiff to show that it

> "Has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."

*City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

The United States Supreme Court has ruled that "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (emphasis in original).

The PPA Counterparties rushed to FERC and instituted an

---

[13] *In re Boston Generating, LLC* 2010 WL 4616243 (S.D.N.Y. 2010) is not on this short list because it was disposed of by consent of the parties.  Nor is *NRG Power Marketing v. Blumenthal (In re NRG Energy, Inc.)*, WL 21507685, (S.D.N.Y., 2003) that involved a race-for-jurisdiction dispute where FERC obtained an order for performance of a contract while a motion to reject was pending.

-11-

expedited proceeding before Debtors were able to file bankruptcy.
It was they, not Debtors, who initiated the controversy, and FERC's
disposition, that has caused Debtors to need this declaratory
relief.

Here, there is a threatened injury that is certainly impending.
While it is true that Debtors have not yet moved to reject any PPAs,
they have been under pressure from various sources to move these
complex cases along and deal with billions of dollars of wildfire
claims and billions of dollars of contractual liabilities. Already
the court has granted in part but denied in part their request to
extend plan exclusivity under Section 1121(d). This has been with
opposition from the two official creditors' committees and the
Governor of California pressing for a prompt and viable
reorganization. If and when either Debtor moves to reject any PPAs
they need to know promptly whether this court will grant or deny
such requests. If they are forced to seek a second and possibly
dispositive decision from FERC based on FERC's stated policy goals,
and not just those found in the Bankruptcy Code, there could be a
real and significant impact on the reorganization effort and the
millions of Northen Californians adversely affected by it. Under
these circumstances there can be no doubt that Debtors have standing
right now to invoke this court's authority and jurisdiction to
facilitate these reorganization efforts.

If FERC's view prevails, it could effectively veto the court's
decision to permit rejection under the business judgment test.
Instead, it would permit rejection only if the affected rate is no
longer just and reasonable and as long as the abrogation or
modification is necessary to protect the public

-12-

interest.[14]  This means a PPA Counterparty who is unable to persuade
the bankruptcy court to deny rejection, but able to persuade FERC to
do so, will be left with its "bankruptcy-rejected" contact (treated
as breached, resulting in a pre-petition claim) in place, fully
enforceable, the same as an assumed executory contract.  In other
words, the reorganization goals will be replaced by FERC's public
policy goals, giving the PPA Counterparty the same treatment as
post-petition administrative claim to be paid in full.  This is a
quintessential controversy - the clash of two competing policies and
goals.

     Ripeness is determined at the time the complaint is filed.
*Sierra Club v. Dombeck*, 161 F. Supp. 2d 1052, 1061 (D. Ariz. (2001),
*dismissed*, 55 F. App'x 411 (9th Cir. 2002).  Ripeness has a
constitutional and prudential component.  "The constitutional
ripeness of a declaratory judgment action depends upon whether the
facts alleged . . . show that there is a substantial controversy,
between parties having adverse legal interest, of sufficient
immediacy . . . warrant the issuance of a declaratory judgment."
*United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003).
Prudential ripeness requires the fitness of issues for judicial
decision and the hardship to the parties if the court withholds
consideration.  *Braren*, 338 F.3d at 975.

     Here, constitutional ripeness is met because there is a
substantial controversy between FERC and Debtors.  The parties have
adverse legal interests that are immediate because Debtors cannot
proceed with rejecting contracts subject to this court's

_____

     [14] FERC Denial, Para. 13.

-13-

authorization under the cloud of FERC's adverse position.
Accordingly, constitutional ripeness is met.

The first element of prudential ripeness requires the claim to be primarily legal and does not require any further factual development. *Braren*, 338 F.3d at 975. Here, the concurrent jurisdiction issue with FERC needs no factual determination or development. The second element of prudential ripeness focuses on the hardship to the parties. Debtors face an immediate hardship for the reasons stated above.

The requirements for prudential ripeness are met. As a result, FERC's and the PPA Counterparties' arguments involving ripeness lack merit and must fail.

**B. Sovereign Immunity**

FERC contends that the United States has not waived sovereign immunity so the adversary proceeding should be dismissed. However, Section 106(a) abrogates sovereign immunity for governmental entities under several sections of the Bankruptcy Code. *In re DBSI, Inc.*, 869 F.3d 1004, 1013 (9th Cir. 2017). Section 365 is one of the enumerated sections. FERC's sovereign immunity argument lacks merit.

**C. Non-Consent to Final Judgment**

FERC and the PPA Counterparties both declined to consent to final judgment in this adversary proceeding in their respective oppositions to the motion for preliminary injunction. Bankruptcy courts may enter appropriate orders and judgments in core proceedings. In non-core proceedings, a bankruptcy court must only submit proposed findings of fact and conclusions of law to the district court for *de novo* review. Fed. R. Bankr. P. 9033.

-14-

Here, the focus of the adversary proceeding is on Section 365. Motions to reject are core proceedings under 28 U.S.C. § 157(b)(2)(A). *In re Turbowind, Inc.*, 42 B.R. 579, 583 (Bankr. S.D. Cal. 1984). The district court has ruled so here. *See*, *also*, the May 1 Stipulation. This court can and will issue a final judgment regardless of FERC's and the PPA Counterparties' non-consent.

For the same reason, the court will deny the PPA Counterparties' request for abstention under *In re Tucson Estates*, 912 F. 2d 1162 (9th Cir. 1990).

**D. Judicial Estoppel**

FERC asserts that judicial estoppel prevents the Debtors from arguing that this court has exclusive jurisdiction over motions to reject due to a prior case where they made arguments to the contrary. The purpose of the doctrine is to protect the integrity of the judicial process. The doctrine is invoked when a party makes a representation to a court, that court accepts it, rules in the party's favor, and then the party makes a contrary argument on that same position to the same court or a different court.

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. A third consideration is whether the part seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Ah Quin v. Cty. of Kauai Dep't of Transp.* 733 F.3d 267, 270 (9th Cir. 2013) (supporting citations omitted).

FERC argues this occurred in *In re Calpine Corp.* Case N. 05-10861, Dkt. #15 (S.D.N.Y. Jan. 19, 2006). While this may be so,

-15-

judicial estoppel may not be invoked where jurisdiction is at issue. Many courts have found that where a party is arguing contrary positions on subject matter jurisdiction, judicial estoppel will not be applicable. *Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1363 (Fed.Cir.2006); *E-Pass Techs. v. Moses & Singer, LLP*, 2011 WL 5357912, at *7 (N.D. Cal. Nov. 4, 2011). In *Bonzel*, the plaintiff had previously successfully argued for remand before the Federal Circuit because there was no substantial patent law question. Then, after that action was dismissed, the plaintiff brought another lawsuit claiming federal patent jurisdiction. The court declined to apply judicial estoppel and noted "it was questionable whether estoppel could even apply to jurisdictional question." *E-Pass Techs*, 2011 WL 5357912 at *7-8 (citing *Bonzel*, 439 F.3d at 1363).

Here, Debtors' assertion of different positions does not warrant the application of judicial estoppel. The primary focus of this lawsuit is this court's exclusive jurisdiction under 28 U.S.C. § 1334(a) and whether it alone or FERC concurrently has authority under Section 365. This is the first and only time the Debtors have been forced to defend the authority of their "home" court. No such issue has confronted them before.

More importantly, Debtors are now debtors-in-possession under the Bankruptcy Code. Accordingly, they are given substantial rights, duties and powers under numerous sections, including Sections 1107 that import the duties of a trustee in Section 1106. It is a fundamental principle of bankruptcy law that a Chapter 11 trustee or debtor-n-possession is considered a new legal entity and as such, has the power to assume or reject most executory contracts under Section 365. It would be inconsistent to this grant of power

-16-

1  to inhibit the authority and powers of Debtors because of conduct
2  they took in their individual capacities in which they acted as
3  counterparties to a bankruptcy debtor who was acting adverse to them
4  prior to their bankruptcy cases.

5      In addition, while FERC is not bound by the principle of
6  judicial estoppel, it has reversed its own position on the issue of
7  concurrent jurisdiction.  In 2006, FERC announced it would follow
8  the Fifth Circuit in *Mirant*, which stated that a debtor can reject a
9  PPA that is filed with FERC, without concurrent approval of the
10 rejection by FERC.  However, the FERC Denial states that after the
11 *Calpine* court ruled contrary to *Mirant*, FERC was no longer obligated
12 to follow the prior reasoning.[15]

13      Accordingly, it is only fair to let Debtors, as Debtors-in-
14 Possession, use all the tools Congress has provided which they did
15 not have prior to their bankruptcy.  Judicial estoppel does not
16 prevent the court from deciding the merits of the case.

17      **E.  Automatic Stay**

18      In the Complaint, Debtors are seeking an order "pursuant to
19 section 362 of the Bankruptcy Code . . . enforcing the automatic
20 stay as to any FERC Action."

21      The automatic stay went into effect on the day of the
22 bankruptcy.  Debtors petitioned for rehearing after bankruptcy and
23 FERC responded with the FERC Denial.  The central issue addressed by
24 FERC in denying rehearing is the same that was decided in the two
25 January, 2019, rulings.  No party raised the issue of the automatic
26 stay (see footnote 10) so the court does not infer that the stay was

27  ───────────────

28      [15] *California Electricity Oversight Board v. Calpine Energy
    Services, L.P. (CEOB)*, 114 FERC ¶ 61,003 at ¶ 11.

                                -17-

violated or the FERC Denial is void. Nothing else has been brought
to the court's attention to show the stay has been violated by any
party. If a violation of the stay does occur in the future, either
Debtor may move for contempt under Rule 9020. As the automatic stay
is already in place, no further order is necessary. Because the
court is granting Debtors' request for a Declaratory Judgment
(discussed, *infra)* there is no need to debate and decide whether or
nor FERC could act within any Section 362(b)(4) exception. Count
Two of the Complaint will be DISMISSED.

**F. There Is No Need for an Injunction under Section 105(a)**

A party seeking a preliminary injunction under § 105(a) must
show:

> (1) a strong likelihood of success on the merits, (2) the
> possibility of irreparable injury to plaintiff if
> preliminary relief is not granted, (3) a balance of
> hardships favoring the plaintiff, and (4) advancement of
> the public interest (in certain cases). Alternatively, a
> court may grant the injunction if the plaintiff
> demonstrates *either* a combination of probable success on
> the merits and the possibility of irreparable injury *or*
> that serious question are raised and the balance of
> hardships tips sharply in his favor.

*In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007).

In addition, likelihood of success in reorganization must also
be proven. *Excel,* 502 F.3d at 1095.

Given the parties' consent in the May 3 Stipulation, to either
grant or denial of the Debtors' request for declaratory relief as to
the effect of FERC's ruling, there is no need for a separate
injunction. Declaratory relief on the First Claim will provide the
basis for FERC not having the authority to pursue any type of action
that supports concurrent jurisdiction over a motion to reject any
PPA. There is no need to enjoin anyone or any action now. Count

-18-

Three of the Complaint will be DISMISSED.

**G.   Basis for Declaratory Judgment**

Countless courts have noted and accepted the broad scope of FERC's statutory jurisdiction over rates, terms and conditions of wholesale electricity sales and power contracts, including changes to those contracts.  That authority has led to the evolution and development of the filed-rate doctrine that provides that a party may claim no rate as a legal right other than the filed rate, whether fixed or accepted by FERC.  Not even a court may authorize other terms.  All of this is black-letter law that is not in doubt here.  The briefs before the court are replete with citations that do not need to be repeated.

Thus, because all the parties agree that the Federal Power Act ("FPA") means what it says, and FERC can do what it usually does, no purpose would be served by discussing further the filed-rate doctrine or FERC's exclusive jurisdiction over rates and related matters.

**1. This is not an improper attack on FERC's January 25 and 28, 2019, rulings nor on the FERC Denial.**

Imagine the absurdity of the exclusive appeal route espoused by FERC and the PPA Counterparties.  Kafka might have designed it:

*Parties not in bankruptcy are subjected to an involuntary process by their opponents before a non-judicial, administrative body.*

*Just a few days later they are told by that body that if they file bankruptcy, one of the basic and critically important tools placed there by Congress and available only in bankruptcy will be unavailable.*

*And if they don't like it, they'll have to appeal via a procedure outside of the bankruptcy system with its exclusive subject-matter jurisdiction.*

*One day later they file bankruptcy, where myriad rights and duties (and obligations) come in to play and a*

-19-

> *bankruptcy court, experienced in bankruptcy matters, is there to preside.*
>
> *Now that bankruptcy is a reality and not an intention, the agency repeats its prior ruling, that it has <u>concurrent</u> jurisdiction with the bankruptcy court, but that court will not be available to vindicate one of their fundamental and critical bankruptcy rights.*
>
> *Their first recourse to an Article III court after all that is via appeal.*

This process is unfair and should not be tolerated.

The FPA contains a provision dealing with the appeal of a decision from FERC. First, the losing party must request a rehearing before FERC. Second, a further appeal can be pursued in a circuit court of appeals. 16 U.S.C. § 825l. The FPA provides the only method for judicial review of rulings regarding the broad reach of FERC's exclusive jurisdiction over matters dealing with rates, terms and conditions of wholesale power contracts and the panoply of matters falling within the filed rated doctrine.

After the January 25 and 28, 2019 FERC orders, Debtors sought rehearing. But in between they filed bankruptcy and immediately filed this adversary proceeding challenging the fundamental assault on the bankruptcy court's exclusive jurisdiction.[16] FERC and the PPA Counterparties argue Debtors are trying an improper collateral attack on FERC's orders.

Although departure from that procedure just summarized is normally unassailable, "judicial intervention is authorized when an agency acts in 'brazen defiance' of its statutory authorization." *Philip Morris, Inc. v. Block*, 755 F.2d 368, 369 (4th Cir. 1985)

---

[16] Had they not initiated this adversary proceeding, Debtors' only recourse would have been to prosecute their attempt at a successful rehearing; had FERC changed its position, this proceeding might have been rendered moot.

-20-

1 (citation omitted). "An ultra vires act of an administrative agency
2 is either void or voidable." *Sierra Club v. Watt*, 608 F. Supp. 305,
3 341 (E.D. Cal. 1985). Ultra vires acts occur when an agency acts
4 outside of "its statutory authorization." *Phillip Morris*, 755 F.2d
5 at 370.

6     "FERC is a creature of statute, having no constitutional or
7 common law existence or authority, but only those authorities
8 conferred upon it by Congress." *Atl. City Elec. Co. v. F.E.R.C.*, 295
9 F.3d 1, 8 (D.C. Cir. 2002). See, also, *Civil Aeronautics Bd. v.
10 Delta Air Lines, Inc.*, 367 U.S. 316, 322 (1961) (finding that an
11 agency "is entirely a creature of Congress" and "the determinative
12 question" is not what "[it] thinks it should do but what Congress
13 has said it can do.").

14     FERC has acted outside of its statutory authority. Its
15 decisions before bankruptcy were advisory in nature, have no impact
16 on anyone; once the bankruptcy cases were filed they presented an
17 immediate conflict with the Bankruptcy Code and can be challenged
18 and dealt with in this court.

19     In addition, the United States Supreme Court has stated that
20 courts have the ultimate decision-making authority when analyzing
21 provisions governing a federal agency. While the courts can defer
22 to the regulatory agency involved, the final decision is for the
23 court alone to make. *See Gordon v. New York Stock Exch., Inc.*, 422
24 U.S. 659, 686 (1975)(dealing with the court ruling on matters
25 involving the Securities Exchange Act and the Securities Exchange
26 Commission).

27     Nothing in the FPA or the Bankruptcy Code grants FERC
28 concurrent jurisdiction with this court over Section 365 motions to

-21-

reject executory contracts covering federal power matters.[17]  The
issue here is Section 365 and not any of the permutations and
applications of the filed rate doctrine.  This is the only issue
before this court, and there is nothing collateral or indirect about
the attack.  It is direct because it goes to the precise bankruptcy
issue of exclusive authority under 28 U.S.C. § 1334(a).  This court
is not considering the FPA or reviewing any FERC decisions regarding
any matter within its exclusive jurisdiction.  The rejection of an
executory contract is solely within the power of the bankruptcy
court, a core matter exclusively this court's responsibility.  28
U.S.C. § 157(b)(2).

The Bankruptcy Code is the proper and only authority to apply
and not any aspect of the FPA.  FERC did not draw on any specific
provision of that law to reach its ultimate conclusion, nor does
this court.  The beginning and end of the analysis is in the
Bankruptcy Code.

**2.  FERC Acted in Excess of its Statutory Authority.**

The court disagrees with FERC's view that were it to authorize
rejection of a PPA, that authorization would not be "a license <u>to
cease or modify performance</u> in whatever manner [Debtors] wish[es]."
FERC Denial, Para. 16 (emphasis added).

To the contrary, authorization of rejection under Section 365
is authorization to breach – <u>to cease...performance</u> leaving the
affected PPA Counterparty with a claim for damages as of the
petition date.  *Tempnology, supra.*

FERC makes the bold and unfounded statement that:

---

[17] *Mirant,* 378 F. 3rd at 521.

-22-

1      "Performance under [the rejected PPA] remains subject to
2      [FERC's] review to determine whether any cessation or
       modification of performance is just and reasonable and not
3      unduly discriminatory or preferential under the FPA."

4  FERC Denial, Para. 16.

5      The statement is wrong as a matter of law and is unenforceable

6  in these cases.  A court "owe[s] an agency's interpretation of the

   law no deference" where, as here, the "statutory provisions before
7
   [it] deliver unmistakable commands. *SAS Inst, Inc. Iancu,* 138 S.
8
   Ct. 1348, 1358 (2018).  It would render meaningless the bankruptcy
9
   court's authority and responsibility to authorize rejection under
10
   the business judgment test.
11
       Section 365's lack of an exception for FERC simply means that
12
   FERC has no jurisdiction over the rejection of contracts.  See *FCC
13
   v. NextWave Pers. Commc'ns, Inc*., 537 U.S. 293, 302 (2003) ("[W]here
14
   Congress has intended to provide regulatory exceptions to the
15
   Bankruptcy Code, it has done so clearly and expressly."
16
       *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000), is a seminal
17
   Ninth Circuit decision that a state court's determination as to
18
   applicability of the automatic stay or actions that are done in
19
   violation of the automatic stay are void.
20
               In sum, bankruptcy courts have the ultimate authority
21             to determine the scope of the automatic stay imposed
               by 11 U.S.C. § 362(a), subject to federal appellate
22             review. A state court does not have the power to
               modify or dissolve the automatic stay. Accordingly,
23             the *Rooker-Feldman* doctrine does not render a state
               court judgment modifying the automatic stay binding
24             on a bankruptcy court. Thus, if it proceeds without
               obtaining bankruptcy court permission, a state court
25             risks having its final judgment declared void.

26  *Id.,* at 1037.

27      The Ninth Circuit upheld a state court's determination that a

28  criminal prosecution did not violate the automatic stay.  Considered

                                  -23-

narrowly, the decision has little bearing on this case because FERC is not a state court, it did not involve a criminal matter, it did not interpret the automatic stay, and at present there is no automatic stay issue pending.  But considered broadly, and considering that the FERC Denial came after bankruptcy when the automatic stay went into effect, *Gruntz* very much applies.   It warns that an interpretation of the Bankruptcy Code and the court's exclusive jurisdiction over core matters by another body that is in excess of its own jurisdiction, to be binding on the bankruptcy court, must be correct.

Before Debtors filed bankruptcy FERC made its January 25 and 28, 2019 rulings against them.  Those rulings were at best toothless advisory opinions that had no effect on anyone, especially debtors contemplating but not then having filed bankruptcy.  Obviously there was no automatic stay in effect or even in existence.  Equally obviously, *Gruntz* was if no concern. All that changed on January 29, 2019.  The Debtors' reorganizations were immediately impacted by the cloud of FERC's assertion of concurrent jurisdiction and its presumption that it could override a bankruptcy court's PPA executory contract rejection decision based upon policies embodied in the FPA, principally protection of the public interest.

Now that FERC has issued its FERC Denial, the full impact of *Gruntz's* reasoning applies.  Section 365(a) and 28 U.S.C. § 1334, taken together, clearly lead to the inescapable conclusion that only the bankruptcy court can decide whether a motion to reject should be granted or denied, and under what standards.

The United States Supreme Court stated that Congress knew how to grant exceptions to the power to reject executory contracts and

-24-

PPAs governed by the FPA were not included. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984). *Tempnology, supra, footnote 8 and accompanying text.* The right to reject is qualified for many exceptions under §§ 365(h), (i), (n), and (o). FERC and the FPA are not mentioned in any exceptions. Section 365's lack of an exception for FERC simply means that FERC has no jurisdiction over the rejection of contracts. See *FCC v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293, 302 (2003) ("[W]here Congress has intended to provide regulatory exceptions to the Bankruptcy Code, it has done so clearly and expressly."

As a result, if an executory contract does not fall into the exceptions set forth by Congress in the Bankruptcy Code, only the Bankruptcy Court can issue a ruling on rejection. The reasoning of *Gruntz* is directly applicable, just as the Bankruptcy Court was permitted to void a state court order that was issued in violation of the Bankruptcy Code. This court can declare FERC's attempt to interpret and apply the Bankruptcy void.

In addition and apart from *Gruntz* and the automatic stay, case law rejects any attempt by FERC to expand its jurisdiction to those matters not governed by the FPA. *Hunter v. FERC*, 711 F.3d 155, 159 (D.C. Cir. 2013); *Atl. City Elec. Co. v. F.E.R.C.*, 295 F.3d 1, 8 (D.C. Cir. 2002) (stating FERC is a creature of statute and only has authority specifically conferred by Congress with no constitutional or common law existence or authority). The court in *Hunter* found that FERC failed to meet its burden to show a repeal by implication. FERC argued that the FPA superseded a particular section of the Commodity Exchange Act, which is implemented by the Commodity Futures Trading Commission. *Hunter*, 711 F.3d at 160. Any order

-25-

issued by FERC stating concurrent jurisdiction is therefore void, as it attempts to divest jurisdiction from the bankruptcy court that was set forth by Congress.

The court's "virtually unflagging obligation . . . to exercise the jurisdiction given [it]," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), compels the conclusion that it should hold that FERC's orders are prospectively void because they conflict with a core proceeding solely delegated to this court. The United States Supreme Court referred to its "original and exclusive" jurisdiction over disputes between the States, 28 U.S.C. § 1251(a), adding "the description of our jurisdiction as 'exclusive' necessarily denies jurisdiction of such cases to any other federal court." *Mississippi v. Louisiana*, 506 U.S. 73, 77-78 (1992). In 28 U.S.C. § 1344(a) Congress gave exclusive jurisdiction over bankruptcy cases to this court (via a referral from the district court). There is no reason why this bankruptcy court should not apply exclusive jurisdiction in the same way.

In sum, the three FERC decisions discussed here were not the actions of a power regulator carrying out its statutory duties to police rates, terms and conditions of power contracts, and enforcing the filed-rate doctrine. To be blunt, they were <u>unauthorized</u> acts of the power regulator executing a power play (to use a hockey term) to curtail the role of the court acting within its <u>authorized</u> and <u>exclusive</u> role in these bankruptcy cases. Those decisions can not be applied or honored here.

**3. Proper standard for rejection of executory contracts**

To determine whether the Bankruptcy Court should approve the

-26-

rejection of an executory contract under Section 365, the business judgment rule must be applied. *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007). "[I]n evaluating the rejection decision, the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Pomona Valley*, 476 F.3d at 670; *In re At Home Corp.*, 292 B.R. 195, 199 (N.D. Cal. 2003), *aff'd,* 392 F.3d 1064 (9th Cir. 2004) (stating the debtor must demonstrate that rejection will benefit the estate). This can include eliminating an executory contract that has become burdensome or where prompt elimination will positively impact the debtor's ability to improve its financial condition. 9C Am. Jur. 2d Bankruptcy § 2311. Further, the debtor's decision to reject cannot be based on "a gross abuse of debtor's business discretion." *Id.*

A primary issue in this determination is whether the rejection would benefit general unsecured creditors, which requires a balancing of interests. *In re Chi-Feng Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982); *In re Turbowind, Inc.*, 42 B.R. 579, 584 (Bankr. S.D. Cal. 1984). If rejection would lead to a third party benefitting substantially at the expense of unsecured creditors, the rejection cannot be approved. *Chi-Feng Huang,* 23 B.R. at 801.

A district court denied a debtor's motion to reject where it found that debtor was trying to "create" a business rather than preserve one, and that debtor had filed bankruptcy solely to reject that contract. The court found that these facts meant the debtor was not exercising business judgment or operating in good faith. *In re S. California Sound Sys., Inc.,* 69 B.R. 893, 898 (Bankr. S.D.

-27-

Cal. 1987). Rejection is precluded where bankruptcy is filed with the sole purpose of trying to reject. *In re Safakish*, No. 18-50769 MEH, 2018 WL 5621783, at *6 (Bankr. N.D. Cal. Oct. 29, 2018).

Disproportionate damage to the aggrieved party is a ground to disapprove rejection. *In re Monarch Tool & Mfg. Co.*, 114 B.R. 134, 137 (Bankr. S.D. Ohio 1990). Unfairness to the aggrieved party is not enough, however. *See In re Chi-Feng Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982) (stating that the primary issue is whether rejection would benefit the general unsecured creditors).

The parties that are impacted will receive an unsecured claim for damages in the full amount of the rate listed in the PPAs. Creation an administrative priority claim, which means placement ahead of all unsecured creditors, will happen if FERC successfully orders performance under a rejected PPA. That would be inconsistent with the Bankruptcy Code's treatment of such a rejected claim. As noted, "a priority scheme dictating the order in which various creditors' claims will be satisfied in the course of bankruptcy proceedings." *In re Holly Marine Towing, Inc.*, 669 F.3d 796, 800 (7th Cir. 2012).

That said, the court will not ignore what others have said about public interest and the need to take it into account while at the same time paying careful attention on the reorganization goals:

> "If the district court decides that a more rigorous standard is required, then it might adopt a standard by which it would authorize rejection of an executory power contract only if the debtor can show that it "burdens the estate, [ ] that, after careful scrutiny, the equities balance in favor of rejecting" that power contract, and that rejection of the contract would further the Chapter 11 goal of permitting the successful rehabilitation of debtors. See Bildisco, 465 U.S. at 526–27, 104 S.Ct. 1188. When considering these issues, the courts should carefully scrutinize the impact of rejection upon the

-28-

public interest and should, inter alia, ensure that
                    rejection does not cause any disruption in the supply
                    of electricity to other public utilities or to
                    consumers. Cf. id. at 527, 104 S.Ct. 1188. (requiring
                    the bankruptcy court to balance the interests of the
                    debtor, the creditors and the employees when
                    determining what constitutes a successful
                    rehabilitation)."

*Mirant*, at 525.[18]

        Public policy does not need to be considered when applying the

business judgment rule every time a federal statute is implicated.

                    "Congress did not intend the Code to be a shield
                    behind which a debtor in possession might engage in
                    conduct that would be improper in a non-bankruptcy
                    context. Indeed, as a fiduciary holding its estate
                    in trust and responsible to the court, a debtor in
                    possession must administer its case and conduct its
                    business in a fashion amendable to the scrutiny to be
                    expected from creditor and court oversight."

*In re Pilgrim's Pride Corp.*, 403 B.R. 413, 424 (Bankr. N.D. Tex.

2009).

        The business judgment standard in regular rejection is more

deferential than that given to contracts that are in the "public

interest."[19] But public interest may need to be considered in the

context of a specific rejection of a specific PPA. That outcome

will be fact-driven based on the particular motion to reject and the

responses of the opposing party. That is for another day.

_____

        [18] *In re Caribbean Petroleum Corp.,* 444 B.R. 263, 269 *(*Bankr.
Del 2010*)*(heightened scrutiny for rejection motions involving the
protection of national public interest such as public safety,
health or welfare (citing *In re Old Carco, LLC*, 406 B.R. 180, 189
(Bankr. S.D.N.Y. 2009).

        [19] *Cf., In re Old Carco LLC, supra* stating that the statutes
there were enacted by state legislatures, not Congress, so they
were protecting the public interest of the *states* rather than the
national public interest and did not deny the rejection motion in
the name of public interest.

                              -29-

## VI.  DISPOSITION

Debtors are entitled to this court's declaratory judgment that (1) FERC does not have concurrent jurisdiction over its decision to permit Debtors to reject (or assume) executory contracts under Section 365; and (2) that the FERC Denial and its two prior rulings described above are of no force and effect and are not binding on Debtors in these cases.[20]

Nothing will happen here until either of the Debtors moves to reject an executory PPA and the affected counterparty opposes that motion.  At that time the court will consider the merits of any such motion and _if_ consideration implicates public policy interests as well as reorganization goals, those interests can be considered as part of the higher standard for the rejection decision.  It may well be that a particular motion seeks rejection of a contractual obligation of the debtor to purchase energy in the future.  That likely will involve little if any public interests; on the other hand rejection of a PPA based on some other rights and obligations may trigger a more concrete and demonstrable consequence that may tip the balance the other way.  Either way, or whatever set of facts apply, this court can make the assessment consistent with the principles expressed here.  There is no need or right for a second inquiry by a separate non-judicial body to be involved.  This court will exercise its exclusive jurisdiction as Congress directed.

The automatic stay still applies the same way it did on January 29, 2019, when these cases were commenced.  If more relief is

---

[20] The court takes no position as to what happens if Debtors appeal the FERC Denial to a court of appeal.

-30-

1  needed, the court's specific and inherent injunctive powers are

2  available.

3      The motion of the Official Committee of Unsecured Creditors is

4  GRANTED.  If there is no appeal that grant is of no consequence; if

5  there is an appeal, the committee's views should be considered.

6      Concurrent with this Memorandum Decision the court is issuing

7  its Declaratory Judgment.  In a few days it will issue a

8  Certification for Direct Appeal.

9

10              * * * END OF MEMORANDUM DECISION * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28